**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, <br><br> *Plaintiff*, <br><br> v. <br><br> ARGUS INFORMATION & ADVISORY SERVICES INC., VERISK ANALYTICS, INC. and TRANS UNION LLC, <br><br> *Defendants.* | Civil Action No. 1:24-cv-00348-SB |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT BY**
**ARGUS INFORMATION & ADVISORY SERVICES INC. AND TRANS UNION LLC**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 2

SUMMARY OF ARGUMENT ................................................................................................ 2

SUMMARY OF FACTUAL ALLEGATIONS ........................................................................ 3

    A.    The parties to this litigation ................................................................. 3

    B.    Argus enters contracts with government regulators and separately enters contracts with JPMC as part of Argus's commercial Benchmarking Study........... 4

    C.    Argus's alleged use of Regulatory Data giving rise to JPMC's Complaint .......... 5

    D.    The government investigates Argus and reaches a settlement, and JPMC sues Argus shortly thereafter ................................................................. 6

STANDARD OF REVIEW ...................................................................................................... 7

ARGUMENT ........................................................................................................................... 8

I.    JPMC's Claim Under The Defend Trade Secrets Act Should Be Dismissed.................... 8

    A.    The Complaint fails to state a claim under the Defend Trade Secrets Act because the Regulators, not JPMC, own the alleged trade secrets ........................ 8

        1.    Under the Regulatory Contracts, the Regulators are the sole owners........ 8

        2.    Federal regulations provide that the Regulators are the owners .............. 10

    B.    In all events, the Defend Trade Secrets Act does not apply to any alleged conduct that occurred prior to 2016 .................................................................... 11

II.    JPMC Has No Claim Under The Delaware Uniform Trade Secrets Act.......................... 12

    A.    The DUTSA applies only within Delaware's territorial limits............................ 12

    B.    The alleged misappropriation occurred in New York........................................... 13

    C.    Because the DUTSA does not apply, JPMC's claim must be dismissed.............. 14

    D.    JPMC's DUTSA claim should be dismissed for the additional reason that any duty that Argus owed is to the Regulators .................................................... 15

III.    JPMC Lacks Article III Standing Because It Fails To Demonstrate That It Suffered Legally Cognizable Harm Or Damages ........................................................................... 15

IV.     JPMC Fails To Allege Any Cognizable Theory Of Liability For TransUnion ................ 18

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Acrisure Holdings, Inc. v. Frey*,
    2019 WL 1324943 (D. Del. Mar. 25, 2019) ........................................................................ 18

*AlixPartners, LLP v. Mori*,
    2022 WL 1111404 (Del. Ch. Apr. 14, 2022) ....................................................................... 12

*Arrowood Indem. Co. v. Hartford Fire Ins. Co.*,
    774 F. Supp. 2d 636 (D. Del. 2011) ..................................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 7, 18

*Brinkmeier v. BIC Corp.*,
    733 F. Supp. 2d 552 (D. Del. 2010) ............................................................................... 18, 19

*Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*,
    2018 WL 5109836 (D. Del. Oct. 18, 2018) ......................................................................... 20

*Buck v. Hampton Tp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) ................................................................................................... 9

*Camick v. Holladay*,
    758 F. App'x 640 (10th Cir. 2018) ....................................................................................... 12

*Children's Health Def., Inc. v. Rutgers*,
    93 F.4th 66 (3d Cir. 2024) .................................................................................................... 19

*Common Cause of Pennsylvania v. Pennsylvania*,
    558 F.3d 249 (3d Cir. 2009) ................................................................................................... 7

*Curlett v. Madison Indus. Servs. Team, Ltd.*,
    863 F. Supp. 2d 357 (D. Del. 2012) ..................................................................................... 20

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
    31 N.Y.3d 441 (2018) ........................................................................................................... 14

*Focus Fin. Partners, LLC v. Holsopple*,
    250 A.3d 939 (Del. Ch. 2020) ........................................................................................ 12, 13

*Focused Impressions, Inc. v. Sourcing Grp., LLC*,
    2020 WL 1892062 (D. Mass. Apr. 16, 2020) ........................................................................ 9

*Food & Drug Admin. v. All. for Hippocratic,*
   *Med.*, 602 U.S. 367 (2024) ............................................................................... 16

*Galderma Lab'ys, L.P. v. Medinter US, LLC,*
   2019 WL 13114421 (D. Del. Oct. 25, 2019) .................................................. 20

*Gould Elecs. Inc. v. U.S.,*
   220 F.3d 169 (3d Cir. 2000) ............................................................................ 7

*Hydrogen Master Rights., Ltd. v. Weston,*
   228 F. Supp. 3d 320 (D. Del. 2017) ................................................ 11, 12, 17

*In re Burlington Coat Factory Sec. Litig.,*
   114 F.3d 1410 (3d Cir. 1997) .......................................................................... 9

*Kiger v. Mollenkopf,*
   2021 WL 5299581 (D. Del. Nov. 15, 2021) .................................................. 10

*Knuth v. Cap. Patrol, LLC Ohio,*
   2024 WL 2925321 (S.D. Cal. June 10, 2024) ................................................ 18

*Labyrinth, Inc. v. Urich,*
   2024 WL 295996 (Del. Ch. Jan. 26, 2024) .................................................. 19

*Macquarie Bank Ltd. v. Knickel,*
   793 F.3d 926 (8th Cir. 2015) ........................................................................ 15

*Maddox v. Bank of New York Mellon Tr. Co., N.A.,*
   19 F.4th 58 (2d Cir. 2021) ............................................................................ 16

*Maio v. Aetna, Inc.,*
   221 F.3d 472 (3d Cir. 2000) ............................................................................ 7

