## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:24-cv-348-SB |
| ARGUS INFORMATION & ADVISORY SERVICES INC., VERISK ANALYTICS, INC. and TRANS UNION LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT VERISK ANALYTICS, INC.'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

OF COUNSEL:

William A. Burck
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
williamburck@quinnemanuel.com

Viola Trebicka
Alexandre J. Tschumi
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000
violatrebicka@quinnemanuel.com
alextschumi@quinnemanuel.com

DATED: August 30, 2024

Michael A. Barlow (#3928)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com

*Counsel for Defendant Verisk Analytics, Inc.*

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................1

II. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.................2

III. SUMMARY OF ARGUMENT ..................................................................2

IV. BACKGROUND ......................................................................................4

    A. The Parties .......................................................................................4

    B. The Regulatory Data ........................................................................4

    C. JPMC's Efforts To Keep The Data Secret ........................................6

    D. JPMC's Allegations Regarding Misappropriation By Argus ................7

    E. The Government's Investigation Into Potential Misuse Of The Regulatory Data By Argus ....................................................................8

    F. The Anonymous Letter .....................................................................9

    G. JPMC's (Lack Of) Allegations Regarding Misappropriation By Verisk.............10

V. LEGAL STANDARD ..............................................................................11

VI. ARGUMENT ..........................................................................................11

    A. JPMC Fails To State A DUTSA Claim Because The Law Lacks Extraterritorial Effect ....................................................................11

    B. JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not Sufficiently Allege Misappropriation *By Verisk*.....................................12

        1. JPMC Makes No Well-Pleaded Allegations Of Misappropriation By Verisk .........................................................................12

        2. JPMC Cannot Impute Argus's (Or Other Subsidiaries') Alleged Conduct To Verisk..................................................................14

    C. JPMC Lacks Statutory Standing To Assert DTSA Or DUTSA Claims Because It Lacked A Sufficient Legal Interest In The Regulatory Data ..............15

        1. JPMC Has No DTSA Standing Because It Cannot Allege It Owned the Data Argus Received ......................................................15

        2. JPMC Has No DUTSA Standing Because *The Regulators* Are The Ones From Whom Misappropriation Allegedly Occurred .......................16

    D. JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not Allege Reasonable Measures To Keep The Regulatory Data Secret...................17

    E. JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not Allege A Duty Owed By Verisk To JPMC Or Its Breach ....................................19

    F. Amendment Would Be Futile and Inequitable Here............................20

VII. CONCLUSION..........................................................................................21

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Accenture Global Servs. GMBH v. Guidewire Software Inc.*,
 581 F. Supp. 2d 654 (D. Del. 2008)..................................................................12, 13, 14

*AgroFresh Inc. v. Essentiv LLC*,
 2019 WL 9514551 (D. Del. Sept. 6, 2019) ...........................................................14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).........................................................................................10, 11

*Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*,
 2017 WL 1842899 (Del. Super. Apr. 20, 2017) ........................................14, 17, 19

*Brightstar Corp. v. PCS Wireless, LLC*,
 2019 WL 3714917 (Del. Super. Aug. 7, 2019)..............................................13, 14

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997).................................................................................5

*CardioNet, Inc. v. Cigna Health Corp.*,
 751 F.3d 165 (3d Cir. 2014)...................................................................................5

*Compagnie des Grands Hôtels d'Afrique S.A. v. Starman Hotel Holdings*,
 2023 WL 5095274 (D. Del. Aug. 8, 2023) ........................................................3, 15

*Connelly v. Lane Constr. Corp.*,
 809 F.3d 780 (3d Cir. 2016)...........................................................................2, 11

*Dionisi v. DeCampli*,
 1995 WL 398536 (Del. Ch. June 28, 1995)...........................................................14

*Donald J. Trump for President, Inc. v. Sec'y of Pa.*,
 830 F. App'x 377 (3d Cir. 2020) ....................................................................11, 13

*Dow Chem. Canada Inc. v. HRD Corp.*,
 909 F. Supp. 2d 340 (D. Del. 2012).............................................................2, 12, 14

*Dynax Corp. v. Chemguard, Inc.*,
 2010 WL 11575496 (S.D.N.Y. Sept. 2, 2010).......................................................17

*Elenza, Inc. v. Alcon Laby's Holding Corp.*,
 183 A.3d 717 (Del. 2018) ......................................................................................14

*Focus Fin. Partners, LLC v. Holsopple*,
 250 A.3d 939 (Del. Ch. 2020)..........................................................................2, 11

*Focused Impressions, Inc. v. Sourcing Grp., LLC*,
2020 WL 1892062 (D. Mass. 2020) .................................................16

*Grayson v. Mayview State Hosp.*,
293 F.3d 103 (3d Cir. 2002)...........................................................20

*GWO Litig. Tr. v. Sprint Sols., Inc.*,
2018 WL 5309477 (Del. Super. Oct. 25, 2018)..............................14

*Interim Health Care v. Fournier*,
1994 WL 89007 (Del. Ch. Feb. 28, 1994) .......................................14

*Inv. Sci., LLC v. Oath Holdings Inc.*,
2021 WL 3541152 (S.D.N.Y. Aug. 11, 2021)..................................18

*Kortyna v. Lafayette Coll.*,
726 F. App'x 934 (3d Cir. 2018) ......................................................9

*Labyrinth, Inc. v. Urich¸*
2024 WL 295996 (Del. Ch. Jan. 26, 2024) ...............................13, 14

*Lutz v. Portfolio Recovery Assocs., LLC*,
49 F.4th 323 (3d Cir. 2022) ...........................................................11

*M.C. Dean, Inc. v. City of Miami Beach, Fla.*,
199 F. Supp. 3d 1349 (S.D. Fla. 2016) ..........................................20

*Macquarie Bank Ltd. v. Knickel*,
793 F.3d 926 (8th Cir. 2015) ...............................................3, 16, 17

*Malleus v. George*,
641 F.3d 560 (3d Cir. 2011) ...........................................................10

*Maverick Therapeutics, Inc. v. Harpoon Therapeutics, Inc.*,
2020 WL 1655948 (Del. Ch. Apr. 3, 2020) .....................................14

*MHS Capital LLC v. Goggin*,
2018 WL 2149718 (Del. Ch. May 10, 2018) ....................................14

*Nat'l Instr. Lab'ys, Inc. v. Hycel, Inc.*,
48 F. Supp. 1179 (D. Del. 1979).....................................................12

