**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, <br><br> *Plaintiff,* <br><br> v. <br><br> ARGUS INFORMATION & ADVISORY SERVICES INC., VERISK ANALYTICS, INC. and TRANS UNION LLC, <br><br> *Defendants.* | Civil Action No. 1:24-cv-00348-SB |

**PLAINTIFF JPMORGAN CHASE BANK, N.A.'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANTS ARGUS INFORMATION & ADVISORY INC. AND
TRANS UNION LLC'S SERVICES MOTION TO DISMISS**

Julie S. Goldemberg (*pro hac vice*)
Phillip D. Wolfe (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
julie.goldemberg@morganlewis.com
phillip.wolfe@morganlewis.com

Michael J. Abernathy (*pro hac vice*)
Maria E. Doukas (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL 60601-5094
(312) 324-1000
michael.abernathy@morganlewis.com
maria.doukas@morganlewis.com

Amy M. Dudash (DE Bar No. 5741)
Jody C. Barillare (DE Bar No. 5107)
MORGAN, LEWIS & BOCKIUS LLP
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302.574.3000 | Fax: 302.574.3001
amy.dudash@morganlewis.com
jody.barillare@morganlewis.com

*Counsel for Plaintiff JPMorgan Chase Bank,
National Association*

Dated: September 20, 2024

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ........................................ 2

III.    SUMMARY OF ARGUMENT .......................................................................... 2

IV.     BACKGROUND ............................................................................................... 4

V.      LEGAL STANDARD........................................................................................ 4

VI.     ARGUMENT .................................................................................................... 4

        A.      JPMC Has Adequately Pled a Violation of the Defendant Trade Secrets
                Act........................................................................................................... 5

                1.      JPMC Pleads It Owns the Trade Secrets.................................... 6

                2.      The Regulatory Contracts Cannot Diminish JPMC's Ownership
                        Claims ......................................................................................... 8

                3.      The Federal Regulations Support JPMC's Ownership of the Trade
                        Secret Data .................................................................................. 9

                4.      JPMC Alleges Continuing Misappropriation under the DTSA .............. 11

        B.      JPMC Has Adequately Pled a Violation of the DUTSA ................................... 12

                1.      The DUTSA Applies to Defendants' Misconduct. .................................. 12

                2.      JPMC Need Not Plead a Breach of a Duty Owed ................................. 14

        C.      JPMC Has Adequately Pled Legally Cognizable Harm and Damages................ 15

        D.      JPMC Has Adequately Pled Claims against TransUnion ................................. 18

VII.    CONCLUSION................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Accenture Global Servs. GMBH v. Guidewire Software, Inc.*,
   581 F. Supp. 2d 654 (D. Del. 2008)........................................................................5

*Arrowood Indem. Co. v. Hartford Fire Ins. Co.*,
   774 F. Supp. 2d 636 (D. Del. 2011)........................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................4, 19

*Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Group*,
   2017 WL 1105648 (E.D. Pa. Mar. 24, 2017)........................................................12

*Brooks v. Thomson Reuters Corp.*,
   2023 WL 9316647 (N.D. Cal. Aug. 10, 2023) ................................................16, 17

*Children's Health Def., Inc. v. Rutgers*,
   93 F.4th 66 (3d Cir. 2024) ....................................................................................19

*Egan v. X-Mode Soc., Inc.*,
   2024 WL 2701967 (D. Mass. May 24, 2024)........................................................18

*Elkay Interior Sys. Int'l, Inc. v. Weiss*,
   2022 WL 17961568 (D. Del. Dec. 27, 2022)...................................................13, 14

*Fenico v. City of Philadelphia*,
   70 F.4th 151 (3d Cir. 2023) ....................................................................................6

*Flora v. County of Luzerne*,
   776 F.3d 169 (3d Cir. 2015)....................................................................................6

*Focus Fin. Partners, LLC v. Holsopple*,
   250 A.3d 939 (Del. Ch. 2020)...............................................................................13

*Focused Impressions, Inc. v. Sourcing Grp., LLC*,
   2020 WL 1892062 (D. Mass. Apr. 16, 2020) .......................................................8, 9

*Health Care Facilities Partners, LLC v. Diamond*,
   2023 WL 3847289 (N.D. Ohio June 5, 2023).........................................................7

*Hologic, Inc. v. Minerva Surgical, Inc.*,
   163 F. Supp. 3d 118 (D. Del. 2016).........................................................................7

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Houser v. Feldman*,
    569 F. Supp. 3d 216 (E.D. Pa. 2021) ............................................................7

*In re Subpoena Served upon the Comptroller of the Currency*,
    967 F.2d 630 (D.C. Cir. 1992) ......................................................................9

*J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*,
    1988 WL 116423 (Del. Super. Ct. Oct. 21, 1988) ......................................13

*Knuth v. Cap. Patrol, LLC Ohio*,
    2024 WL 2925321 (S.D. Cal. June 10, 2024) .............................................18

*Labyrinth, Inc. v. Urich*,
    2024 WL 295996 (Del. Ch. Jan. 26, 2024) ............................................19, 20

*Laura Laaman & Associates, LLC v. Davis*,
    2017 WL 5711393 (D. Conn. Nov. 27, 2017) .............................................17

*Lupia v. Medicredit, Inc.*,
    8 F.4th 1184 (10th Cir. 2021) .....................................................................16

*Macquarie Bank Ltd. v. Knickel*,
    793 F.3d 926 (8th Cir. 2015) ......................................................................14

*Mattern & Associates, L.L.C. v. Seidel*,
    678 F. Supp. 2d 256 (D. Del. 2010) ..............................................................5

*Murphy v. Kochava Inc.*,
    2023 WL 6391061 (D. Idaho Oct. 2, 2023) ................................................18