*Mayer v. Belichick,*
   605 F.3d 223 (3d Cir. 2010) .......................................................................... 10

*MicroStrategy Inc. v. Acacia Rsch. Corp.,*
   2010 WL 5550455 (Del. Ch. Dec. 30, 2010) ................................................ 20

*Newport Enters. v. Isys Techs.,*
   2015 WL 4715300 (D. Utah Aug. 7, 2015) .................................................. 19

*Oakwood Lab'ys LLC v. Thanoo,*
   999 F.3d 892 (3d Cir. 2021) .................................................................. 17, 18

*Ocimum Biosolutions (India) Ltd., Tr. of Ocimum Biosolutions Inc. v. LG Chem. Ltd.*,
    2022 WL 3354708 (D. Del. July 31, 2022) ............................................................... 19

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471 (3d Cir. 2001) .................................................................................... 20

*Penegar v. Liberty Mut. Ins. Co.*,
    2024 WL 3852278 (4th Cir. Aug. 19, 2024) ............................................................ 16

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) .................................................................................. 10

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997) ...................................................................................... 7

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
    2020 WL 6484640 (S.D. Cal. Nov. 4, 2020) ........................................................... 19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................... 16, 18

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*,
    2024 WL 1116090 (S.D.N.Y. Mar. 13, 2024) ......................................................... 14

*Taliaferro v. Darby Tp. Zoning Bd.*,
    458 F.3d 181 (3d Cir. 2006) ............................................................................ 7, 15, 16

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ....................................................................................... 16, 17, 18

*UD Tech. Corp. v. Phenomenex, Inc.*,
    2007 WL 28295 (D. Del. Jan. 4, 2007) .................................................................... 15

*United States v. Hays*,
    515 U.S. 737 (1995) ................................................................................................. 16

*Wenske v. Blue Bell Creameries, Inc.*,
    2018 WL 5994971 (Del. Ch. Nov. 13, 2018) .......................................................... 20

*Wit Software v. Talkdesk, Inc.*,
    2023 WL 3454193 (D. Del. May 15, 2023) .............................................................. 12

*Elkay Interior Sys. Int'l, Inc. v. Weiss*,
    2022 WL 17961568 (D. Del. Dec. 27, 2022) ........................................................... 14

*Zabit v. Brandometry, LLC,*
  540 F. Supp. 3d 412 (S.D.N.Y. 2021)........................................................................... 9

## Statutes and Acts

6 Del. C. § 2001 ........................................................................................................... 2, 15

18 U.S.C. § 1831 ............................................................................................................... 11

18 U.S.C. § 1836.......................................................................................................... 2, 8

18 U.S.C. § 1839 .......................................................................................................... 8, 9

Pub. L. No. 114–153, § 2(e)........................................................................................ 11

5 U.S.C. § 552(b)(4) ..................................................................................................... 11

Uniform Trade Secrets Act §§ 2 & 3 ...................................................................... 15

## Regulations

8 CFR § 52.227-14......................................................................................................... 11

12 C.F.R. § 4.32 ...................................................................................................... 10, 11

12 C.F.R. § 261.20 .................................................................................................. 10, 11

12 CFR § 261.2 .............................................................................................................. 11

48 C.F.R. § 52.227-17 .................................................................................................. 11

FAR 52.25-2 ................................................................................................................... 11

## Rules

Federal Rule of Civil Procedure 12 ......................................................................... 7

## INTRODUCTION

This lawsuit by JPMorgan Chase Bank, National Association ("JPMC") alleges trade secret misappropriation relating to certain data it provided to government regulators. The claims fail as a matter of law because JPMC was owed no duty, was not injured, and neither owned nor possessed the alleged trade secrets when the alleged misappropriation occurred. The party with standing to assert claims concerning the data at issue—the government—has already asserted and settled its claims. That should be the end of this litigation.

Beginning in 2009, Argus Information & Advisory Services LLC ("Argus") entered a series of contracts with federal government regulators to act as a data aggregator on their behalf and receive anonymized consumer credit card data from the major financial institutions in the United States, including JPMC, for processing and analyzing. Argus's contracts with the government regulators specified that the data Argus received from the financial institutions belonged exclusively to the regulators. Argus has no contract with JPMC concerning this data.

Argus separately has a line of commercial business providing benchmarking studies to a consortium of banks that issue credit cards. The banks contribute their data and pay Argus a fee to participate in the study, and in exchange Argus provides benchmarking and related services to the participating banks. While JPMC initially participated in the study, it left the consortium in 2010 and stopped providing its data. JPMC alleges that Argus used the data it received under the regulatory contracts to create synthetic (proxy) data that would "mimic" JPMC's credit card data. JPMC alleges Argus used the proxy data to "fill the gap" that arose when JPMC stopped participating in the study. JPMC does not allege that any of its competitors, or anyone, received products or services that identified any particular credit card customers of JPMC, or that they knew whether JPMC participated in the study. Rather, the data Argus uses to create benchmarks is all

aggregated and anonymized. JPMC's Complaint suffers from several fatal flaws which require dismissal.

## NATURE AND STAGE OF THE PROCEEDINGS

JPMC filed this lawsuit on March 19, 2024 asserting two claims against Argus, Trans Union LLC ("TransUnion"), and Verisk Analytics, Inc. ("Verisk"): (1) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. ("DTSA"); and (2) violation of the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001, et seq ("DUTSA"). Argus and TransUnion filed a pre-motion letter requesting either a conference with the Court or permission to file a motion to dismiss. *See* D.I. 17. Verisk did the same. *See* D.I. 18. On June 27, 2024, JPMC filed its response letters. *See* D.I. 23 & 24. On August 21, 2024, the Court held a conference to determine whether JPMC wished to amend its Complaint in response to the arguments raised in Defendants' letters. JPMC confirmed that it would not amend its Complaint and intended to stand on its current allegations.