*United States ex rel. O'Bier v. TidalHealth Nanticoke, Inc.*,
2021 WL 1895049 (D. Del. May 11, 2021)......................................20

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000)..............................................................8

*Pascal Metrics, Inc. v. Health Catalyst, Inc.*,
2023 WL 3019665 (Del. Super. Apr. 19, 2023) ...........................................................14

*Perlmutter v. Russell Hobbs, Inc.*,
450 F. App'x 161 (3d Cir. 2011) .................................................................................5

*Pie Dev v. Pie Ins. Holdings*,
2021 WL 3206043 (S.D. Miss. July 21, 2021) ...........................................................18

*Rodney v. United Masters*,
2023 WL 2184865 (E.D.N.Y Feb. 10, 2023) ........................................................18, 19

*Savor, Inc. v. FMR Corp.*,
2001 WL 541484 (Del. Super. Apr. 24, 2001) ............................................................19

*Total Care Physicians, P.A. v. O'Hara*,
2002 WL 31667901 (Del. Super. 2002) .......................................................................14

*Truinject Corp. v. Galderma S.A.*,
694 F. Supp. 3d 491 (D. Del. 2023) ............................................................................14

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
2022 WL 701161 (2d Cir. Mar. 9, 2022) ....................................................................18

*UD Tech. Corp. v. Phenomenex, Inc.*,
2007 WL 28295 (D. Del. Jan. 4, 2007) ....................................................................4, 19

*United States v. Bestfoods*,
524 U.S. 51 (1998) .......................................................................................................3, 15

*Wayman Fire Prot. v. Premium Fire & Sec., LLC*,
2014 WL 897223 (Del. Ch. Mar. 5, 2014) ..................................................................18

*Wenske v. Blue Bell Creameries, Inc.*,
2018 WL 5994971 (Del. Ch. Nov. 13, 2018) .............................................................15

*Wit Software v. Talkdesk, Inc.*,
2023 WL 3454193 (D. Del. May 15, 2023) .................................................................11

*Zabit v. Brandometry*,
540 F. Supp. 3d 412 (S.D.N.Y. 2021) .........................................................................16

## Statutes

6 *Del. C.* § 2001 ...........................................................................................................2

6 *Del. C.* § 2001(2) ................................................................................................12, 19

6 *Del. C.* § 2001(4)(b) .............................................................................................4, 17

18 U.S.C. § 1836 ............................................................................................................2

18 U.S.C. § 1836(b)(1) ............................................................................................3, 15

18 U.S.C. 1839(3) .....................................................................................................4, 17

18 U.S.C. 1839(5) ...................................................................................................12, 19

## **Rules**

Fed. R. Civ. P. 15(a) ...................................................................................................20

## I.     PRELIMINARY STATEMENT

JPMC has sued Verisk for misappropriation of anonymous JPMC account data that Verisk's former subsidiary, Argus, received from government regulators under government contracts in its capacity as a data aggregator but allegedly misused for other purposes.[1] JPMC's allegations against Verisk simply do not hang together.

JPMC *admits* that it cannot allege that any Verisk businesses misappropriated its purported trade secret or that any products or services that Verisk developed or sold were tainted by misappropriation. A thorough 3.5-year U.S. Department of Justice investigation into the conduct at the heart of the Complaint concluded without even an allegation that Verisk misused data or knew of Argus's potential misuse of data. JPMC's *sole* allegation impugning Verisk is based "on information and belief" and straight out of a suspect anonymous letter that JPMC does not endorse.

To the extent any misappropriation is alleged in JPMC's Complaint, it is based on conduct by Argus, *not Verisk*, and from the regulators, *not JPMC*. The regulators "solely" and "exclusively" owned the data and Argus (never Verisk) held it on the regulators' behalf, subject to contractual duties owed by Argus to them. JPMC attempts to hold Verisk liable for Argus's conduct on the basis of a hunch that Verisk knew of Argus's alleged conduct, in the hopes of finding a claim along the way. That attempt is improper and should be denied.

Regardless, JPMC cannot even make out a misappropriation claim against Argus: JPMC had no legal interest in the data, which was the regulators' property; never communicated with Argus (let alone Verisk) about limitations on data use; and never procured duties or confidences owing from Argus (let alone Verisk) to JPMC.

This Court should dismiss all claims against Verisk, in full.

---

[1] JPMC's Complaint also names Argus's current parent company, TransUnion, as a defendant on the basis of overlapping allegations.

## II.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On March 19, 2024, Plaintiff JPMorgan Chase Bank, National Association ("JPMC") sued Defendants Argus Information & Advisory Services Inc. ("Argus"), Trans Union LLC ("TransUnion"), and Verisk Analytics, Inc. ("Verisk") for trade secret misappropriation. JPMC alleges that Argus misappropriated a compilation of account and portfolio credit card data that Argus received in its capacity as a data aggregator under contracts with government regulators. D.I. 1 ("Compl.") ¶ 2. JPMC brings claims under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* and Delaware's Uniform Trade Secrets Act ("DUTSA"), 6 *Del. C.* § 2001, *et seq.* Verisk moves to dismiss JPMC's Complaint.

## III.     SUMMARY OF ARGUMENT

JPMC's overlapping DTSA and DUTSA claims should be dismissed for five reasons:

*First*, JPMC fails to state a DUTSA claim because the law "lacks extraterritorial effect" and JPMC has not alleged that Verisk (or any Defendant) acted in Delaware to misappropriate its trade secrets. *Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970-71 (Del. Ch. 2020).

*Second*, JPMC fails to state a claim under either law because it does not sufficiently allege misappropriation *by Verisk*. Nor does JPMC allege the essential DUTSA element that its trade secret was "communicated by the plaintiff to the defendant," *i.e.*, from *JPMC* to *Verisk*, pursuant to an understanding between them "that the secrecy of the matter would be respected." *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346, 349 (D. Del. 2012). At best, JPMC parrots elements of claims and legal conclusions, Compl. ¶¶ 48, 100, 105, 116 & 121, and offers threadbare, conclusory allegations concerning Verisk, *id.* ¶¶ 48, 67-68, 100, 105, 116 & 121. That is insufficient. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789-90 (3d Cir. 2016) (courts must disregard any "'formulaic recitation of the elements of a . . . claim' or other legal conclusion," as well as allegations that are "so threadbare or speculative that they fail to cross the line between

the conclusory and the factual"). And JPMC explicitly pleads that it knows of no "Verisk businesses" that "accessed and misused" JPMC's trade secrets and no "products and services Verisk . . . had developed and sold in connection with Argus'[s] improper retrieval, use, retention and disclosure of the data." Compl. ¶ 87.[2]