*Newport Enters. v. Isys Techs.*,
    2015 WL 4715300 (D. Utah Aug. 7, 2015) .................................................20

*Oakwood Lab'ys. LLC v. Thanoo*,
    999 F.3d 892 (3d Cir. 2021)................................................................ passim

*Ocimum Biosolutions (India) Ltd., Tr. of Ocimum Biosolutions Inc. v. LG Chem. Ltd.*,
    2022 WL 3354708 (D. Del. July 31, 2022) .................................................20

*Parker v. Petrovics*,
    2020 WL 3972761 (N.D. Ala. July 14, 2020) ...............................................7

*Revive Investing LLC v. Armistice Capital Master Fund, Ltd.*,
    2023 WL 5333768 (D. Colo. Aug. 18, 2023) ..............................................17

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)..................................................................................8

*Simplexity, LLC v. Zeinfeld*,
    2013 WL 5702374 (Del. Ch. Oct. 17, 2013) ........................................................15

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
    2020 WL 6484640 (S.D. Cal. Nov. 4, 2020) ........................................................20

*Spokeo v. Robins*,
    578 U.S. 330 (2016)..............................................................................................15

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).....................................................................................4, 16, 17

*UD Tech. Corp. v. Phenomenex, Inc.*,
    2007 WL 28295 (D. Del. Jan. 4, 2007)................................................................14

*United Phosphorus, Ltd. v. Micro-Flo*,
    808 A.2d 761 (Del. 2002) .....................................................................................17

*United States ex rel. Radhakrishnan v. Gampel*,
    2024 WL 894671 (D. Ariz. Mar. 1, 2024) ...........................................................11

*Zabit v. Brandometry, LLC*,
    540 F. Supp. 3d 412 (S.D.N.Y. 2021).................................................................8, 9

**STATUTES**

6 *Del. C.* § 2001 .............................................................................................................5, 14

5 U.S.C. § 552 ....................................................................................................................10

18 U.S.C. § 1839..........................................................................................................3, 5, 7

**OTHER AUTHORITIES**

12 C.F.R. § 4.32 .................................................................................................................10

12 C.F.R. § 261 ..................................................................................................................10

54A Am. Jur. 2d Monopolies and Restraints of Trade § 1055 .........................................17

Fed. R. Civ. P. 12(b)(6)...................................................................................................7, 8

## I.    INTRODUCTION

Defendant Argus Information & Advisory Services Inc. ("Argus") engaged in an elaborate, decade-long scheme to covertly deploy customized software to mimic, share, and profit from JPMorgan Chase, N.A.'s ("JPMC") Trade Secret Data.  *See, e.g.*, Compl. ¶¶ 1-3, 10, 42-66.  None of the defendants even contests the key facts underlying JPMC's claims:

- The federal government mandated that JPMC provide its Trade Secret Data to the regulators via Argus, the government's data aggregator. *Id.*  ¶¶ 31-32;

- Argus' regulatory contracts "placed restrictions on Argus's ability to use, disclose, or distribute credit card data collected from banks for purposes other than the performance of the work under the [contracts]." D.I. 1-1 at 2;

- Violating these agreements, Argus secretly developed a sophisticated computer program that unlawfully accessed, used, and retained JPMC's Trade Secret Data to mimic that data for use and disclosure in its commercial business.  Compl. ¶¶ 43-47; and

- For at least ten years (2010-late 2022), Argus used this mimicked data in products and services it sold "to other credit card issuers, including to credit card issuers in Delaware," some of which are still in service today.  *Id.* ¶¶ 49, 80.

The Complaint also pleads specific facts regarding co-defendant Trans Union LLC's ("TransUnion," and together with Argus "Defendants") role in the misappropriation scheme, including that after it purchased Argus (i) "TransUnion continued to misappropriate the Trade Secret Data to enhance its and Argus' businesses," Compl. ¶ 81; (ii) "Argus and TransUnion admitted to the misappropriation of the Trade Secret Data that JPMC had provided to the Regulators since 2010," *id.* ¶ 86; and (iii) "TransUnion was also unjustly enriched by its use of the Trade Secret Data in its other businesses," *id.* ¶¶ 105, 121.

Further, Defendants already admitted wrongdoing—to the tune of a $37 million settlement payment to the Department of Justice—in connection with knowingly improper access, use, and retention of anonymized credit card data they received from JPMC and other banks.  D.I. 1-1 at 2.

Even so, Defendants now seek to excuse their wrongful conduct by arguing that JPMC lost

1

its ownership of its trade secrets when it complied with federal banking regulations and sent the Trade Secret Data to Argus as the federal regulators' data aggregator. But the law fails to support Defendants' argument, and it provides no free pass for Defendants' wrongdoing. Indeed, Defendants cite **no** statute, regulation, or case stating a bank forfeits its ownership of trade secrets rights and ownership of the underlying data by following federal regulatory mandates.

Defendants' remaining arguments contest the well-pled facts, which must be credited at this stage. Indeed, the core "question at the pleading stage is simply whether [JPMC] provided allegations of misappropriation sufficient to 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true[.]'" *Oakwood Lab'ys. LLC v. Thanoo*, 999 F.3d 892, 913 (3d Cir. 2021) (citation omitted). Based on the Complaint's detailed allegations that Defendants largely ignore, the answer to this question is yes. In sum, the Court should deny the motion to dismiss.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

JPMC commenced this lawsuit in March 2024, asserting federal and Delaware trade secret misappropriation claims against Argus, TransUnion, and their co-defendant, Verisk Analytics, Inc. D.I. 1. After holding a pre-motion conference, the Court permitted the defendants to file motions to dismiss, and Defendants' motion followed. D.I. 17, 30, 32.

## III.    SUMMARY OF ARGUMENT

No basis exists for dismissal, and JPMC should be allowed to pursue its claims.