## SUMMARY OF ARGUMENT

The Court should grant Argus and TransUnion's motion to dismiss for the following reasons.

*First*, JPMC's federal claim under the Defend Trade Secrets Act should be dismissed because JPMC does not own the alleged trade secrets. Argus has already settled with the owner of the regulatory data that was allegedly misused: the government regulators. Argus paid $37 million to settle those claims. JPMC cannot make Argus pay twice for the same alleged conduct—if JPMC thinks it has been wronged, it can ask the government for a piece of settlement. In all events, this claim should be dismissed as to the alleged misappropriation that pre-dated the enactment of the Defend Trade Secrets Act in 2016.

*Second*, JPMC's Delaware state law misappropriation claim must be dismissed because the Delaware Uniform Trade Secrets Act applies only to misappropriation that occurs in Delaware.

2

The alleged misappropriation by Argus occurred in New York. Even if the Delaware statute applied (which it does not), the claim fails for the additional reasons that JPMC did not have possession of the alleged trade secrets when they were allegedly misappropriated, and Argus owed any duty of confidentiality that it may have had to the government regulators, not JPMC.

*Third*, JPMC fails to establish the constitutional minimum to demonstrate Article III standing because it did not plead any concrete harm or injury to JPMC. As such, JPMC's Complaint must be dismissed as this Court lacks subject matter jurisdiction.

*Fourth*, TransUnion is not a proper party to this lawsuit. JPMC fails to allege facts plausibly showing TransUnion itself misappropriated any alleged trade secrets. JPMC does not attempt to, and cannot, overcome the presumption of corporate separateness to establish an alter ego theory of liability that holds TransUnion responsible for Argus's conduct.

## SUMMARY OF FACTUAL ALLEGATIONS[1]

### A.    The parties to this litigation

JPMC is a national banking association and a major credit card issuer in the United States. Compl. ¶¶ 6, 17. JPMC is headquartered in Columbus, Ohio and alleges that it conducts part of its credit card business in Delaware. *Id.* ¶¶ 6, 7, 34.

Argus is a Delaware corporation located in White Plains, New York. *Id.* ¶ 8. Argus is a financial services company that provides benchmarking, analytics, models, and advisory services. *Id.* Verisk is a Delaware corporation with its principal place of business in Jersey City, New Jersey. *Id.* ¶ 9. Verisk formerly owned Argus, during the period of August 31, 2012 to April 7, 2022. *Id.* ¶ 10. TransUnion is a Delaware limited liability company with its principal place of business in

---

[1] JPMC's factual allegations are accepted as true solely for purposes of Rule 12(b)(6). *See infra* Standard of Review.

3

Chicago, Illinois. *Id.* ¶¶ 11-12. TransUnion acquired Argus from Verisk on April 8, 2022 as part of a broader transaction whereby TransUnion purchased several subsidiaries from Verisk. *Id.*

**B.     Argus enters contracts with government regulators and separately enters contracts with JPMC as part of Argus's commercial Benchmarking Study**

Government regulators such as the Office of the Comptroller of the Currency ("OCC"), the Board of Governors of the Federal Reserve System ("FRB"), and the Federal Reserve Bank of Philadelphia ("FRBP", and together with the OCC and FRB, the "Regulators") oversee financial institutions. Compl. ¶¶ 30, 52. As part of those oversight duties, beginning in 2009 the Regulators mandated that certain banks, including JPMC, provide the Regulators with anonymized domestic credit card data. *Id.* ¶¶ 31, 52. The anonymized data did not contain any personally identifiable information ("PII") of the banks' customers. *Id.*

The Regulators retained Argus to act as a data aggregator on their behalf to receive and process the anonymized credit card data submitted to the Regulators by the banks. *Id.* ¶¶ 32, 54, 55. Specifically, Argus entered contracts with: (i) the OCC beginning in 2009, *id.* ¶ 33, Ex. 2 (2009 OCC Contract), Ex. 1 (2012 OCC Contract); (ii) the FRB beginning in 2012, *id.* ¶ 53, Ex. 3 (FRB Contract); and (iii) the FRBP beginning in 2017, *id.* ¶ 54, Ex. 4 (FRBP Contract). Pursuant to the contracts with the Regulators (the "Regulatory Contracts"), the relevant federal Regulator determined which data Argus would receive from the banks, and Argus was responsible for gathering, aggregating, organizing, and reporting the data in accordance with the Regulatory Contracts. *See id.* ¶¶ 32, 53; *see, e.g.*, Ex. 1 §§ C.5.1, C.5.4. Argus received the data from the banks on a monthly basis. Compl. ¶¶ 19, 44.

JPMC claims in this lawsuit that the data Argus received on a monthly basis pursuant to the Regulatory Contracts (the "Regulatory Data") is its trade secret. Compl. ¶¶ 19-29. However, the Regulatory Contracts provided that the data Argus received from the banks would be the sole

property of the relevant Regulator, not the bank that submitted it. For example, Argus's contract with the OCC provided: "All data collected from the Banks and all deliverables associated with this contract shall be the sole property of the OCC" and "[a]ny privilege or confidentiality that applies to the information will remain solely with the OCC and, therefore, decisions regarding the disclosure and use of confidential data may be made only by the OCC." Ex. 1 § H.3; *see also* Ex. 2 § 13; Ex. 3 § C 6.0; Ex. 4 §§ 3.1, 3.3.[2] Argus had no contract with JPMC concerning the Regulatory Data.