*Third*, JPMC lacks statutory standing to bring either claim for two slightly different reasons. It cannot bring its DTSA claim because the law confers a private right of action only upon "[a]n *owner* of a trade secret that is misappropriated," 18 U.S.C. § 1836(b)(1) (emphasis added), and JPMC's alleged trade secret was the sole and exclusive property of the regulators with whom Argus contracted. Nor can it bring a DUTSA claim. Where "more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy." Uniform Trade Secrets Act §§ 2 & 3 cmt. (2005). Here, JPMC pleads that Argus received the data *on behalf of the regulators*, pursuant to contracts *with the regulators*, which imposed duties and confidences owing only *to the regulators*, and that Argus misappropriated the data by using it in ways forbidden *by the regulators*. On those facts, JPMC is not the entity from which misappropriation occurred and it is not entitled to a remedy, even if it also holds some possessory interest in the data. *See Macquarie Bank Ltd. v. Knickel*, 793 F.3d 926, 936-37 (8th Cir. 2015) (finding on similar facts that "misappropriation occurred only from [the non-parties], not Lexar," and Lexar had no claim as a matter of law).

*Fourth*, JPMC fails to state a claim under either law because it has not pleaded that it took

---

[2] It is a "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *Compagnie des Grands Hôtels d'Afrique S.A. v. Starman Hotel Holdings*, 2023 WL 5095274, at *3 (D. Del. Aug. 8, 2023) (Bibas, J.) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). In its pre-motion letter, JPMC confirmed that it does not allege that Argus's alleged conduct is imputable to its former parent, Verisk, D.I. 24 at 1, and at the pre-motion conference JPMC represented that it would not amend its pleadings to add veil-piercing allegations in response to Verisk's motion.

reasonable measures to protect the secrecy of its alleged trade secret. *See* 18 U.S.C. § 1839(3); 6 *Del. C.* § 2001(4)(b). JPMC pleads that it maintained and implemented numerous *internal* safeguards to protect its alleged trade secret, Compl. ¶¶ 26-29, but JPMC's safeguards were instantly ineffective when JPMC relinquished its alleged trade secret *externally*, along with all passwords and encryption keys, without seeking obligations to secrecy or confidentiality.

*Fifth*, JPMC fails to state a claim under either law because it pleads only duties flowing from Argus to the Regulators, not from Verisk to JPMC. *See id.* ¶¶ 2 & 32. JPMC neither sought nor obtained any obligation from Argus (much less Verisk), so cannot plead a legally adequate duty to maintain secrecy. *See UD Tech. Corp. v. Phenomenex, Inc.*, 2007 WL 28295, at *8 (D. Del. Jan. 4, 2007) ("Where the duty to keep a divulged trade secret arises from a contract, it follows that only those parties to the contract have standing to pursue a claim of trade secret misappropriation based on a breach of that contract.").

## IV.   BACKGROUND

### A.   The Parties

Plaintiff JPMC is the consumer and commercial banking subsidiary of JPMorgan Chase & Co. Compl. ¶¶ 6-7. Defendant Argus is a financial services company that provides analytics, models, and advisory services to financial institutions, payment providers, retailers, and the Government. *Id.* ¶ 8. Defendants TransUnion and Verisk are, respectively, Argus's current and former parent companies. *Id.* ¶¶ 10 & 12. Verisk acquired Argus on August 31, 2012, and sold it to TransUnion on April 7, 2022. *Id.* ¶ 10. JPMC conducts some of its credit card business from Delaware, *id.* ¶¶ 6-7, but none of Defendants' purported conduct is alleged to have occurred there.

### B.   The Regulatory Data

From 2009 to 2020, Argus provided services to the Office of the Comptroller of the Currency (the "OCC"), the Federal Reserve Board of Governors (the "Federal Reserve Board"),

and the Federal Reserve Bank of Philadelphia (the "FRBP" and, collectively, the "Regulators") under four contracts (the "2009 OCC Contract," "2012 OCC Contract," "2012 Federal Reserve Board Contract," "2017 FRBP Contract," and, collectively, the "Government Contracts").[3] Under the Government Contracts, Argus acted as a data aggregator and lawfully processed various banks' anonymized credit card data into deliverables for the Regulators. Compl. ¶ 32. JPMC submitted data ("Regulatory Data" or, as defined by JPMC, "Trade Secret Data") to the Regulators via Argus.

The Government Contracts set forth the Regulators' "sole" and "exclusive" property rights, confidences, and privileges in any data that Argus received on the Regulators' behalf:

- The 2009 and 2012 OCC Contracts both provided that the OCC "*sole[ly]*" owned "*[a]ll* data collected from the participating banks," including JPMC, and "*[a]ny* privilege or confidentiality that applies to the information will remain *solely* with the OCC." TD Ex. 1 § 13.0; TD Ex. 2 § H.3 (emphases added).
- The 2012 Federal Reserve Board and 2017 FRBP Contracts both provided that "*[a]ll* Data and *any* derivatives of the Data are the *sole* property of the Board" and "the Deliverables . . . and Data . . . shall be owned by the Board." TD Ex. 3 §§ C 1.0 & 6.0; TD Ex. 4 §§ 3.1 & 3.3 (emphasis added). "Data" was defined to "mean[] the data that [Argus] is required to collect from each" participating financial institution, including JPMC. TD Ex. 3 § C 2.3; TD Ex. 4 § 1.3.

JPMC alleges that Argus owed certain duties to the Regulators (but not JPMC) under the Government Contracts, including a "restrict[ion on] Argus'[s] ability to use, disclose, or distribute credit card data for commercial purposes." Compl. ¶ 2. But the 2009 OCC Contract provided that

---

[3] The 2009 OCC Contract, 2012 OCC Contract, 2012 Federal Reserve Board Contract, and 2017 FRBP Contract are attached as Exhibits 1, 2, 3, and 4, respectively, to the Declaration of Viola Trebicka ("TD"). Because they are "integral to or explicitly relied upon" in 20 paragraphs of JPMC's Complaint, *e.g.*, Compl. ¶¶ 2-4, 32, 36, 53, 55, 58-59, 64, 82-84, 88-90, 98-99 & 114-15, the Court should consider them on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (considering the substance of contracts that, "though not appended to the Complaint, are integral to, and referenced in, the Complaint"); *Perlmutter v. Russell Hobbs, Inc.*, 450 F. App'x 161, 163 n.1 (3d Cir. 2011) ("We assume, as we must, that the facts alleged in the Amended Complaint are true, and we also consider the contracts at issue, which are integral to or explicitly relied upon in the complaint." (internal quotation marks omitted)).