Defendants' arguments nearly all involve factual challenges to JPMC's well-pled facts, which are insufficient to dismiss JPMC's claims at this stage. Their other arguments conflict with the trade secret statutes and binding and persuasive caselaw in the Third Circuit and other courts.

Defendants make two challenges under the federal Defend Trade Secrets Act ("DTSA"), first arguing that JPMC does not own the Trade Secret Data, so it cannot state a claim of

misappropriation.  But JPMC's well-pled allegations that it created, compiled, and owns the data (Compl. ¶ 22) confirm Defendants are improperly contesting the facts.  According to the Complaint, the data originated "from the millions of credit cards JPMC has issued to consumers across the United States and the consumers' usage of those cards" (*id*.), so its pleadings are more than plausible.  And Defendants' legal theories—that Argus' agreements with the Regulators or the regulations themselves could somehow deprive JPMC of ownership—are wrong.  Not only was JPMC not a party to the contracts, but the Regulators have made clear through their own regulations that while the Regulators may possess the trade secrets and treat them as CSI, JPMC still owns them.  Defendants also wrongly insist there can be only a single trade secret owner, but the DTSA broadly defines an "owner" to include an entity with either "legal" **or** "equitable" title to the trade secret.  18 U.S.C. § 1839(4).

Defendants' second DTSA argument—seeking dismissal of any federal claims related to Trade Secret Data Argus obtained before 2016—fails.  Defendants ignore JPMC's allegations that Defendants continued to misappropriate the same Trade Secret Data Argus received before the DTSA's enactment after the DTSA's enactment.

Defendants' Delaware Unified Trade Secrets Act ("DUTSA") arguments fare no better.  The DUTSA applies to conduct occurring in Delaware, and the Complaint alleges extensive conduct in that jurisdiction.  *See, e.g.,* Compl. ¶ 49 (misappropriated trade secrets were disclosed "to credit card issuers in Delaware").  By improperly introducing facts outside the Complaint, Defendants attempt to dispute these pleaded facts, but the Complaint creates a plausible inference that misappropriation occurred in Delaware.  And the DUTSA does not require JPMC to plead a breach of a duty; it expressly prohibits Defendants' wrongdoing whether a duty is owed or not.

JPMC also adequately pleads legally cognizable harm and damages.  Defendants

incorrectly read the Supreme Court's decision in *TransUnion*.  The decision expressly recognizes "disclosure of private information" as a cognizable harm under Article III.  And Defendants ignore the additional pleadings that include other types of harm.

Finally, the Complaint adequately implicates TransUnion in the misappropriation scheme. *See, e.g.*, Compl. ¶ 81 ("TransUnion continued to misappropriate the Trade Secret Data to enhance its and Argus' businesses").  TransUnion disputes JPMC's factual assertions, but that is not a proper ground for dismissal, and its self-serving denials cannot overcome JPMC's well-pled and plausible allegations that TransUnion participated in the misappropriation.

## IV.    BACKGROUND

JPMC pleads extensive facts related to the background of this matter in its Complaint and incorporates its pleading by reference herein.  D.I. 1.

## V.    LEGAL STANDARD

To survive a motion to dismiss, a complaint need only contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted).  In ruling on a motion to dismiss for failure to state a claim, the factual allegations of the complaint must be accepted as true.  *Oakwood Lab'ys*, 999 F.3d at 913. Moreover, a court must "assum[e] the veracity of 'all reasonable inferences that can be drawn from' those allegations."  *Id*. at 904.

## VI.    ARGUMENT

The Third Circuit listed the elements of a DTSA claim in *Oakwood Lab'ys*, which JPMC has pled in detail:

(1) the existence of a trade secret, defined generally as information with

independent economic value that the owner has taken reasonable measures to keep secret, 18 U.S.C. § 1839(3);

(2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]" *id.* § 1836(b)(1); and

(3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret, *id.* § 1839(5).

999 F.3d at 905 (formatting modified).

JPMC has also pled the following elements required under the DUTSA:

The acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means,

or alternatively,

the disclosure or use of a trade secret of another without express or implied consent by a person who either:

(1) acquired the secret by improper means;

(2) knew or had reason to know that their knowledge of the trade secret was

(A) derived by another who acquired it by improper means,

(B) [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or

(C) acquired by accident or mistake.

*Mattern & Associates, L.L.C. v. Seidel*, 678 F. Supp. 2d 256, 269 (D. Del. 2010) (formatting modified and cleaned up) (citing *Accenture Global Servs. GMBH v. Guidewire Software, Inc*., 581 F. Supp. 2d 654, 662 (D. Del. 2008) and 6 *Del. C.* § 2001(2))).

### A.    JPMC Has Adequately Pled a Violation of the Defendant Trade Secrets Act

The Trade Secret Data consists of an extensive data compilation about JPMC's credit card business, including monthly detailed individual account-level data and compiled portfolio-level data that aggregates categories of accounts.  Compl. ¶¶ 18-19.  JPMC pleads that it owns this data. *Id.* ¶ 22 ("As the Trade Secret Data is generated from the millions of credit cards JPMC has issued

to consumers across the United States and the consumers' usage of those cards, JPMC is the creator, compiler, and owner of the Trade Secret Data.").

Defendants challenge JPMC's ownership claims based on the government's Regulatory Contracts with Argus, but that challenge is legally baseless and factually it cannot be entertained on a motion to dismiss. Defendants' alternative argument that the Regulators are the sole entity entitled to a remedy under the federal regulations misreads the regulations. Finally, Defendants' request that any misappropriation claim related to Trade Secret Data from before the enactment of the DTSA be dismissed ignores the law and JPMC's well-pled facts of continuing misappropriation.