Separately, as part of its commercial business, Argus has a benchmarking study for a consortium of credit card issuers, which had included JPMC ("Benchmarking Study"). *Id.* ¶¶ 37, 39. The credit card issuers provide Argus with extensive anonymized credit card data on a monthly basis and pay a fee to Argus to participate in the Benchmarking Study. *Id.* ¶¶ 37, 42. In exchange, Argus provides benchmarking services and reports. *Id.* ¶ 37. Argus also provides Benchmarking Study participants with bespoke analytics and modeling services ("Related Services"). *Id.* ¶ 37.

### C.    Argus's alleged use of Regulatory Data giving rise to JPMC's Complaint

In November 2010, JPMC stopped participating in Argus's Benchmarking Study. Compl. ¶ 42.[3] JPMC alleges that to fill the gap in its data caused by JPMC's departure, Argus developed a "sophisticated computer program" that would "mimic" the Regulatory Data that Argus received from JPMC on a monthly basis for use in the Benchmarking Study and Related Services that Argus provided commercially. *Id.* ¶¶ 42, 47. While JPMC alleges that Argus used the alleged "mimic" trade secret data in its Benchmarking Study and Related Services, and then "sent results of the

---

[2] Cited exhibits are attached to the Declaration of Sara Carnahan filed herewith.

[3] While not relevant to this motion to dismiss or mentioned in the Complaint, for completeness the Court should know JPMC rejoined the consortium in May 2018 and resumed submitting its data to Argus for use in the Benchmarking Study. JPMC withdrew again in November 2022.

Benchmarking Study and Related Services incorporating the Trade Secret Data to other credit card issuers," *id.* ¶ 49, JPMC does not allege that these products and services ever disclosed that any of the anonymized credit card data belonged to JPMC.

JPMC alleges that after TransUnion acquired Argus on April 8, 2022, TransUnion "exclusively controlled Argus" and failed to prevent Argus's models built with JPMC's alleged trade secret data from continuing to be used or accessed by customers based on JPMC's "information and belief." *Id.* ¶¶ 78, 80, 102-103. JPMC alleges that "TransUnion continued to misappropriate the Trade Secret Data to enhance its and Argus' businesses" and that "TransUnion was also unjustly enriched by its use of the Trade Secret Data in its other businesses," *id.* ¶¶ 81, 105, but pleads no facts in support of these conclusory allegations.

**D.      The government investigates Argus and reaches a settlement, and JPMC sues Argus shortly thereafter**

In or around September 2020, the Department of Justice ("DOJ") began an investigation into Argus's practices concerning the Regulatory Contracts. Compl. ¶ 63. In December 2020, Argus informed the Regulators that certain data provided to Argus by financial institutions may have been referenced for impermissible purposes under the Regulatory Contracts. *Id.* ¶ 64. On May 31, 2022, the FRB and OCC provided JPMC with written notice regarding the investigation into Argus. *Id.* ¶¶ 83, 84. In June 2022, JPMC began demanding information from Argus, Verisk, and TransUnion. *Id.* ¶¶ 85-87.

On March 12, 2024, Argus entered a settlement agreement with the DOJ on behalf of the OCC, FRB, FRBP, and Consumer Financial Protection Bureau ("CFPB"), in which Argus agreed to pay $37 million with no admission of liability. Compl. Ex. A (Settlement Agreement). In the Settlement Agreement, the United States contended that it had civil claims against Argus for its "knowingly improper access, use, and retention of anonymized credit card data received pursuant

to the Regulatory Contracts, which violated the terms of those contracts, during the period from November 30, 2010 through December 31, 2020" and that "Argus improperly accessed, used, and retained this anonymized credit card data to create synthetic/proxy data that it incorporated into certain products and services it sold to certain commercial customers." *Id.* ¶ D.

A few days after the DOJ settlement, JPMC filed this lawsuit on March 19, 2024.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the court finds, after "accepting all well-pleaded facts as true, and viewing them in the light most favorable to plaintiff, [that] plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000). The court is not "required to accept as true unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Pleadings that include only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual. Facial attacks . . . contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). However, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000).

**ARGUMENT**

**I.      JPMC's Claim Under The Defend Trade Secrets Act Should Be Dismissed**

> **A.      The Complaint fails to state a claim under the Defend Trade Secrets Act because the Regulators, not JPMC, own the alleged trade secrets**

The Defend Trade Secrets Act provides that an "owner of a trade secret that is misappropriated may bring a civil action[.]" 18 U.S.C. § 1836(b)(1). An "owner" of a trade secret is the "person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." *Id*. § 1839(4). JPMC cannot bring this civil action because it is not the "owner" of the alleged trade secrets under the applicable contracts or pursuant to federal regulations.

> **1.      Under the Regulatory Contracts, the Regulators are the sole owners**

The Regulatory Contracts provide that the government Regulators are the sole owners of the Regulatory Data from JPMC. For example, Argus's contract with the OCC provides that "[a]ll data collected from the Banks and all deliverables associated with this contract shall be the *sole property* of the OCC" and "[a]ny privilege or confidentiality that applies to the information will remain *solely* with the OCC and, therefore, decisions regarding the disclosure and use of confidential data may be made only by the OCC." Ex. 1 § H.3 (emphasis added); *see also* Ex. 2 § 13 ("All data collected from the participating banks will be the sole property of the OCC. Any privilege or confidentiality that applies to the information will remain solely with the OCC and, therefore, decisions regarding the disclosure and use of confidential data may be made only by the OCC"); Ex. 3 §§ C, 6.0 (defining "Data" as the "identified unique fields of loan-level Data . . . that the Contractor is to collect" from the financial institutions on a monthly basis and stating that "the Deliverables as defined in Section C.3.8 and Data and the Database the Contractor provides under this Contract shall be owned by the Board"); Ex. 4 §§ 3.1, 3.3 ("FRBP has identified the Data