Argus "may disclose aggregate market data that contains OCC data if 1) disclosure is to a data provider that is a federally regulated depository institution; and 2) disclosure does not result in identification of individual banks or banks' competitors." TD Ex. 1 § 15.0(d)(i). That permissible use did not require that Argus "obtain[] use or disclosure rights . . . directly from the Bank under a separate contract." *Id.*

There was no agreement between JPMC and Argus, TransUnion, or Verisk in connection with the Regulatory Data. *See* Compl. ¶ 2 ("Argus'[s] contracts *with the Regulators* restricted Argus'[s] ability to use, disclose, or distribute credit card data for commercial purposes." (emphasis added)); *id.* ¶ 32 ("*The OCC's agreement* with Argus restricted Argus'[s] ability to use, disclose or distribute credit card data . . . ." (emphasis added)). The Complaint does not even allege an agreement between JPMC and the Regulators. JPMC neither sought nor obtained confidences from Argus (much less Verisk) in connection with Argus's treatment of Regulatory Data.

### C.     JPMC's Efforts To Keep The Data Secret

JPMC pleads that it implemented *internal* safeguards to protect its Trade Secret Data, including restricting server access by JPMC employees, password-protecting and encrypting it, and unidentified "technology controls." *Id.* ¶¶ 26-29. Those safeguards were instantly ineffective when JPMC relinquished its alleged trade secret *externally*, along with all passwords and encryption keys, to a third-party that owed JPMC no obligations, confidences, or other duties.

JPMC claims that one Regulator, the OCC, "assured" JPMC at some unspecified time that data "would remain confidential" because "[t]he OCC . . . confirmed . . . that it had contracted with Argus and received confidentiality protections." *Id.* ¶ 36. JPMC does not plead that any Defendant knew of this assurance. Regardless, it did not create an obligation, confidence, or other duty in JPMC's favor (let alone one flowing from Argus, TransUnion, or Verisk). And JPMC does not allege that either the Federal Reserve Board or the FRBP made similar assurances for the near

decade that Argus received the same data under contracts with them. *See id.* ¶¶ 53-54 (Federal Reserve Board retained Argus by June 2012).

**D.    JPMC's Allegations Regarding Misappropriation By Argus**

Separately, JPMC alleges that Argus (but not Verisk) provides many other customer services, including "Benchmarking Studies" and "Related Services." The subscription-based Benchmarking Studies "compare a credit card issuer's performance to other participating credit card issuers on an aggregated basis" based on consensually-shared credit card data. *Id.* ¶ 37. Benchmarking Studies participants may also contract to receive Related Services in the form of "separate analytics and modeling services . . . that rely on at least some of the same data used in the Benchmarking Studies." *Id.* In late 2010, JPMC withdrew from the Benchmarking Studies. *Id.* ¶ 40. JPMC claims that Argus "fill[ed] the gap of losing JPMC's data for its Benchmarking Studies and Related Services" by "develop[ing] a sophisticated computer program" that "mimic[ked]" the Regulatory Data "for use and disclosure in the Benchmark[ing] Studies and Related Services." *Id.* ¶¶ 44-45 & 47. Verisk could not have caused this alleged conduct, which is alleged to have started in 2010, well before Verisk acquired Argus. *Id.* ¶ 10. And at the time misappropriation allegedly began, the only operative Government Contract permitted the conduct that JPMC alleges breached Argus's duties. *Compare* TD Ex. 1 § 15.0(d)(i) (permitting Argus to "disclose aggregate market data that contains OCC data if 1) disclosure is to a data provider that is a federally regulated depository institution; and 2) disclosure does not result in identification of individual banks or banks' competitors") *with* Compl. ¶ 37 (alleging that Argus used Regulatory Data in its Benchmarking Studies "that compare a credit card issuer's performance to other participating credit card issuers on an aggregated basis . . . us[ing] anonymized . . . credit card data" and in Related Services that rely on "the same data").

In the 33-paragraph backbone of JPMC's Complaint alleging that misuse, Compl. ¶¶ 30-62, JPMC mentions Verisk only once: "[o]n information and belief," "Verisk's management knew [of] and authorized the ongoing misappropriation," *id.* ¶ 48. Later, it revises this claim to assert, "[o]n information and belief, Verisk knew that Argus was misappropriating the Trade Secret Data." *Id.* ¶¶ 100 & 116. The conclusory and unsupported allegation appears to be based solely on an allegation that Argus's CIO left to work for Verisk in 2018. *Id.* ¶¶ 100 & 116.

### E.   The Government's Investigation Into Potential Misuse Of The Regulatory Data By Argus

In September 2020, "the federal government alerted Argus and Verisk to a Department of Justice investigation concerning Argus'[s] data misappropriation." *Id.* ¶ 63. After beginning its own investigation, Argus informed the Regulators that "certain data attributes" appeared to have been "an input into an industry scaling process that was used for another part of [Argus's] business." *Id.* ¶ 64. In May 2021, Verisk disclosed publicly the Government's investigation.[4] Even after conducting a thorough investigation, the Government did not allege that Verisk misused the Regulatory Data or knew of Argus's potential misuse. Compl. Ex. A (resolving allegations that *Argus* "improperly accessed, used, and retained . . . anonymized credit card data" that *Argus* received pursuant to the Government Contracts). In March 2024, Argus settled claims with the Government, with no admission of liability, for $37 million. *Id.* The substantial settlement amount reflects that the Regulators—the sole and exclusive owners of the Regulatory Data and Argus's only contractual counterparties—are the aggrieved entities as a result of any potential misuse.

---

[4] *See* TD Ex. 5 (May 4, 2021 Verisk 10-Q) at 19 ("*Financial Services Government Inquiry*[:] We are cooperating with an inquiry by the United States Attorney's Office for the Eastern District of Virginia related to government contracts within our financial services segment [Argus].")., https://www.sec.gov/ix?doc=/Archives/edgar/data/0001442145/000143774921010755/vrsk2021 0331_10q.htm. The Court may take judicial notice of this "properly-authenticated public disclosure documents filed with the SEC," even if not relied upon in JPMC's Complaint. *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000).