### 1.    JPMC Pleads It Owns the Trade Secrets

Defendants' lead argument is that "the Regulators, not JPMC, own the alleged trade secrets." D.I. 32 at 8. JPMC's Complaint unequivocally alleges "JPMC is the creator, compiler, and owner of the Trade Secret Data." Compl. ¶ 22; *id*. ¶¶ 93, 110 ("JPMC owns the Trade Secret Data."). It further explains that the commercially valuable data originated from JPMC and gives JPMC a significant competitive advantage. Compl. ¶¶ 18-19. At this stage, this Court must accept JPMC's ownership allegations as true, and these allegations when taken together at minimum create a plausible inference that JPMC has either rightful legal or equitable title to the Trade Secret Data. *Cf. Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023) ("[A] motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." (internal quotations and citation omitted)).

JPMC's ownership averments should end this inquiry. Defendants' argument that the Trade Secret Data belongs to the government merely creates factual issues that the Court cannot resolve at this stage. *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) ("The district

court may not make findings of fact [when deciding a motion to dismiss] and, insofar as there is a factual dispute, the court may not resolve it."); *Houser v. Feldman,* 569 F. Supp. 3d 216, 229 (E.D. Pa. 2021) (denying motion to dismiss where defendant challenged whether plaintiff owned trade secrets because that was a factual dispute and "[c]onsideration of a motion to dismiss requires only a determination as to whether the factual allegations in a complaint state a plausible claim; it does not require a determination as to what the facts actually are.").   Other courts considering trade secret ownership challenges at this early stage concur.   *See, e.g., Parker v. Petrovics*, 2020 WL 3972761, at *7 (N.D. Ala. July 14, 2020) ("In ruling on a Rule 12(b)(6) motion, the court is not the finder-of-fact," and "at this stage, the court is not to resolve the parties' fact disputes about whether Plaintiff was the 'owner' of [the trade secrets].").

Even if the Court were to find that the Regulators share ownership rights, the DTSA broadly defines the term "owner" to mean "the person or entity in whom or in which **rightful legal or equitable title to**, or license in, the trade secret is reposed."   18 U.S.C. § 1839(4) (emphasis added).   While this Court has yet to define the meaning of "equitable title" under the DTSA, in discussing patents, it has held that "[e]quitable title may be defined as 'the beneficial interest of one person whom equity regards as the real owner, although the legal title is vested in another.'"  *Hologic, Inc. v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118, 122 n.8 (D. Del. 2016) (citation omitted).   And "[m]ore than one person or entity may enforce a trade secret.  One party could hold legal title to a trade secret, while another may have equitable ownership of same.  And either of those might license the trade secret to another. . . . Any of these could have standing to bring a claim under the DTSA."  *Health Care Facilities Partners, LLC v. Diamond*, 2023 WL 3847289, at *7 (N.D. Ohio June 5, 2023).   Therefore, contrary to Defendants' argument, the DTSA does not prohibit co-ownership.   This provides further support for denying the motion.

7

## 2. The Regulatory Contracts Cannot Diminish JPMC's Ownership Claims

Defendants rely on Argus' contracts with the Regulators as evidence that the Regulators, not JPMC, own the Trade Secret Data. D.I. 32 at 8. Even if these contracts are properly considered by this Court,[1] they fail to establish that JPMC does not own the Trade Secret Data. The contracts say nothing about **JPMC's** property rights in its own data. Nor could they limit JPMC's ownership rights in the Trade Secret Data because JPMC was not a party to those agreements.[2] *See, e.g.*, *Arrowood Indem. Co. v. Hartford Fire Ins. Co.*, 774 F. Supp. 2d 636, 658 (D. Del. 2011) ("Delaware law provides that '[a]s a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions.'" (citation omitted)).

Defendants attempt to distinguish *Arrowhead* because "it merely analyzes when a party is a third-party beneficiary and does not address whether a contract with the government can diminish the rights of a third-party." D.I. 32 at 10 n.4. But Defendants cite no case that creates a government exception to this "general rule" in Delaware, and it would violate the Fifth Amendment's takings clause to permit the government to unlawfully take private property via a contract with a third party.

Finally, the two cases Defendants cite, *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 419-20 (S.D.N.Y. 2021), and *Focused Impressions, Inc. v. Sourcing Grp.*, *LLC*, 2020 WL

---

[1] The Court need not even consider these contracts, which are not attached to the Complaint. When considering a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). Because Argus's contracts with the Regulators were not attached to the Complaint and Verisk does not claim they are a matter of public record, the Court may not properly consider them. Verisk argues that the contracts are "integral to or explicitly relied upon in 20 paragraphs of JPMC's Complaint." D.I. 34 at 5 n.3 (citations omitted). But the Complaint's use of the contracts does not rise to the degree of reliance that would allow this court to consider them at the Rule 12(b)(6) stage.

[2] Verisk was not a party to the contracts either.

1892062, at *4-5 (D. Mass. Apr. 16, 2020), are readily distinguishable. In *Zabit*, the plaintiff admitted he "does not own any trade secret that [wa]s potentially at issue," and the complaint was "devoid of any facts even suggesting that Zabit ha[d] any sort of expectant interests giving rise to 'equitable title.'" 540 F. Supp. 2d at 420. In *Focused Impressions*, the distributor plaintiff's complaint was full of allegations regarding who created the trade secrets that "make clear that even [the distributor plaintiff] believe[d] the information belong[ed] to [the distributor's clients]." 2020 WL 1892062, at *5. Here, unlike in *Zabit* and *Focused Impressions*, JPMC alleges ownership of the Trade Secret Data, and the Complaint is full of facts supporting JPMC's ownership claim, including that JPMC created, maintained, and protected the Trade Secret Data. Compl. ¶¶ 18-19, 22, 93, 110.

The Regulatory Contracts do not foreclose JPMC's trade secret misappropriation claims.