8

fields, which fields are set forth in the *Data Dictionary*, that the Contractor shall collect from each [financial institution] in its performance of the Services. All Data and any derivatives of the Data, including the Data "extract," are and shall remain at all times the exclusive property of the Board.") (emphasis in original). Accordingly, the Regulators are the parties with standing to assert any claims against Defendants—not JPMC. *See Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 419-20 (S.D.N.Y. 2021) (dismissing DTSA claim for one plaintiff because plaintiff was not the exclusive owner of the alleged trade secret); *Focused Impressions, Inc. v. Sourcing Grp., LLC*, 2020 WL 1892062, at *4-5 (D. Mass. Apr. 16, 2020) (dismissing DTSA claim because plaintiff failed to demonstrate ownership and collecting cases emphasizing that ownership is an essential element of the claim).

The Court may consider the Regulatory Contracts at the motion to dismiss stage because JPMC repeatedly relies on them in its Complaint. *See, e.g.*, Compl. ¶ 2 ("In fact, Argus' contracts with the Regulators restricts Argus' ability to use, disclose, or distribute credit card data for commercial purposes"), ¶ 32 (same), ¶ 55 (same). The Regulatory Contracts are the reason why Argus obtained any Regulatory Data from JPMC to begin with, and as noted above, JPMC expressly relies on them to allege the Regulatory Data was a trade secret. *See* 18 U.S.C. § 1839(5)(B)(ii)(II)-(III) (data must be acquired "under circumstances *giving rise to a duty* to maintain the secrecy of the trade secret" or "through a person *who owed a duty* to the person seeking relief to maintain the secrecy") (emphasis added). The Regulatory Contracts therefore are "matters incorporated by reference or integral to the claim." *Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotations omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("A 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for

summary judgment.'") (citation omitted); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). JPMC does not and cannot dispute the authenticity of the Regulatory Contracts or that it was not on notice of their contents, the key rationale behind the rule. *Id.* at 1196-97.

JPMC contends the Court should ignore the Regulatory Contracts and blindly accept JPMC's allegation that it is the owner of the trade secrets. D.I. 23. "On the contrary, a court is not required to accept legal conclusions alleged in the complaint" and "[t]he pleading must contain sufficient factual allegations so as to state a facially plausible claim for relief." *Mayer v. Belichick*, 605 F.3d 223, 229-30 (3d Cir. 2010) (citations omitted). Indeed, "the court need not accept as true allegations in the complaint contradicted by documents on which the complaint relies." *Kiger v. Mollenkopf*, 2021 WL 5299581, at *1 (D. Del. Nov. 15, 2021). The Regulatory Contracts directly contradict JPMC's allegations, and the Court may consider them.[4]

### 2.    Federal regulations provide that the Regulators are the owners

The Regulators' ownership of the Regulatory Data is confirmed by applicable federal regulations. JPMC alleges that it "treats any Trade Secret Data it provides to its regulators as 'Confidential Supervisory Information[.]'" Compl. ¶ 27. Under both OCC and FRB regulations, Confidential Supervisory Information ("CSI") belongs to the Regulators. *See* 12 C.F.R. § 261.20 ("All confidential supervisory information . . . remains the property of the Board."); 12 C.F.R. §

---

[4] *Arrowood Indem. Co. v. Hartford Fire Ins. Co.*, 774 F. Supp. 2d 636, 658 (D. Del. 2011) cited by JPMC, *see* D.I. 23, is inapposite as it merely analyzes when a party is a third-party beneficiary and does not address whether a contract with the government can diminish the rights of a third-party.

4.32(b)(1)-(2) ("Confidential information relating to operating and no longer operating national banks . . . [i]s the property of the Comptroller."). Likewise, federal regulations governing procurement, including procurement of data which applied to the Regulatory Contracts, grant Regulators unlimited rights in all data delivered to them. *See* 8 CFR § 52.227-14(b); 48 C.F.R. § 52.227-17(b); *see also* Ex. 1 § II, FAR 52.25-2 Clauses; *see also* Ex. 2 § 15; Ex. 3 § 6.[5]

JPMC argues that data in its possession is not CSI, even if the Regulators have copies that would be considered CSI. *See* D.I. 23 at 2 (citing 12 CFR § 261.2(b)). That is irrelevant to the issue before the Court, which is: who owned the data *after* it was transmitted to Argus in its capacity as the Regulators' agent? The applicable regulations answer that question (as do the Regulatory Contracts)—the Regulators are considered the owners of the data provided to them. *See* 12 C.F.R. § 261.20; 12 C.F.R. § 4.32(b)(1)-(2). The Regulators have already settled with Argus for $37 million. JPMC cannot recover from Argus under the DTSA when the owner of the alleged trade secrets has already recovered.