### F.      The Anonymous Letter

In April 2021, JPMC received an unsigned letter claiming that "Verisk has encouraged and facilitated data sharing across its all [sic] subsidiaries," including Argus, which "gathers all credit card data and share [sic] with Verisk [sic] other subsidiaries." Compl. ¶¶ 67-68. The letter made no allegation of use of Regulatory Data or data collected under Government Contracts. It also made no allegation that Argus shared data with *Verisk* (as opposed to its subsidiaries). JPMC does not allege the truth of the letter's accusations; instead, JPMC distances itself from the suspect anonymous letter with the preface "*[a]ccording to the whistleblower*," *id.* ¶ 68 (emphasis added), and describes assertions in the letter as "alleg[ations]," *id.* ¶ 67. As is clear from the quotes in the Complaint, the letter is riddled with typographical and grammatical errors.

Two months after JPMC received the anonymous letter and one month after Verisk disclosed the Government's investigation, JPMC asked Argus to "certif[y] . . . that Argus is in full and complete compliance with *[its] contractual obligations to Chase*, including, but not limited to, *their Chase data use*, sharing and disclosure restrictions." TD Ex. 6[5] (June 11, 2021 email from JPMC to Argus) (emphases added); *see also* Compl. ¶ 69. That is, JPMC requested information pertaining only to materials shared under JPMC-Argus contracts (*i.e.*, not the Government Contracts) and sought an audit of compliance with restrictions on data received under JPMC-Argus contracts (*i.e.*, not the Regulatory Data). Neither the letter, JPMC's request, nor, as a consequence, Argus's response, related to the trade secret that JPMC alleges, *i.e.*, data "provided to Argus as a data aggregator for the Regulators." Compl. ¶ 19.

---

[5]  The Court should consider this email, which JPMC relies upon, Compl. ¶ 69, because it contradicts the premise of any assertions that Argus misled JPMC by not disclosing information concerning the Regulatory Data that Argus received under Government Contracts. *See Kortyna v. Lafayette Coll.*, 726 F. App'x 934, 935, 937 (3d Cir. 2018) (Bibas, J.) (considering "[a] series of emails that . . . give color to [plaintiff's] description" of events in her complaint).

JPMC alleges that Argus (but not Verisk) misled JPMC in three ways. *First*, JPMC alleges that Argus failed to voluntarily disclose an ongoing Government investigation, *id.* ¶ 73, which was already disclosed publicly. *Second*, JPMC alleges that Argus, in its response, misleadingly defined "JPMC's Data" in a manner that excluded data provided under the Government Contracts, *id.* ¶ 74, even though it was JPMC that asked Argus to confirm its compliance with JPMC-Argus (non-government) contracts and "their Chase data . . . restrictions." *Third*, JPMC alleges that Argus "intentionally misled" JPMC into believing that Argus had "determined that none of JPMC's Trade Secret Data [*i.e.*, Regulatory Data] had been misappropriated," *id.* ¶ 75, even though JPMC asked only about non-Regulatory Data.

### G.     JPMC's (Lack Of) Allegations Regarding Misappropriation By Verisk

JPMC does not allege that Verisk misappropriated any Regulatory Data. Rather, it concedes that JPMC does not know of *any* "Verisk businesses" that "accessed and misused" JPMC's Trade Secret Data or any "products and services Verisk . . . had developed and sold in connection with Argus'[s] improper retrieval, use, retention and disclosure of the data." *Id.* ¶ 87. JPMC offers only recitations of elements of claims, legal conclusions, and conclusory allegations "on information and belief" concerning Verisk:

- "On information and belief, Argus shared the Trade Secret Data with Verisk for use in Verisk's other businesses, and Verisk used the Trade Secret Data for its own commercial purposes. . . . On information and belief, Verisk knew that Argus was misappropriating the Trade Secret Data." *Id.* ¶¶ 100 & 116.

- "[O]n information and belief, . . . Verisk . . . used or disclosed the Trade Secret Data for one or more of its other businesses." *Id.* ¶¶ 105 & 121.

- "On information and belief, . . . after Verisk acquired Argus, Verisk's management knew and authorized the ongoing misappropriation of the Trade Secret Data." *Id.* ¶ 48.

- "[A]n unsigned whistleblower letter alleg[ed] that Argus and its parent Verisk were improperly disclosing JPMC credit card data to other Verisk subsidiaries." *Id.* ¶ 67.

- "According to the whistleblower, Verisk's knowledge and involvement . . . was pervasive . . . ." *Id.* ¶ 68.

10

## V.    LEGAL STANDARD

On a motion to dismiss, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Then, it must review the complaint and disregard any "'formulaic recitation of the elements of a . . . claim' or other legal conclusion," as well as allegations "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789-90 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 681); *see also Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377, 386 (3d Cir. 2020) (Bibas, J.) ("Plaintiffs must do more than allege conclusions. . . . 'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)). Finally, it must "evaluate[] the plausibility of the remaining allegations. " *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).

## VI.    ARGUMENT

### A.    JPMC Fails To State A DUTSA Claim Because The Law Lacks Extraterritorial Effect

JPMC's DUTSA claim fails out of the gate because the law "lacks extraterritorial effect," and JPMC fails to allege that Verisk's (or any Defendant's) conduct occurred in Delaware. *Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch. 2020); *see also Wit Software v. Talkdesk, Inc.*, 2023 WL 3454193, at *9 (D. Del. May 15, 2023) ("It has been uniformly held by both state and federal courts in Delaware that the DUTSA does not have extraterritorial effect.").

All JPMC alleges is that Verisk is Delaware-incorporated, Compl. ¶¶ 6, 8-9 & 11, and that JPMC *itself* took some actions in Delaware, *id.* ¶¶ 7, 34 & 58. Neither sets of allegations move the needle where, as JPMC alleges, Defendants' relevant operations were outside of Delaware.

*Id.* ¶¶ 8-9 & 11. "[T]he state of incorporation" is not "a controlling, predominant, or even weighty factor when determining what law governs a claim for misappropriation of trade secrets." *Focus Fin. Partners, LLC*, 250 A.3d at 970. Rather, the "greatest weight" is given to "where the [defendants' alleged] misappropriation occurred," *id.*, which was not Delaware. Accordingly, JPMC's claim under the DUTSA must be dismissed. *See id.* (dismissing DUTSA claim where no misappropriation was alleged to have happened in Delaware).[6]

### B.    JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not Sufficiently Allege Misappropriation *By Verisk*

#### 1.    JPMC Makes No Well-Pleaded Allegations Of Misappropriation By Verisk

JPMC's Complaint falls far short of alleging that Verisk misappropriated its trade secrets, either under the DTSA or the DUTSA. The DTSA defines "misappropriation" as the knowing improper acquisition, use, or disclosure of the secret. 18 U.S.C. § 1839(5). Similarly, under the DUTSA, misappropriation is either acquisition by improper means or under circumstances giving rise to a duty to maintain its secrecy or limit its use. *Accenture Global Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 662 (D. Del. 2008) (alterations adopted) (quoting 6 *Del. C.* § 2001(2)). In addition, a DUTSA plaintiff must establish that its trade secret was "communicated by the plaintiff to the defendant," *i.e.*, from *JPMC* to *Verisk*, which communication was pursuant to an understanding between them "that the secrecy of the matter would be respected." *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346, 349 (D. Del. 2012).