### 3.    The Federal Regulations Support JPMC's Ownership of the Trade Secret Data

Defendants also rely on federal regulations to assert JPMC does not own the Trade Secret Data. But these regulations define Confidential Supervisory Information ("CSI"), a regulatory privilege to protect the Regulators' supervision and examination of banks.[3] *See generally In re Subpoena Served upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992) ("Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank."). Documents prepared and possessed by a bank for its own business purposes are **not** CSI, even if the Regulators have copies of the

---

[3] Unless otherwise indicated, JPMC will collectively refer to "Confidential Supervisory Information" and "Non-public OCC Information" as "CSI."

documents and treat them as CSI.  12 C.F.R. § 261.2(b)(2) ("Confidential supervisory information does **not** include: (i) Documents prepared **by or for a supervised financial institution for its own business purposes** that are in its own possession and that do not include confidential supervisory information as defined in paragraph (b)(1) of this section, **even though copies of such documents in the Board's or Reserve Bank's possession constitute confidential supervisory information**.") (emphasis added); *see also In re Capital One Consumer Data Breach Sec. Lit.*, No. 1:19-md-02915, D.I. 511 at 20 n.10 (E.D. Va. May 29, 2020) (OCC characterizing its regulations, including 12 C.F.R. § 4.35(a)(2)(iii), as "[s]imilar[]" to the Federal Reserve's 12 C.F.R. § 261.2(b)(2)) (Exhibit A to accompanying Declaration of Julie Goldemberg).  Nothing in the regulations states that a bank loses ownership merely because it submitted its data to the Regulators.  12 C.F.R. § 261.2(b); 12 C.F.R. § 4.32.  In fact, the Federal Reserve has made clear that "definition [of CSI] is not intended to encompass internal business documents merely because in the Federal Reserve's possession such documents are confidential supervisory information." *See* Federal Reserve System 12 CFR PART 261 Docket No. R-1665; RIN 7100 AF-51 *Rules Regarding Availability of Information*, at 9 (Exhibit B to accompanying Declaration of Julie Goldemberg).

Thus, while the Regulators may **possess** the trade secrets and treat them as CSI, JPMC **owns** them, and the Regulators' power to obtain the data for supervisory purposes does not vitiate JPMC's ownership.  Statutory law concerning exceptions to FOIA disclosures confirm that providing information to federal agencies such as the Regulators does not strip a bank of trade secret protections.  *See* 5 U.S.C. § 552(b)(4) (shielding "trade secrets" from disclosure).

No court has ever interpreted the regulations as Defendants propose, and for good reason. Under Defendants' view of CSI, no banks would be willing to share commercially valuable

information with the Regulators, and it would violate the Fifth Amendment's Takings Clause to permit the government to unlawfully take a bank's private property via such regulations.

Defendants' reliance on federal regulations dictating the terms of government contracting and procurement are equally unavailing. Defendants do not even argue that these regulations apply to the Trade Secret Data JPMC provided to the government via Argus or that JPMC is somehow bound by or agreed to them.

Finally, Defendants' argument that Argus has already settled with the Regulators, so JPMC cannot recover from Argus under the DTSA, is unfounded. JPMC attached as Exhibit A to its Complaint, D.I. 1-1, the Settlement Agreement between Argus and the United States. In Paragraph 2 on page 3, the Settlement Agreement makes clear that the United States has settled claims with Argus relating to the False Claims Act, the Program Fraud Civil Remedies Act, the Financial Institutions Reform, Recovery, and Enforcement Act, the Store Communications Act, and common law theories of breach of contract, fraud, payment by mistake and unjust enrichment.[4] The Settlement Agreement lacks any reference to settlement of any potential claim by JPMC, let alone any trade secret misappropriation claims.

### 4.  JPMC Alleges Continuing Misappropriation under the DTSA

Defendants argue that the DTSA is not retroactive. But that principle does not shield Argus from liability under the DTSA for misappropriation of trade secrets that began before the statute

---

[4] Defendants would be wrong to argue that unjust enrichment necessarily covers trade secret misappropriation. The government frequently pleads tagalong claims in the form of payment by mistake and unjust enrichment in a False Claims Act suit. *See, e.g.*, *United States ex rel. Radhakrishnan v. Gampel*, 2024 WL 894671, at *4 (D. Ariz. Mar. 1, 2024) ("Both a payment by mistake and an unjust enrichment claim are available to the United States and are not necessarily derivative of False Claims Act claims." (citation omitted)). Nothing in Settlement Agreement indicates the government asserted a trade secret misappropriation claim or recovered for misappropriation of JPMC's trade secrets. Certainly at the motion to dismiss stage, Defendants cannot demonstrate that the government's recovery was duplicative of the relief sought by JPMC.

was enacted **but continued afterwards**. *See, e.g.*, *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Group*, 2017 WL 1105648, at *4 (E.D. Pa. Mar. 24, 2017) ("Other district courts have analyzed the applicability of the DTSA to misappropriations that occurred before the DTSA was enacted.  These courts have all held that the DTSA applies to misappropriations that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date.").  And JPMC alleges that Defendants continued to misappropriate the **same type of Trade Secret Data** after DTSA's enactment that it had received before its enactment.  *See, e.g.*, Compl. ¶¶ 66 ("Argus and Verisk continued to misappropriate the data"), 80 ("Argus and TransUnion have failed to prevent all such models from continuing to be used or accessed by their customers or otherwise recover the models"), 81 ("TransUnion continued to misappropriate the Trade Secret Data to enhance its and Argus' businesses"), 103 and 119 ("Argus and TransUnion have not taken steps to (a) prevent all such models from continuing to be used or accessed by their customers, (b) modify the models to remove all aspects of the models that were built using the Trade Secret Data, and/or (c) otherwise recover all models that were built using the Trade Secret Data."), 105 and 121 ("Argus knowingly and continuously used and disclosed the Trade Secret Data to enhance the Benchmarking Studies and Related Services and to continue to profit from them").