### B. In all events, the Defend Trade Secrets Act does not apply to any alleged conduct that occurred prior to 2016

The DTSA, "by its own terms, applies only to an act of misappropriation that 'occurs on or after the date of the enactment of this Act.'" *Hydrogen Master Rights., Ltd. v. Weston*, 228 F. Supp. 3d 320, 338 (D. Del. 2017) (quoting Pub. L. No. 114–153, § 2(e) (codified as amended at 18 U.S.C. § 1831 et seq.)). The DTSA was enacted on May 11, 2016, and thus, a plaintiff states a plausible claim for relief only if it "sufficiently alleges a prohibited 'act' occurring after May 11, 2016." *Id.* (citation omitted). Courts have interpreted the DTSA to apply to acts of

---

[5] JPMC cites to 5 U.S.C. § 552(b)(4), *see* D.I. 23, but that provision says nothing about who is the owner of the trade secrets with standing to pursue claims *after* the information is provided to the government.

misappropriation that began prior to DTSA's enactment only if that misappropriation continued to occur after the enactment date. *See, e.g.*, *Camick v. Holladay*, 758 F. App'x 640, 645 (10th Cir. 2018) (dismissing the claim for failure to allege post-2016 continuing use). Based on the DTSA's definition of misappropriation, merely possessing trade secrets post-2016 does not mean that the defendant "acquired, disclosed, or used a trade secret." *Id.*

JPMC fails to allege that Argus *continued* to misappropriate the same alleged trade secret data after 2016 that it received before 2016. JPMC cannot do so because Argus obtained new Regulatory Data from JPMC each month, and each month allegedly used the new data to create proxy data for its products and services. Compl. ¶¶ 18, 19, 44. Stated differently, while JPMC alleges that Argus used the same method of misappropriation over time, there are no factual allegations in the Complaint that Argus continued to misappropriate the same trade secrets. JPMC's pre-2016 claims for misappropriation must therefore be dismissed. *See Hydrogen Master Rights*, 228 F. Supp. 3d at 338.

## II.   JPMC Has No Claim Under The Delaware Uniform Trade Secrets Act

### A.   The DUTSA applies only within Delaware's territorial limits

Absent a showing of legislative intent to the contrary, "Delaware courts presume that 'a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted.'" *AlixPartners, LLP v. Mori*, 2022 WL 1111404, at *18 (Del. Ch. Apr. 14, 2022) (citation omitted). Delaware courts have held that "DUTSA lacks any indication that the legislature intended for it to apply outside the territorial jurisdiction of Delaware" and, therefore, "[DUTSA] lacks extraterritorial effect." *See Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch. 2020); *see also Wit Software v. Talkdesk, Inc.*, 2023 WL 3454193, at *9 (D. Del. May 15, 2023) ("It has been uniformly held by both state and federal courts in Delaware that [the DUTSA] does not have extraterritorial effect.").

Here, JPMC alleges that: (1) Defendants and certain entities related to JPMC are incorporated in Delaware, but none of the parties have their principal places of business in Delaware, Compl. ¶¶ 6-11; (2) a "specialized team of JPMC employees, all located in Delaware, assembled and prepared the Trade Secret Data" and then sent the data to Argus located in New York, *id.* ¶ 34; (3) JPMC personnel in Delaware received certain statements from Argus, *id.* ¶ 70; and (4) Argus allegedly disseminated illicitly used data to entities, that "upon information and belief," are Delaware companies and citizens, *id.* ¶¶ 15, 49. None of those facts suffice to invoke the DUTSA. The "state of incorporation" is "rarely mentioned for a trade secrets claim" in a conflict of laws analysis. *Focus Fin. Partners*, 250 A.3d at 970. Instead, courts "give the greatest weight to where the misappropriation occurred." *Id.* As explained below, the location of the alleged misappropriation is New York, not Delaware.

### B.  The alleged misappropriation occurred in New York

JPMC transmitted the data to Argus, located in New York, where Argus has its principal place of business. Compl. ¶¶ 6-11. It is only after this point, when the data was in Argus's hands in New York, that JPMC alleges any misappropriation occurred. New York is the location where Argus allegedly created and used customized software to mimic JPMC's trade secret data, distributed its products and services, and received the commercial benefit of the misuse. *Id.* ¶¶ 2-11, 33, 44-51, 54, 59-62. JPMC does not allege any facts concerning the misappropriation *by Argus* that occurred in Delaware—it alleges facts concerning its own JPMC employees that allegedly occurred in Delaware *before* any alleged misappropriation occurred. JPMC also claims there is a connection to Delaware by alleging that JPMC's competitors that received JPMC's alleged trade secrets were located in Delaware "upon information and belief" *Id.* ¶¶ 15, 49. Those allegations are impermissibly vague and fail to demonstrate a connection to Delaware because JPMC does not (and cannot) allege anyone ever received, obtained, viewed, or had access to JPMC's data or

13

alleged trade secrets. Instead, Argus's customers received anonymized, aggregated benchmark analytics. In short, New York is the location of every act by Argus alleged in the Complaint and is where the alleged misappropriation occurred.

### C.    Because the DUTSA does not apply, JPMC's claim must be dismissed

JPMC's claim should be dismissed because "Delaware law does not apply to the conduct alleged," which occurred in New York. *Elkay Interior Sys. Int'l, Inc. v. Weiss*, 2022 WL 17961568, at *4 (D. Del. Dec. 27, 2022). And because JPMC fails to plead or indicate that another state's laws may apply, the Court therefore cannot consider whether JPMC's Complaint can state a misappropriation of trade secret claim under New York or another state's laws. *Id.* (dismissing complaint where the plaintiff had specifically alleged "Trade Secret Misappropriation under Delaware Uniform Trade Secrets Act," which did not leave room for the court to apply a different state's trade secret law).

JPMC's failure is not a mere pleading deficiency that could be cured on amendment. Under New York law, dismissal would still be required because New York does not permit damages for unjust enrichment for trade secret misappropriation. *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 454 (2018). Rather, "damages in trade secret actions must be measured by the losses incurred by the plaintiff." *Id.*; *see also Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 2024 WL 1116090, at *3 (S.D.N.Y. Mar. 13, 2024) ("Damages in a misappropriation action 'must be measured by the loss of the plaintiff's commercial advantage, which may not correspond to what the defendant has wrongfully gained.'") (quoting *E.J. Brooks*, 31 N.Y.3d at 454). As demonstrated below in Section III, JPMC cannot plead any actual losses or harm.