As summarized in Part IV.G above, the entirety of JPMC's allegations of Verisk's

---

[6] *See also* Restatement (Second) of Conflict of Laws § 145 cmt.f ("[T]he principal location of the defendant's conduct . . . will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from . . . misappropriation of trade values."); *Nat'l Instr. Lab'ys, Inc. v. Hycel, Inc.*, 48 F. Supp. 1179, 1181 (D. Del. 1979) ("Delaware law is well established that the place of the wrong controls. . . . [I]n a suit for . . . violation of trade secrets, the wrong occurs where the defendant misappropriates or misuses plaintiff's secret.").

purported misappropriation consists of a few sentences of formulaic recitations of elements of claims and legal or bare-bones conclusions. Worse, JPMC concedes it cannot say that any "Verisk businesses" (let alone Verisk itself) "accessed and misused" JPMC's Trade Secret Data and cannot plead any "products and services Verisk . . . had developed and sold in connection with Argus'[s] improper retrieval, use, retention and disclosure of the data." Compl. ¶ 87. Even the *elements* in JPMC's Counts are pleaded "on information and belief." This formulation "is a lawyerly way of saying that the [plaintiff] does not know that something is a fact but just suspects it or has heard it." *Donald J. Trump for President, Inc.*, 830 F. App'x at 387 (Bibas, J.).

Nowhere in the body of the Complaint does JPMC allege how *Verisk* acquired, disclosed, or used Regulatory Data. At best, JPMC offers an unsigned letter that JPMC itself will not endorse; that did not relate to JPMC's alleged trade secret, *i.e.*, Regulatory Data; and that did not allege acquisition, disclosure, or use by *Verisk*, *see supra* Part IV.F.

These threadbare allegations of misappropriation are insufficient. Instructive here is *Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*, in which the Court dismissed DTSA and DUTSA claims where, as here, they "do[] not sufficiently allege how [defendant] used the alleged trade secrets while knowing, or having reason to know, that they were derived from or through a party . . . who utilized 'improper means' to acquire them, or that there was a duty to maintain the trade secrets' secrecy or limit their use." 2022 WL 3354708, at *13 (D. Del. July 31, 2022); *see also Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *3, *8 (Del. Super. Aug. 7, 2019) (granting motion to dismiss after disregarding "legal conclusions and threadbare recitals of [] elements" like "'PCS misappropriated Brightstar's pricing information and used it to solicit business from Brightstar's suppliers'"); *Labyrinth, Inc. v. Urich¸* 2024 WL 295996, at *30 (Del. Ch. Jan. 26, 2024) ("The Complaint must provide specific details suggesting how [a defendant]

impermissibly used or acquired the trade secret." (internal quotation marks omitted and alterations adopted)). JPMC "is not entitled to conduct a fishing expedition based upon such bare allegations" of misappropriation by Verisk's subsidiaries. *Accenture Global Servs.*, 581 F. Supp. 2d at 663.

JPMC also fails to allege that JPMC communicated its trade secret to Verisk, let alone that the two came to any understanding concerning its secrecy. Instead, JPMC asserts that these are not DUTSA elements. D.I. 24 at 3 (citing *AgroFresh Inc. v. Essentiv LLC*, 2019 WL 9514551, at *2 (D. Del. Sept. 6, 2019)). Though the *AgroFresh* Court declined to read a "communication" element into *Pennsylvania* law, scores of courts agree it is required under *Delaware* law. *E.g.*, *Dow Chem. Canada*, 909 F. Supp. 2d at 349 ("Because HRD has failed to show that it communicated any trade secrets to Dow, HRD's claim for misappropriation of trade secrets fails."); *Labyrinth*, 2024 WL 295996, at *29 ("Plaintiffs must . . . plead . . . the plaintiff communicated the trade secret to the defendant." (internal quotation marks omitted and alterations adopted)); *Total Care Physicians, P.A. v. O'Hara*, 2002 WL 31667901, at *4 (Del. Super. 2002) (describing "communication" element as "well-settled").[7] Thus, JPMC's omissions are fatal to its DUTSA claim.

### 2.     JPMC Cannot Impute Argus's (Or Other Subsidiaries') Alleged Conduct To Verisk

At the pre-motion conference, JPMC conceded that it does not—and cannot—properly allege that Verisk is liable for Argus's (or any other Verisk subsidiaries') conduct. *See also* D.I. 24

---

[7]   *See also, e.g.*, *Truinject Corp. v. Galderma S.A.*, 694 F. Supp. 3d 491, 502 (D. Del. 2023); *Accenture Glob. Servs.*, 581 F. Supp. 2d at 662; *Elenza, Inc. v. Alcon Laby's Holding Corp.*, 183 A.3d 717, 721 (Del. 2018); *Maverick Therapeutics, Inc. v. Harpoon Therapeutics, Inc.*, 2020 WL 1655948, at *23 (Del. Ch. Apr. 3, 2020); *MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *14 (Del. Ch. May 10, 2018); *Dionisi v. DeCampli*, 1995 WL 398536, at *11-12 (Del. Ch. June 28, 1995); *Interim Health Care v. Fournier*, 1994 WL 89007, at *7 (Del. Ch. Feb. 28, 1994); *Pascal Metrics, Inc. v. Health Catalyst, Inc.*, 2023 WL 3019665, at *3 (Del. Super. Apr. 19, 2023); *Brightstar Corp.*, 2019 WL 3714917, at *4; *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *9 (Del. Super. Oct. 25, 2018); *Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, 2017 WL 1842899, at *6 (Del. Super. Apr. 20, 2017).

at 1 (asserting that its claims "do not depend on piercing the corporate veil").[8] "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *Compagnie des Grands Hôtels d'Afrique S.A. v. Starman Hotel Holdings*, 2023 WL 5095274, at *3 (D. Del. Aug. 8, 2023) (Bibas, J.) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

JPMC's *sole* allegation supporting Verisk's liability for Argus's conduct is that, "[o]n information and belief," "Verisk's management knew [of] and authorized the ongoing misappropriation." Compl. ¶ 48. That is conclusory conjecture supported *only* by the fact that Argus's CIO left to work for Verisk in 2018. *Id.* ¶¶ 100 & 116. The overlap of a single employee is no basis for liability, as "there exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors." *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018) (denying reconsideration of dismissal). And, at best, the anonymous letter alleges data use by unnamed non-party subsidiaries whose actions again cannot be imputed to Verisk. Compl. ¶ 68 ("ARGUS (banking) gathers all credit card data and share [sic] with Verisk [sic] other subsidiaries.").