All of these allegations apply to the Trade Secret Data Argus received before 2016.  For example, Argus used this pre-2016 data to create models that then continued to use that data after 2016, even though it also obtained (and misappropriated) new data from JPMC every month.  *See id.*  Defendants may dispute these allegations, but this Court must credit them as true at the motion to dismiss stage.  *See Oakwood Lab'ys*, 999 F.3d at 912.

### B.    JPMC Has Adequately Pled a Violation of the DUTSA

#### 1.    The DUTSA Applies to Defendants' Misconduct.

JPMC has alleged that much of the conduct giving rise to the misappropriation claim

occurred in Delaware. JPMC is a Delaware corporation, Compl. ¶ 6, and "the core of [its] credit card business was and is conducted from Delaware," *id.* ¶ 7. The Defendants and Verisk also are Delaware corporations, Compl. ¶¶ 8-9, 11, that (i) "sell their services and products in Delaware, to Delaware companies and citizens," *id.* ¶ 15, and (ii) misappropriated the commercially valuable trade secrets of JPMC (including Delaware-based Chase Bank USA, N.A.), *id.* ¶¶ 7, 19-23. JPMC employees in Delaware assembled, prepared, and encrypted the Trade Secret Data, while taking reasonable measures in Delaware to protect this data. *Id.* ¶¶ 34, 58, 95. Then Defendants misappropriated this data by sending benchmarking studies incorporating the misappropriated trade secrets "to other credit card issuers, **including to credit card issuers in Delaware**." *Id.* ¶ 49 (emphasis added). To cover up this misappropriation, Argus also wrote to JPMC personnel in Delaware providing "false assurances" in "an intentional effort to conceal its ongoing willful and malicious misappropriation and prevent JPMC," including its Delaware employees, "from discovering Argus' unlawful conduct." *Id.* ¶¶ 70, 72, 74. In view of these allegations, Delaware law applies. *See J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 116423, at *2 (Del. Super. Ct. Oct. 21, 1988) (applying Delaware law to trade secret claim given that the underlying conduct occurred in Delaware and that injury was felt there).

Defendants' extraterritoriality argument invites the Court to hold that a Delaware entity cannot be held liable under the DUTSA for conduct occurring and impacting Delaware. But that is not the law. Although the DUTSA does not apply where a plaintiff has "not cited **any** conduct that took place in Delaware," *Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch. 2020) (emphasis added), JPMC has pled a litany of facts showing conduct in Delaware.

Given the Complaint's allegations tying Defendants' conduct to Delaware, Defendants' reliance on *Elkay Interior Sys. Int'l, Inc. v. Weiss*, wherein "there [was] no real dispute that the

[DUTSA] does not provide a cause of action for the conduct alleged" is misplaced. 2022 WL 17961568, at *4 (D. Del. Dec. 27, 2022). In *Elkay*, after the plaintiff did not dispute the inapplicability of the DUTSA, the Court dismissed the DUTSA claim without prejudice and granted the plaintiff an opportunity to replead its trade secret misappropriation claim so the Court and parties could "figure out later which state's statute applies to that [trade secret] claim." *Id.* Thus, Defendants' apparent invitation for the Court to determine at the motion to dismiss phase that JPMC is barred from recovery under another state law (New York) is, at best, premature. *See* D.I. 32 at 14. Further, as explained *infra* § VI.C, JPMC has pled loss and harm.

## 2.    JPMC Need Not Plead a Breach of a Duty Owed

JPMC does not base its allegations of misappropriation on duties owed to JPMC, nor need it do so. The DUTSA broadly defines misappropriation to include an unauthorized "use of a trade secret" that the defendant "knew or had reason to know" was "[a]cquired under circumstances giving rise to a duty to maintain" the secrecy or limit the use. 6 *Del. C.* § 2001(2)(b)(2)(B). The Complaint adequately pled misappropriation under this definition. *E.g.*, Compl. ¶¶ 32, 35-36, 45, 49, 55, 57, 67-68, 98-104, 114-120 (averring, *inter alia*, that Defendants were restricted from using the Trade Secret Data for their commercial business but did so anyway).

Again, the cases Defendants rely on are factually distinguishable. In *UD Tech. Corp. v. Phenomenex, Inc.*, 2007 WL 28295, at *6 (D. Del. Jan. 4, 2007), this Court considered whether a trade secret claim could go forward under Arizona law where the "the court f[ound] the factual allegations in the complaint facially deficient" to show that the plaintiff was a successor in interest of the trade secrets. *See, e.g.*, *id.* at *7 (criticizing plaintiff for relying on "two unidentified assignments" and "no temporal context" for assignment of contractual rights). Here, JPMC is not claiming it is a party or successor in interest to any contracts. And in *Macquarie Bank Ltd. v. Knickel*, 793 F.3d 926, 936-37 (8th Cir. 2015), the party asserting misappropriation did not contest

the district court's finding that it "did not own or have any interest in the trade secrets when the misappropriation occurred." JPMC pleads the opposite, and its allegations must be accepted as true.

### C.    JPMC Has Adequately Pled Legally Cognizable Harm and Damages

Next, Defendants assert that JPMC has not adequately pled an injury-in-fact and therefore lacks Article III standing.[5] The injury-in-fact prong of Article III standing requires the plaintiff to show that he suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted). JPMC has more than met this pleading requirement.

The Complaint includes numerous averments related to harm. *See, e.g.*, Compl. ¶¶ 105-106, 121-122 (alleging, *inter alia*, that Defendants sold products and services that misappropriated the Trade Secret Data to JPMC's competitors, that Defendants were unjustly enriched, and that "JPMC is entitled to damages including but not limited to lost profits, unjust enrichment, [and] a reasonable royalty"). These allegations suffice at the pleading stage.