14

**D.     JPMC's DUTSA claim should be dismissed for the additional reason that any duty that Argus owed is to the Regulators**

Even if the DUTSA applied, the claim fails because Argus did not owe any duty to JPMC. To state its claim for misappropriation under the DUTSA, JPMC must establish that the trade secret was acquired under circumstances "giving rise to a duty to maintain its secrecy" or "through a person who owed a duty." 6 Del. C. § 2001(2)(b)(2)(B)-(C). JPMC points only to the Regulatory Contracts as the source of the duty (which also demonstrates further that JPMC relies on the Regulatory Contracts, and they should be considered by the Court for this motion as discussed above). *See* Compl. ¶¶ 32, 55. That argument fails because Argus did not owe any duty to JPMC. Argus allegedly misappropriated the Regulatory Data from the Regulators, to whom it owed a duty of confidentiality under the Regulatory Contracts, not JPMC. *See UD Tech. Corp. v. Phenomenex, Inc.*, 2007 WL 28295, at *8 (D. Del. Jan. 4, 2007) (where duty to keep a trade secret arises from a contract, only parties to the contract have standing); Uniform Trade Secrets Act §§ 2 & 3 cmt. (2005) ("Where more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy."); *accord Macquarie Bank Ltd. v. Knickel*, 793 F.3d 926, 936-37 (8th Cir. 2015) (dismissing trade secret claim when plaintiff assigned its interests to third parties, who contracted with the defendant for limited use, holding that the misappropriation occurred only from those contracting parties).

**III.   JPMC Lacks Article III Standing Because It Fails To Demonstrate That It Suffered Legally Cognizable Harm Or Damages**

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro*, 458 F.3d at 188. To meet the constitutional minimum of standing, a plaintiff must establish three elements, including: "(1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2)

there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *United States v. Hays*, 515 U.S. 737, 742-43 (1995)).

Further, "[a]n injury in fact must be 'concrete,' meaning that it must be real and not abstract." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis in original). That is true even if a statute provides the plaintiff a damages remedy for proscribed conduct. *See id.* at 427-28; *see also Penegar v. Liberty Mut. Ins. Co.*, 2024 WL 3852278, at *3 (4th Cir. Aug. 19, 2024) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)) ("No matter what right or cause of action a statute may grant a plaintiff, she must still have an injury in fact to sue in federal court."); *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) ("In sum, *TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm.").

JPMC asserts, without any substantiating facts, that the alleged trade secret misappropriation "damaged JPMC and unjustly enriched Defendants" and that "JPMC is entitled to damages including but not limited to lost profits, unjust enrichment, [and] a reasonable royalty." Compl. ¶¶ 105-06, 122.

*First*, with respect to the damage to JPMC, those allegations fail to explain *how* Argus's alleged inclusion of Regulatory Data in Argus's Benchmarking Study or Related Services caused JPMC to suffer the requisite harm or injury required to establish Article III standing. JPMC's Complaint lacks any allegations that describe a causal connection between any injury and the

16

conduct complained of. Indeed, if inclusion of JPMC's data in Argus's products harmed JPMC in some way, JPMC would never have participated in the Benchmarking Study, sharing its data with "virtually every major credit card issuer" to begin with, nor would it have paid Argus to do so. Compl. ¶¶ 39, 42.

JPMC further alleges that Argus sent JPMC's competitors results of the Benchmarking Study and Related Services and models that were built on alleged trade secret data. *See id.* ¶¶ 49, 80, 102, 105, 118, 121. However, that is insufficient to establish injury-in-fact. The Benchmarking Study and Related Services only provided information on an aggregated basis and did not identify the issuer participants. *See id.* ¶ 37. JPMC does not and cannot allege that any customer knew of JPMC's participation in the Benchmarking Study or received data corresponding to JPMC's customers. JPMC does not allege any way in which a competitor of JPMC has gained an advantage over JPMC.

*Second*, with respect to JPMC's allegation that Argus and TransUnion were unjustly enriched because they profited from Argus's products, *id.* ¶¶ 105, 121, that is also insufficient to establish Article III standing because that does not demonstrate any actual harm or injury to JPMC. *See, e.g.*, *Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320, 337 (D. Del. 2017) (unjust enrichment requires an impoverishment and a relationship between the enrichment and impoverishment).

*Third*, JPMC contends that it is sufficient to plead merely the existence of a trade secret and its misappropriation under *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 913-14 (3d Cir. 2021) and that the Supreme Court's later decision in *TransUnion* "reaffirmed that Article III allows plaintiffs to sue when their alleged injury bears "a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *See* D.I. 23 (quoting

*TransUnion*, 594 U.S. at 417). That is incorrect. *TransUnion* was decided by the Supreme Court *after* the Third Circuit's *Oakwood* decision, rendering *Oakwood's* statement that "[b]y statutory definition, trade secret misappropriation is harm" invalid or, at least, overbroad. *See Oakwood*, 999 F.3d at 913. *TransUnion* explicitly states that the Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341).

Since JPMC failed to plead any harm or injury that it suffered, its claims must be dismissed. *See Knuth v. Cap. Patrol, LLC Ohio*, 2024 WL 2925321, at *3-4 (S.D. Cal. June 10, 2024) (dismissing misappropriation claim where plaintiff failed to allege how he had been injured by the misappropriation and where the allegations were too speculative); *see also Acrisure Holdings, Inc. v. Frey*, 2019 WL 1324943, at *7-10 (D. Del. Mar. 25, 2019) (dismissing misappropriation claims and holding plaintiff lacked standing for failure to plead an injury-in-fact because the confidential information belonged to a subsidiary, and not to the plaintiff itself).