It would turn pleading standards upside down if a trade secret plaintiff could drag anyone into a case and subject the party to costs and burdens of discovery merely with the conclusory assertion that it "knew" of or "authorized" a different party's conduct.

### C.     JPMC Lacks Statutory Standing To Assert DTSA Or DUTSA Claims Because It Lacked A Sufficient Legal Interest In The Regulatory Data

#### 1.     JPMC Has No DTSA Standing Because It Cannot Allege It Owned the Data Argus Received

The federal DTSA confers a private right of action only upon "[a]n *owner* of a trade secret

---

[8] If JPMC intends to "allege liability based on veil piercing" if discovery *later* supports that theory, D.I. 24 at 1, that is backwards. Well-pleaded allegations lead to discovery, not vice versa.

that is misappropriated," 18 U.S.C. § 1836(b)(1) (emphasis added), which "means the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed," *id.* § 1839(4).[9] Under the Government Contracts, there is no question that the Regulators are the "sole" and "exclusive" owners of the allegedly misappropriated data (and all deliverables). *See supra* Part IV.B (setting forth the Regulators' "sole" and "exclusive" property rights, confidences, and privileges in any data that Argus received on the Regulators' behalf). Within the DTSA's definition of ownership, JPMC was not the "owner" of the Regulatory Data that Argus received and, accordingly, lacks standing to assert that *its* trade secrets were misappropriated.

### 2. JPMC Has No DUTSA Standing Because *The Regulators* Are The Ones From Whom Misappropriation Allegedly Occurred

JPMC's DUTSA claim fails on the pleadings because JPMC's allegations and the Government Contracts establish that JPMC was not the party from which misappropriation occurred. Even if JPMC had a cognizable right to the Regulatory Data, so did the Regulators. Under the UTSA, if "more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy." Uniform Trade Secrets Act §§ 2 & 3 cmt. (2005). Here, that would be the Regulators, not JPMC. *See* Compl. ¶ 2 (alleging Argus acted as "data aggregator" on behalf of the Regulators, was subject only to duties owed under "Argus'[s] contracts with the Regulators," which "restricted Argus'[s] ability to use, disclose, or distribute credit card data" for purposes not approved by the Regulators).

The Eighth Circuit's decision in *Macquarie Bank Ltd. v. Knickel* is persuasive. 793 F.3d 926 (8th Cir. 2015). There, Lexar asserted that Macquarie Bank misappropriated Lexar's

---

[9] *See also Zabit v. Brandometry*, 540 F. Supp. 3d 412, 419 (S.D.N.Y. 2021) (dismissing one plaintiff's DTSA claims for lack of standing where another one held "exclusive owner[ship]" of intellectual property); *Focused Impressions, Inc. v. Sourcing Grp., LLC*, 2020 WL 1892062, at *4 (D. Mass. 2020) ("Ownership is central to the DTSA.").

trade secret by using it "in a way that exceeded the scope of . . . consent" granted to Macquarie Bank by third parties with whom Lexar had a relationship. Like JPMC, Lexar had provided its purported trade secrets to nonparties, who then entered into an agreement that granted another recipient permission to use it only "for certain purposes." *Id.* at 936. Like JPMC, Lexar was not a party to that agreement. *Id.* at 930. Like JPMC alleges of Argus, the recipient "used and disclosed the trade secrets in a way that exceeded the scope of . . . consent [under the agreement]." *Id.* The Court of Appeals held that "Lexar's misappropriation claim fails because '[w]henever more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy.'" *Id.* at 936 (quoting Uniform Trade Secrets Act §§ 2 & 3 cmt. (2005)). On those facts, "[t]he misappropriation occurred only from [the non-parties], not Lexar," and Lexar had no claim as a matter of law. *Id.* at 937.[10]

Thus, JPMC is not the person from whom misappropriation occurred and it is not entitled to a remedy, even *if* it too holds some legal interest in the Regulatory Data.

### D. JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not Allege Reasonable Measures To Keep The Regulatory Data Secret

The Regulatory Data does not qualify as a trade secret because JPMC fails to plead that it took reasonable measures to protect its secrecy, as required under both the DTSA and the DUTSA. 18 U.S.C. § 1839(3) (requiring that "the owner . . . has taken reasonable measures to keep such information secret"); 6 *Del. C.* § 2001(4)(b) (requiring that information "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). A plaintiff's efforts are unreasonable if outweighed by "any number of efforts NOT undertaken," especially if they "can

---

[10] *See also Dynax Corp. v. Chemguard, Inc.*, 2010 WL 11575496, at *8 (S.D.N.Y. Sept. 2, 2010) ("Chemguard was not the entity from which any trade secrets might have been improperly procured by Dynax. If any misappropriation of trade secrets occurred in this case, it arose from a confidential relationship between Ciba and Dr. Kleiner. Thus, Chemguard is not the entity entitled to pursue any misappropriation claim against Dynax or its principals.").

only be called risky and dangerous." *Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, 2017 WL 1842899, at *11 (Del. Super. Apr. 20, 2017).

JPMC pleads that it implemented numerous *internal* safeguards to protect its Trade Secret Data (confidentiality classifications, access limitations, technological controls). Compl. ¶¶ 26-29. Such safeguards might protect against misappropriation by a JPMC employee, but they offer no protection (let alone reasonable protection) *externally*. JPMC's pleaded safeguards were instantly ineffective when JPMC transferred its alleged trade secret externally, along with passwords and encryption keys, to a third party that owed JPMC no secrecy obligations. *See Rodney v. United Masters*, 2023 WL 2184865, at *5 (E.D.N.Y Feb. 10, 2023) (finding general security measures irrelevant where "none of these measures were employed to impose confidentiality obligations" on defendants); *Pie Dev v. Pie Ins. Holdings*, 2021 WL 3206043, at *7 (S.D. Miss. July 21, 2021) (dismissing DTSA and UTSA claims where plaintiff was not party to pleaded confidentiality agreements, so not safeguarded by them), *aff'd* 2023 WL 2707184 (5th Cir. Mar. 30, 2023).