Further, as the Third Circuit noted in *Oakwood Lab'ys,* under the DTSA, "trade secret misappropriation *is* harm." 999 F.3d at 913 (emphasis in original). "Thus, cognizable harm is pled when a plaintiff adequately alleges the existence of a trade secret and its misappropriation." *Id*. at 913-14; *see also Simplexity, LLC v. Zeinfeld*, 2013 WL 5702374, at *7 (Del. Ch. Oct. 17, 2013) ("[I]t is enough that the Plaintiff has pled facts showing a specific instance of Simplexity's trade secrets being improperly used and that Simplexity has suffered damages as a result."); *id*. at n.74 ("Under our liberal notice-pleading rules, all that is required is that the Defendants have notice of the claims against them. The harms may be quantified at trial.").

---

[5] Although many of the arguments Verisk makes are similar to those of Defendants, Verisk does not join in this challenge.

Defendants rely on *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021), to argue that *Oakwood Lab'ys* has been overruled. Not so. The Supreme Court in *TransUnion* found concrete harm to class members whose inaccurate credit reports were sent to potential creditors, but no harm to individuals with inaccurate credit reports that were never sent to potential creditors. *Id.* at 435-36. For the former group, the Supreme Court found that the alleged harm "bear[ed] a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts," so those class members had standing. *Id.* at 433. And the Supreme Court explained that, while certain harms, such as physical and monetary harms, "readily qualify as concrete injuries under Article III," other intangible injuries, such as "reputational harms, **disclosure of private information**, and intrusion into seclusion," are harder to discern but may nevertheless qualify as "concrete" as well. *Id*. at 425 (emphasis added and citations omitted). As one court recently noted, "*TransUnion* involved claims involving statutory violations that the court analogized to *defamation* (such as when an inaccurate credit report mislabels a consumer as a terrorist or drug trafficker) which is not actionable absent publication—rather than statutory violations . . . implicat[ing] historically rooted [] interests." *Brooks v. Thomson Reuters Corp*., 2023 WL 9316647, at *6 (N.D. Cal. Aug. 10, 2023).

*Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021), is instructive. There, the Tenth Circuit held the plaintiff had standing to bring a claim under the Fair Debt Collection Practices Act in view of *TransUnion* even though the defendant "made only one call to Ms. Lupia [and] that Ms. Lupia didn't answer that call" because the plaintiff alleged an injury that bore a "close relationship" to a common law tort. *Id*. at 1191 "Though a single phone call may not intrude to the degree required at common law, that phone call poses the same *kind* of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet." *Id*. at 1192

16

(emphasis in original); *see also Revive Investing LLC v. Armistice Capital Master Fund, Ltd.*, 2023 WL 5333768, at *8 (D. Colo. Aug. 18, 2023) (agreeing the *TransUnion* inquiry "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury" and holding harm suffered from insider trading under the Securities and Exchange Act is analogous to the common law injury of breach of trust (citation and internal quotations omitted)).

Defendants cannot deny that trade secret misappropriation has deep roots in the common law. *See, e.g.*, *United Phosphorus, Ltd. v. Micro-Flo*, 808 A.2d 761, 763 (Del. 2002) (referring to Delaware "common law claims" of "conversion, unjust enrichment, unfair competition, deceptive trade practices and misappropriation of trade secrets"); *Laura Laaman & Associates, LLC v. Davis*, 2017 WL 5711393, at *10 (D. Conn. Nov. 27, 2017) (citing various Connecticut cases mentioning the "common-law theory of misappropriation of trade secrets, which is codified" in the Connecticut Unified Trade Secret Act and is "rooted in the common law"). JPMC's harm from misuse of its Trade Secret Data is likewise based in common law torts of misappropriation and unjust enrichment. Indeed, courts have traditionally recognized unjust enrichment as a harm as a basis for a lawsuit. *E.g.*, 54A Am. Jur. 2d Monopolies and Restraints of Trade § 1055 (characterizing lost profits and unjust enrichment as "two basic methods for assessing damages for the misappropriation of trade secrets" while recognizing "courts also recognize a third method, the award of a reasonable royalty").

Further, putting aside the fact that JPMC's allegations are not limited to unjust enrichment damages, courts have repeatedly declined to read *TransUnion* as Defendants suggest, *i.e.*, categorically barring claims based on unjust enrichment damages theories from proceeding. *E.g.*, *Brooks*, 2023 WL 9316647, at *6 (holding plaintiffs had standing in view of *TransUnion* where "Plaintiffs and other subjects of CLEAR's informational sweep were harmed by the breadth of

personal information collected and put up for public sale.  Plaintiffs were deprived of control over a wide swath of their personal data, which was then made publicly available.  They were deprived of the value of their data."); *Egan v. X-Mode Soc., Inc*., 2024 WL 2701967, at *3 (D. Mass. May 24, 2024) ("Egan also alleges that, by selling her location data without her consent, X-Mode unjustly enriched itself at her expense. Given that the disgorgement of unjustly earned profits is permitted under Chapter 93A, . . . Egan has alleged an injury sufficient to confer standing Article III."); *Murphy v. Kochava Inc*., 2023 WL 6391061, at *3-4 (D. Idaho Oct. 2, 2023) (plaintiffs alleged an Article III injury where they pled that defendant "sold *their* personal geolocation data and associated MAIDs without authorization, and that in doing so, [defendant] unjustly earned profits") (emphasis in original).

Defendants also argue that JPMC would never have participated in the Benchmarking Study if doing so were harmful.  D.I. 32 at 17.  But that is a factual inference Defendants are improperly requesting to be made in their favor.  *See Oakwood Lab'ys*, 999 F.3d at 904 (a court must view all reasonable inferences that may be drawn from the complaint in the light most favorable to the non-moving party).