## IV.    JPMC Fails To Allege Any Cognizable Theory Of Liability For TransUnion

JPMC's sparse allegations concerning TransUnion are insufficient to pass muster and must be dismissed under Rule 12(b)(6) as they are nothing more than conclusions, naked assertions, and formulaic recitations of the elements of JPMC's claims, *see Iqbal*, 556 U.S. at 678, or are allegations only upon "information and belief." *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 565 (D. Del. 2010) ("[A] plaintiff may plead based upon information and belief, 'but only if the pleading sets forth the specific facts upon which the belief is reasonably based.'") (citation omitted). For example, JPMC pleads that TransUnion, which only purchased Argus in April 2022: (1) knows Argus built models, which remain in use, and "upon information and belief" failed to prevent models from continuing to be used, Compl. ¶¶ 80, 103; (2) "continued to misappropriate

the Trade Secret Data to enhance its and Argus' business," *id.* ¶ 81; and (3) earned revenue from Argus's alleged misuse and was unjustly enriched, *id.* ¶¶ 103, 105.

JPMC's allegations that TransUnion itself misappropriated alleged trade secrets are conclusory and unsupported by any facts. *Brinkmeier*, 733 F. Supp. 2d at 565; *Children's Health Def., Inc. v. Rutgers*, 93 F.4th 66, 82 (3d Cir. 2024) (affirming dismissal as the complaint identified nothing but "information and belief" allegation in support of proposition). And the remaining allegations concerning TransUnion's "knowledge" and its "failure to prevent" misappropriation, do not support claims against TransUnion because another party's misappropriation does not itself constitute TransUnion's misappropriation. *See Labyrinth, Inc. v. Urich*, 2024 WL 295996, at *30 (Del. Ch. Jan. 26, 2024) (complaint lacked specific details about how a defendant impermissibly used or acquired the trade secret and "potential misuse does not establish actual misuse"); *Ocimum Biosolutions (India) Ltd., Tr. of Ocimum Biosolutions Inc. v. LG Chem. Ltd.*, 2022 WL 3354708, at *13 (D. Del. July 31, 2022) (conclusory allegations that "lump[]" together defendants "without specifying who is alleged to have done what when" are insufficient); *Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2020 WL 6484640, at *6 (S.D. Cal. Nov. 4, 2020) (mere knowledge of misappropriation of trade secrets and the failure to prevent it are insufficient); *Newport Enters. v. Isys Techs.*, 2015 WL 4715300, at *3 (D. Utah Aug. 7, 2015) (failing to prevent allegations without specific evidence of use and disclosure are insufficient).

While JPMC notified the Court that its principal allegations concerning TransUnion are not dependent on piercing the corporate veil to hold TransUnion liable for Argus's conduct, *see* D.I. 23 at 3, if JPMC changes course to argue a veil-piercing theory or that Argus's actions can be imputed to TransUnion, those arguments would fail. Under Delaware law, there is the "presumption of corporate separateness [which] may only be overcome by a showing of fraud,

injustice, or unfairness." *Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, 2018 WL 5109836, at *4 (D. Del. Oct. 18, 2018). "[I]n order to succeed on an alter ego theory of liability, a plaintiff must establish that in all aspects of the business, the relevant corporate entities 'actually functioned as a single entity and should be treated as such.'" *Galderma Lab'ys, L.P. v. Medinter US, LLC*, 2019 WL 13114421, at *4 (D. Del. Oct. 25, 2019) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001)). "Courts have refused to pierce the [corporate] veil even when subsidiary corporations . . . accept administrative support from the parent, and have a significant economic relationship with the parent." *Pearson*, 247 F.3d at 485.

Here, JPMC merely alleges that: (1) "TransUnion exclusively controlled Argus" and "installed its senior personnel as Argus' CEO and other senior management positions," Compl. ¶ 78; and (2) "[i]n its public filings, TransUnion stated the Argus acquisition enhanced TransUnion's business" and upon "information and belief" Argus shared its insights sourced from alleged trade secret data with TransUnion and TransUnion used the alleged trade secret data for its own commercial purposes, *id.* ¶ 101. These allegations do not come close to meeting the required standards as they are nothing more than conclusory statements and do not establish that in all aspects of the business Argus and TransUnion functioned as a single entity. *See MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010); *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018); *Curlett v. Madison Indus. Servs. Team, Ltd.*, 863 F. Supp. 2d 357, 363 (D. Del. 2012). Nor do JPMC's allegations suggest any fraud, injustice, or unfairness.

## CONCLUSION

For these reasons, the Court should dismiss the allegations in JPMC's Complaint with respect to Argus and TransUnion, with prejudice.

Dated: August 30, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LPP

By: */s/ R. Judson Scaggs, Jr.*
R. Judson Scaggs, Jr. (#2676)
Kevin M. Coen (#4775)
Sara Carnahan (#7175)
1201 N. Market Street,
Wilmington, DE 19801
(302) 658-9200
rscaggs@morrisnichols.com
kcoen@morrisnichols.com
scarnahan@morrisnichols.com


WOLLMUTH MAHER & DEUTSCH LLP

David H. Wollmuth *(pro hac vice)*
Joshua M. Slocum *(pro hac vice)*
Roselind F. Hallinan *(pro hac vice)*
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
rhallinan@wmd-law.com

*Counsel for Defendants Argus Information & Advisory Services Inc. and Trans Union LLC*

21