JPMC failed to obtain *any* contractual protections from Argus (let alone Verisk) before sharing JPMC's supposed trade secrets. That conduct defeats any claim to trade secret status, particularly since JPMC sent data to Argus, a company whose primary business (Compl. ¶ 37) involves using and monetizing credit card data. *See Wayman Fire Prot. v. Premium Fire & Sec., LLC*, 2014 WL 897223, at *16 (Del. Ch. Mar. 5, 2014) (finding efforts unreasonable "based on the nature of the information at issue"); *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2022 WL 701161, at *2 (2d Cir. Mar. 9, 2022) (affirming dismissal under DTSA where, based "in significant part on the nature of the trade secret," plaintiff failed to take reasonable measures). In the absence of confidentiality agreements, JPMC may not conjure secrecy obligations, when it expressly elected not to seek them. *See Inv. Sci., LLC v. Oath Holdings Inc.*, 2021 WL 3541152,

at *3 (S.D.N.Y. Aug. 11, 2021) ("Plaintiff provides no case law, and this Court is unaware of any, to support the proposition that an implied contract of confidentiality constitutes a 'reasonable measure' to protect a trade secret."); *Rodney*, 2023 WL 2184865, at *6 (same). Therefore, JPMC has failed to allege the Regulatory Data qualifies as a trade secret.

### E.   JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not Allege A Duty Owed By Verisk To JPMC Or Its Breach

JPMC pleads misappropriation predicated on duties of secrecy, Compl. ¶¶ 99-100 & 114-15, but does not plead any duty owed by a Defendant to *JPMC* or its breach, *see* 18 U.S.C. § 1839(5); 6 *Del. C.* § 2001(2). JPMC does not dispute that it alleges no more than a duty "flow[ing] only from Argus to the Regulators."   D.I. 24 at 1-2. Instead, JPMC asserts that misappropriation requires only the existence of a duty relating to a trade secret, not that it be in JPMC's favor or that it was breached. *Id.* That is incorrect as a matter of law.

The only duty that JPMC properly alleges is under the Regulatory Contracts, which it specifically alleges flowed from Argus to the Regulators, not to JPMC. Compl. ¶ 2 ("Argus had *no* right to use this data. . . . Argus'[s] contracts with the Regulators restricted Argus'[s] ability to use, disclose, or distribute credit card data for commercial purposes."); *id.* ¶ 32 ("The OCC's agreement with Argus restricted Argus's ability to use, disclose or distribute credit card data . . . ."). It is only logical that duties derived from breached contracts may only support trade secret claims by parties to those contracts. *See UD Tech. Corp. v. Phenomenex, Inc.*, 2007 WL 28295, at *8 (D. Del. Jan. 4, 2007) ("Where the duty to keep a divulged trade secret arises from a contract, it follows that only those parties to the contract have standing to pursue a claim of trade secret misappropriation based on a breach of that contract."); *see also Atl. Med. Specialists*, 2017 WL 1842899, at *12 ("It is simply insufficient to say ' . . . I asked [someone else] to do it.'"). JPMC does not allege that it sought or obtained any obligations from Argus (much less Verisk).

19

JPMC's conclusory, legal conclusion (via group pleading) that "Defendants breach[ed] its [sic] duty to maintain . . . secrecy," Compl. ¶¶ 99 & 115, will simply not do. *See Savor, Inc. v. FMR Corp.*, 2001 WL 541484, at *3 (Del. Super. Apr. 24, 2001) (dismissing DUTSA claim supported solely by allegation that "'defendants knew or had reason to know that the information received . . . was . . . acquired under a duty of confidence owed to the plaintiff'"); *M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1357 (S.D. Fla. 2016) (dismissing DTSA claim for "fail[ure] to plausibly allege a 'duty' to protect the [alleged trade secrets]").

## F.   Amendment Would Be Futile and Inequitable Here

The Court must give leave to amend "freely . . . when justice so requires," Fed. R. Civ. P. 15(a), but its discretion is bounded. The Court should dismiss JPMC's Complaint with prejudice because amendment "would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). JPMC conceded futility at the pre-motion conference. There, JPMC's counsel stated that JPMC understood the bases upon which Defendants were moving to dismiss the Complaint and that JPMC knew of nothing that could bolster it. *See United States ex rel. O'Bier v. TidalHealth Nanticoke, Inc.*, 2021 WL 1895049, at *2 (D. Del. May 11, 2021) (Bibas, J.) ("[Plaintiff] admits that she is 'unable to provide further evidence of the Defendants' alleged unlawful referral scheme.' So amending would be futile."), *aff'd* 2022 WL 264554 (3d Cir. Jan. 28, 2022).[11] It would also be inequitable to permit amendment after JPMC stood on its Complaint. Having so proclaimed, JPMC should not be permitted to renege and impose the inefficiencies and costs of re-pleading, re-briefing, re-arguing, and re-dismissing.

---

[11] A finding of futility is even *more* appropriate here than it was in *TidalHealth*. There, the plaintiff represented in her Complaint that she had no additional allegations, *before* learning the defendants' bases for dismissal. Here, JPMC represented it has no additional allegations, having already been apprised of Defendants' bases.

## VII.   CONCLUSION

For the foregoing reasons, Verisk respectfully requests dismissal of all claims against it, in full.

|  |  |
|---|---|
| | _/s/ Michael A. Barlow_ |
| OF COUNSEL: | Michael A. Barlow (#3928) |
| | QUINN EMANUEL URQUHART |
| William A. Burck | & SULLIVAN, LLP |
| QUINN EMANUEL URQUHART | 500 Delaware Avenue, Suite 220 |
| & SULLIVAN, LLP | Wilmington, Delaware 19801 |
| 1300 I Street NW, Suite 900 | (302) 302-4000 |
| Washington, DC 20005 | michaelbarlow@quinnemanuel.com |
| (202) 538-8000 | |
| williamburck@quinnemanuel.com | *Counsel for Defendant Verisk Analytics, Inc.* |

Viola Trebicka
Alexandre J. Tschumi
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000
violatrebicka@quinnemanuel.com
alextschumi@quinnemanuel.com

DATED: August 30, 2024