Finally, Defendants cite *Knuth v. Cap. Patrol, LLC Ohio*, 2024 WL 2925321, at *3-4 (S.D. Cal. June 10, 2024), which is readily distinguishable.  In *Knuth* the Plaintiff only alleged potential risk of future harm, not any past harm of any sort.  *Id.*  JPMC has alleged past and ongoing harm. Compl. ¶¶ 105-106, 121-122.

## D.    JPMC Has Adequately Pled Claims against TransUnion

Finally, JPMC's Complaint specifically alleges TransUnion misappropriated the Trade Secret Data.  *See, e.g.*, Compl. ¶ 81 ("TransUnion continued to misappropriate the Trade Secret Data to enhance its and Argus' businesses."), 86 ("Argus and TransUnion admitted to the misappropriation of the Trade Secret Data that JPMC had provided to the Regulators since 2010."),

103 ("Argus and TransUnion have not taken steps to [] prevent all such models from continuing to be used or accessed by their customers"), 105 ("TransUnion was also unjustly enriched by its use of the Trade Secret Data in its other businesses."), 121 (same). The Court must credit these factual allegations at the pleading stage. *Iqbal*, 556 U.S. at 678. As Defendants acknowledge, the Complaint's allegations regarding TransUnion's liability do not depend on piercing the corporate veil; the Complaint alleges liability based on TransUnion's direct culpability.

The cases Defendants cite do not support dismissing TransUnion. In *Children's Health Def., Inc. v. Rutgers*, 93 F.4th 66, 82 (3d Cir. 2024), the Third Circuit considered a challenge to Rutgers University's requirement that students must be vaccinated to return to campus in 2021. The plaintiffs speculated that because Rutgers had previously participated in clinical trials for the COVID-19 vaccine and received grants from Pfizer, the University had—on information and belief—some "stake in the approval and widespread dissemination and use of COVID-19 vaccines." *Id.* The Third Circuit held that the allegations did not support the inference that Rutgers would gain financially from the distribution of COVID-19 vaccines and were "not enough to raise a right to relieve above a speculative level." *Id.* (internal quotations omitted and alteration adopted). JPMC's allegations are very different, as the Complaint pleads that TransUnion (i) misappropriated the Trade Secret Data when it became the owner of Argus to enhance TransUnion's and Argus' business, (ii) has admitted to the misappropriation, and (iii) has been unjustly enriched from the misappropriation. Compl. ¶¶ 81, 86, 105, 121. These facts support the inference that the misappropriation extended to TransUnion, whereas in *Rutgers* the plaintiff was just speculating as to a financial stake in vaccines that was unsupported by any factual aversions.

In *Labyrinth, Inc. v. Urich,* 2024 WL 295996, at *30 (Del. Ch. Jan. 26, 2024), as Defendants acknowledge, the "complaint lacked specific details about how a defendant

impermissibly used or acquired the trade secret and 'potential misuse does not establish actual misuse.'"  D.I. 32 at 19.  Indeed, "[t]he [*Labyrinth*] Complaint fail[ed] to plead Completely Compliant ever acquired Labyrinth trade secrets," as the plaintiff instead relied on a "legal fiction to impute Stephen's tortious conduct to Completely Compliant," while "mak[ing] no effort to argue or explain why Stephen's conduct should be imputed to an entity he formed months after" he allegedly acquired the trade secrets.  *Labyrinth*, 2024 WL 295996, at \*30.  Here, JPMC relies on no such agency theory, and the Complaint specifically details how Argus acquired the Trade Secret Data and how TransUnion acquired that same data through its purchase of Argus.  Compl. ¶¶ 81, 86, 105, 121.

Nor do JPMC's allegations "lump together defendants" as was the case in *Ocimum Biosolutions (India) Ltd., Tr. of Ocimum Biosolutions Inc. v. LG Chem. Ltd.,* 2022 WL 3354708, at \*13 (D. Del. July 31, 2022).  Again, the Complaint has specific allegations directed to TransUnion.  Compl. ¶¶ 81, 86, 105, 121.  And unlike in both *Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2020 WL 6484640, at \*6 (S.D. Cal. Nov. 4, 2020) and *Newport Enters. v. Isys Techs.*, 2015 WL 4715300, at \*3 (D. Utah Aug. 7, 2015), JPMC has not alleged that TransUnion merely had knowledge of misappropriation of trade secrets and failed to prevent further misappropriation; JPMC alleges TransUnion itself participated in the misappropriation.  Compl. ¶¶ 81, 86, 105, 121.

At bottom, Defendants' arguments about TransUnion cannot prevail at this stage because they depend on contested and plausibly pled facts.

## VII.    CONCLUSION

Defendants dispute the facts as pled, but the Court cannot resolve these factual challenges on a motion to dismiss.  And Defendants' remaining arguments rely on a misreading of the law.  For the foregoing reasons, JPMC respectfully requests the Court deny Defendants' motion.

Dated: September 20, 2024

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Jody C. Barillare*
Amy M. Dudash (#5741)
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-3000
amy.dudash@morganlewis.com
jody.barillare@morganlewis.com

Julie S. Goldemberg (*pro hac vice*)
Phillip D. Wolfe (*pro hac vice*)
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
julie.goldemberg@morganlewis.com
phillip.wolfe@morganlewis.com

Michael J. Abernathy (*pro hac vice*)
Maria E. Doukas (*pro hac vice*)
110 N. Wacker Drive, Suite 2800
Chicago, IL 60601-5094
(312) 324-1000
michael.abernathy@morganlewis.com
maria.doukas@morganlewis.com

*Counsel for Plaintiff JPMorgan Chase Bank, National Association*