**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, <br><br> *Plaintiff*, <br><br> v. <br><br> ARGUS INFORMATION & ADVISORY SERVICES INC., VERISK ANALYTICS, INC. and TRANS UNION LLC, <br><br> *Defendants*. | Civil Action No. 1:24-cv-00348-SB |

**PLAINTIFF JPMORGAN CHASE BANK, N.A.'S ANSWERING BRIEF IN
<u>OPPOSITION TO DEFENDANT VERISK ANALYTICS, INC.'S MOTION TO DISMISS</u>**

Julie S. Goldemberg (*pro hac vice*)
Phillip D. Wolfe (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
julie.goldemberg@morganlewis.com
phillip.wolfe@morganlewis.com

Michael J. Abernathy (*pro hac vice*)
Maria E. Doukas (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL 60601-5094
(312) 324-1000
michael.abernathy@morganlewis.com
maria.doukas@morganlewis.com

Amy M. Dudash (DE Bar No. 5741)
Jody C. Barillare (DE Bar No. 5107)
MORGAN, LEWIS & BOCKIUS LLP
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone:  302.574.3000  |  Fax: 302.574.3001
amy.dudash@morganlewis.com
jody.barillare@morganlewis.com

*Counsel for Plaintiff JPMorgan Chase Bank,
National Association*

Dated:  September 20, 2024

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

III.   SUMMARY OF ARGUMENT ............................................................................ 2

IV.    BACKGROUND ................................................................................................... 4

V.     LEGAL STANDARD .......................................................................................... 4

VI.    ARGUMENT ........................................................................................................ 4

       A.    The DUTSA Applies to Verisk's Misconduct ......................................... 5

       B.    The Complaint Sufficiently Alleges Misappropriation by Verisk ......... 7

       C.    JPMC Has Adequately Pled Sufficient Legal Interest in the Trade Secret
             Data .......................................................................................................... 10

             1.    JPMC Sufficiently Pleads It Owns the Trade Secret Data under the
                   DTSA ............................................................................................. 11

             2.    The Regulatory Contracts Cannot Diminish JPMC's Ownership
                   Claims under the DTSA ................................................................ 12

             3.    Verisk's Argument that Only the Regulators Are Entitled to a
                   Remedy under the DUTSA Fails .................................................. 14

       D.    Verisk's Challenges to JPMC's Reasonable Measures Cannot be Decided
             at this Early Stage ................................................................................... 16

       E.    Neither the DTSA nor the DUTSA Requires JPMC to Plead a Duty Owed
             by Verisk to JPMC or its Breach ........................................................... 18

       F.    Amendment Is Not Necessary, but if the Court Grants Any Portion of the
             Motion, It Should Do So Without Prejudice ......................................... 19

VII.   CONCLUSION ................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Accenture Global Servs. GMBH v. Guidewire Software, Inc.*,
   581 F. Supp. 2d 654 (D. Del. 2008) .......................................................................5, 9

*Advanced Fluid Sys., Inc. v. Huber*,
   958 F.3d 168 (3d Cir. 2020) ...................................................................14, 15, 16

*AgroFresh Inc. v. Essentiv LLC*,
   2019 WL 9514551 (D. Del. Sept. 6, 2019) .................................................................9, 10

*Arrowood Indem. Co. v. Hartford Fire Ins. Co.*,
   774 F. Supp. 2d 636 (D. Del. 2011) ...........................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................4, 7, 17

*BladeRoom Group Ltd. v. Facebook, Inc.*,
   219 F. Supp. 3d 984 (N.D. Cal. 2017) .......................................................................14

*Brightstar Corp. v. PCS Wireless, LLC*,
   2019 WL 3714917 (Del. Super. Ct. Aug. 7, 2019) .....................................................8

*Dow Chem. Co. v. Organik Kimya Holding A.S.*,
   2018 WL 2382802 (Del. Ch. May 25, 2018) ...........................................................6

*DTM Research, L.L.C. v. AT&T Corp.*,
   245 F.3d 327 (4th Cir. 2001) ...................................................................................15

*Dynax Corp. v. Chemguard, Inc.*,
   2010 WL 11575496 (S.D.N.Y. Sept. 2, 2010) .........................................................15

*Elkay Interior Sys. Int'l, Inc. v. Weiss*,
   2022 WL 17961568 (D. Del. Dec. 27, 2022) ...........................................................6

*Flora v. County of Luzerne*,
   776 F.3d 169 (3d Cir. 2015) ...................................................................................11

*Focus Fin. Partners, LLC v. Holsopple*,
   250 A.3d 939 (Del. Ch. 2020) .................................................................................6

*Focused Impressions, Inc. v. Sourcing Grp., LLC*,
   2020 WL 1892062 (D. Mass. Apr. 16, 2020) ...........................................................13, 14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*FTC v. AbbVie Inc,*
  976 F.3d 327 (3d Cir. 2020)........................................................................7

*Health Care Facilities Partners, LLC v. Diamond,*
  2023 WL 3847289 (N.D. Ohio June 5, 2023).............................................12

*Hologic, Inc. v. Minerva Surgical, Inc.,*
  163 F. Supp. 3d 118 (D. Del. 2016)...........................................................12

*Houser v. Feldman,*
  569 F. Supp. 3d 216 (E.D. Pa. 2021) ...................................................11, 16

*In re PMTS Liquidating Corp.,*
  490 B.R. 174 (D. Del. 2013).......................................................................19

*J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.,*
  1988 WL 116423 (Del. Super. Ct. Oct. 21, 1988).......................................6

*Labyrinth, Inc. v. Urich,*
  2024 WL 295996 (Del. Ch. Jan. 26, 2024).......................................8, 9, 10

*Macquarie Bank Ltd. v. Knickel,*
  793 F.3d 926 (8th Cir. 2015) ......................................................................15

*Mattern & Associates, L.L.C. v. Seidel,*
  678 F. Supp. 2d 256 (D. Del. 2010).............................................................5

*Oakwood Lab'ys. LLC v. Thanoo,*
  999 F.3d 892 (3d Cir. 2021).............................................................2, 4, 5, 18

*Ocimum Biosolutions (India) Ltd., Tr. of Ocimum Biosolutions Inc. v. LG Chem. Ltd.,*
  2022 WL 3354708 (D. Del. July 31, 2022) .................................................8

*Parker v. Petrovics,*
  2020 WL 3972761 (N.D. Ala. July 14, 2020) ............................................12

*Pie Dev., LLC v. Pie Ins. Holdings,*
  2021 WL 3206043 (S.D. Miss. July 21, 2021) ...........................................17

*Rodney v. United Masters,*
  2023 WL 2184865 (E.D.N.Y. Feb. 10, 2023)..............................................17

*Schmidt v. Skolas,*
  770 F.3d 241 (3d Cir. 2014)........................................................................13

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Scott v. Vantage Corp.*,
   336 F. Supp. 3d 366 (D. Del. 2018) ........................................................ 19

*Total Care Physicians, P.A. v. O'Hara*,
   2002 WL 31667901 (Del. Super. Ct. Oct. 29, 2002) ............................... 10

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
   2022 WL 701161 (2d Cir. Mar. 9, 2022) ................................................ 18

*United States ex rel. Radhakrishnan v. Gampel*,
   2024 WL 894671 (D. Ariz. Mar. 1, 2024) .............................................. 16

*Wayman Fire Prot. v. Premium Fire & Sec., LLC*,
   2014 WL 897223 (Del. Ch. Mar. 5, 2014) .............................................. 17

*Zabit v. Brandometry, LLC*,
   540 F. Supp. 3d 412 (S.D.N.Y. 2021) ................................................. 13, 14

STATUTES

6 *Del. C.* § 2001 ................................................................... 4, 5, 9, 18

5 U.S.C. § 552 ............................................................................... 16

18 U.S.C. § 1836 ...................................................................... passim

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ............................................................ 12, 13

Fed. R. Civ. P. 15(a)(2) ................................................................... 19

4 Roger M. Milgrim & Eric E. Bensen, *Milgrim on Trade Secrets* § 15.01 (2020) ..................... 14

## I.     INTRODUCTION

Verisk Analytics, Inc. ("Verisk") and its co-defendant Argus Information & Advisory Services Inc. ("Argus") engaged in an elaborate, decade-long scheme to covertly deploy customized software to mimic, share, and profit from JPMorgan Chase, N.A.'s ("JPMC") Trade Secret Data.  *See, e.g.*, Compl. ¶¶ 1-3, 10, 42-66.  None of the defendants contest the key facts underlying JPMC's claims:

- The federal government mandated that JPMC provide its Trade Secret Data to the regulators via Argus, the government's data aggregator.  *Id.*  ¶¶ 31-32;

- Argus' regulatory contracts "placed restrictions on Argus's ability to use, disclose, or distribute credit card data collected from banks for purposes other than the performance of the work under the [contracts]."  D.I. 1-1 at 2;

- Violating these agreements, Argus secretly developed a sophisticated computer program that unlawfully accessed, used, and retained JPMC's Trade Secret Data to mimic that data for use and disclosure in its commercial business.  Compl. ¶¶ 43-47; and

- For at least ten years (2010-late 2022), Argus used this mimicked data in products and services it sold "to other credit card issuers, including to credit card issuers in Delaware," some of which are still in service today.  *Id.* ¶¶ 49, 80.

The Complaint also pleads specific facts regarding **Verisk's** role in the misappropriation scheme, including that (i) as Argus' parent corporation, "Verisk's management knew and authorized" Argus's wrongdoing underlying the claims, *id.* ¶¶ 43-48; (ii) "Verisk w[as] improperly disclosing JPMC credit card data to other Verisk subsidiaries," *id.* ¶ 67; (iii) Verisk was behind the illicit sharing of JPMC trade secret data "encourage[ing] and facilitate[ing] data sharing across its . . . subsidiaries" to boost its bottom line, *id.* ¶ 68; and (iv) "Verisk used the Trade Secret Data for its own commercial purposes," *id.* ¶ 100; *see also id.* ¶¶ 98, 104.

Verisk and Argus have already admitted wrongdoing—to the tune of a $37 million settlement payment to the Department of Justice—in connection with knowingly improper access,

use, and retention of anonymized credit card data they received from JPMC and other banks.  D.I. 1-1 at 2.

Even so, Verisk now seeks to excuse its wrongful conduct by arguing that JPMC lost ownership of its trade secrets when it complied with federal banking regulations related to stress testing and sent the required Trade Secret Data to Argus as the federal regulators' data aggregator. But the law fails to support Verisk's arguments, and it provides no free pass for Verisk's wrongdoing.  Indeed, Verisk cites no statute, regulation, or case stating that a bank forfeits the ownership of its trade secrets rights and ownership of the underlying data by following federal regulatory mandates.

Verisk's remaining arguments contest the well-pled facts, which must be credited at this stage.  Indeed, the core "question at the pleading stage is simply whether [JPMC] provided allegations of misappropriation sufficient to 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true[.]'"  *Oakwood Lab'ys. LLC v. Thanoo*, 999 F.3d 892, 913 (3d Cir. 2021) (citation omitted).  Based on the Complaint's detailed allegations that Verisk largely ignores, the answer to this question is yes.  In sum, the Court should deny the motion to dismiss.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

JPMC filed this lawsuit in March 2024 asserting federal and Delaware trade secret misappropriation claims against Verisk and its co-defendants.  D.I. 1.  After holding a pre-motion conference, the Court permitted Verisk and its co-defendants to file motions to dismiss.  Verisk's motion followed.  D.I. 18, 31, 34.

## III.    SUMMARY OF ARGUMENT

No basis exists for dismissal and JPMC should be allowed to pursue its claims.  Verisk's

arguments nearly all involve challenges to JPMC's well-pled facts, which are insufficient to dismiss JPMC's claims at this stage. Further, its other arguments conflict with the trade secret statutes and binding caselaw in the Third Circuit and other courts.

*First*, Verisk's extraterritoriality argument fails. The Delaware Uniform Trade Secrets Act ("DUTSA") applies to conduct occurring in Delaware, and the Complaint alleges extensive conduct in that jurisdiction. *See, e.g.,* Compl. ¶ 49 (misappropriated trade secrets were disclosed "to credit card issuers in Delaware"). By improperly introducing facts outside the Complaint, Verisk attempts to dispute these pleaded facts, but this Court must credit the Complaint because it creates a plausible inference that misappropriation occurred in Delaware.

*Second*, the Complaint adequately implicates Verisk in the misappropriation scheme. *See*, *e.g.*, *id*. ¶ 67 (Verisk "improperly disclosing JPMC credit card data to other Verisk subsidiaries"). Verisk disputes JPMC's factual assertions, but that is not a proper ground for dismissal, and its self-serving denials cannot overcome JPMC's well-pled and plausible allegations that Verisk authorized and participated in the misappropriation. *Id.* ¶¶ 43-48, 67.

*Third*, Verisk argues that JPMC does not own the Trade Secret Data. But JPMC's well-pled allegations that it created, compiled, and owns the data, *id*. ¶ 22, confirm Verisk is improperly contesting the facts. According to the Complaint, the data originated "from the millions of credit cards JPMC has issued to consumers across the United States and the consumers' usage of those cards," *id*., so its allegations are more than plausible. And Verisk's legal theory—that Argus' agreements with Regulators could somehow deprive JPMC of ownership—ignores the Complaint and basic contract law. Verisk also wrongly insists there can be only a single owner, but the Defend Trade Secrets Act ("DTSA") broadly defines an "owner" to include an entity with either "legal" **or** "equitable" title to the trade secret. 18 U.S.C. § 1839(4).

3

*Fourth*, JPMC has adequately pled it has "maintained and implemented numerous safeguards and security procedures to protect" its trade secrets.  Compl. ¶ 27.  Verisk disputes these assertions, but the Court cannot resolve this factual dispute on a motion to dismiss.

*Fifth*, neither the DTSA nor the DUTSA requires that Verisk owed (or breached) a duty to JPMC.  To the contrary, both statutes expressly prohibit Verisk's wrongdoing, *i.e.*, misusing a trade secret "[a]cquired under circumstances giving rise to a duty to maintain" its secrecy or limit its use.  18 U.S.C. § 1839(5)(B)(ii)(II); 6 *Del. C.* § 2001(2)(b)(2)(B).

## IV.    BACKGROUND

JPMC pleads extensive facts related to the background of this matter in its Complaint and incorporates its pleading by reference herein.  D.I. 1.

## V.    LEGAL STANDARD

To survive a motion to dismiss, a complaint need only contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  In ruling on a motion to dismiss for failure to state a claim, the factual allegations of the complaint must be accepted as true.  *Oakwood Lab'ys*, 999 F.3d at 913.  Moreover, a court must "assum[e] the veracity of 'all reasonable inferences that can be drawn from' those allegations." *Id*. at 904.

## VI.    ARGUMENT

The Third Circuit listed the elements of a DTSA claim in *Oakwood Lab'ys*, which JPMC has pled:

> (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret, 18 U.S.C. § 1839(3);

(2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]" *id.* § 1836(b)(1); and

(3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret, *id.* § 1839(5).

999 F.3d at 905 (formatting modified).

JPMC has also pled the following elements required under the DUTSA:

The acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means,

or alternatively,

the disclosure or use of a trade secret of another without express or implied consent by a person who either:

(1) acquired the secret by improper means;

(2) knew or had reason to know that their knowledge of the trade secret was

(A) derived by another who acquired it by improper means,

(B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or

(C) acquired by accident or mistake.

*Mattern & Associates, L.L.C. v. Seidel*, 678 F. Supp. 2d 256, 269 (D. Del. 2010) (formatting modified) (citing *Accenture Global Servs. GMBH v. Guidewire Software, Inc.*, 581 F. Supp. 2d 654, 662 (D. Del. 2008) and 6 *Del. C.* § 2001(2))).

## A.     The DUTSA Applies to Verisk's Misconduct

JPMC has alleged that much of the conduct giving rise to the misappropriation claim occurred in Delaware.  JPMC is a Delaware corporation, Compl. ¶ 6, and "the core of [its] credit card business was and is conducted from Delaware," *id.* ¶ 7.  Verisk and the other defendants also are Delaware corporations, *id.* ¶¶ 8-9, 11, that (i) "sell their services and products in Delaware, to Delaware companies and citizens," *id.* ¶ 15, and (ii) misappropriated the commercially valuable

trade secrets of JPMC (including Delaware-based Chase Bank USA, N.A.), *id.* ¶¶ 7, 19-23. JPMC employees in Delaware assembled, prepared, and encrypted the Trade Secret Data, while taking reasonable measures in Delaware to protect this data. Compl. ¶¶ 34, 58, 95. Then Verisk's wholly owned subsidiary, Argus, misappropriated this data by sending benchmarking studies incorporating the misappropriated trade secrets "to other credit card issuers, including to **credit card issuers in Delaware**." *Id.* ¶ 49 (emphasis added). Verisk also "knew and authorized" this conduct targeting Delaware. *Id.* ¶ 48. In view of these allegations, Delaware law applies. *See J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 116423, at *2 (Del. Super. Ct. Oct. 21, 1988) (applying Delaware law to trade secret claim given that the underlying conduct occurred in Delaware and that injury was felt there).

Verisk relies on a single case holding that DUTSA does not apply where a plaintiff has "not cited **any** conduct that took place in Delaware," *Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch. 2020) (emphasis added), but this holding is irrelevant. As detailed above, JPMC has pled a litany of facts regarding conduct in Delaware.

Verisk emphasizes its own self-serving statement (absent from the Complaint) that its misappropriation occurred outside of Delaware. But this ignores that the place where the plaintiff "developed and held [its] trade secrets" is relevant to a misappropriation claim.[1] *See Focus Fin.*, 250 A.3d at 971. Here, that place is Delaware. JPMC's credit card arm has its main office in

---

[1] Although Verisk cites choice-of-law principles in a footnote (D.I. 34 at 12 n.6), Verisk neither identifies what state law aside from Delaware could apply to its misappropriation nor conducts a choice-of-law analysis. There is no need for the Court to conduct a choice-of-law analysis at this phase given the Complaint adequately alleges that the conduct underlying the DUTSA occurred, at least in part, in Delaware. *See Elkay Interior Sys. Int'l, Inc. v. Weiss*, 2022 WL 17961568, at *4 (D. Del. Dec. 27, 2022) (choice of law question can entail a fact-intensive inquiry that is often inappropriate on motion to dismiss); *Dow Chem. Co. v. Organik Kimya Holding A.S.*, 2018 WL 2382802, at *6 (Del. Ch. May 25, 2018) (holding same).

Delaware, Compl. ¶ 7, and JPMC has pled that the Trade Secret Data was developed in Delaware and sent from Delaware to Argus, *id*. ¶¶ 7, 34, and then materials incorporating these misappropriated trade secrets were sent back to Delaware and misappropriated in Delaware, *id*. ¶ 49.

JPMC's pleading of extensive conduct in Delaware—which the Court must accept as true at this phase—confirms the application of the DUTSA to Verisk's conduct.

### B.    The Complaint Sufficiently Alleges Misappropriation by Verisk

Verisk next contends that JPMC did not plead enough facts to implicate Verisk in either trade secret misappropriation count.  D.I. 34 at 12.  But JPMC pled detailed facts—including those raised in a whistleblower letter—regarding Verisk's misappropriation of JPMC's trade secrets. *See, e.g.*, Compl. ¶¶ 67-68 (detailing the allegations from the whistleblower letter), ¶¶ 100, 116.

Verisk incorrectly asserts that "[n]owhere in the body of the Complaint does JPMC allege how *Verisk* acquired, disclosed, or used" the Trade Secret Data.  D.I. 34 at 13.   JPMC specifically alleges that "Argus shared the Trade Secret Data with Verisk for use in Verisk's other businesses, and Verisk used the Trade Secret Data for its own commercial purposes."  Compl. ¶¶ 100, 116. And JPMC does not distance itself from the whistleblower letter, as Verisk suggests; rather, JPMC embraces it.  *Id.* ¶ 68 ("According to the whistleblower, Verisk's knowledge and involvement in this scheme was pervasive.").   Pleading a specific basis for JPMC's information and belief regarding Verisk's involvement—the whistleblower letter—strengthens, rather than weakens, the Complaint.  Verisk's attempts to discredit the whistleblower letter raise a factual dispute.  The Complaint's allegations, including the statements quoted from the whistleblower letter, suffice at the pleading stage; "detailed factual allegations" are not required.  *Iqbal*, 556 U.S. at 662, 678 (citation omitted); *see also FTC v. AbbVie Inc*, 976 F.3d 327, 351-59 (3d Cir. 2020) (holding

district court erred by dismissing plausibly alleged claims). The Complaint more than satisfies the low pleading bar.

Contrary to Verisk's argument, JPMC's allegations do not "lump together defendants" as was the case in *Ocimum Biosolutions (India) Ltd., Tr. of Ocimum Biosolutions Inc. v. LG Chem. Ltd.*, 2022 WL 3354708, at *13 (D. Del. July 31, 2022). The Complaint instead has specific allegations directed to each defendant, including Verisk.

The Complaint also has significantly more detail than in *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *8 (Del. Super. Ct. Aug. 7, 2019), where the plaintiff failed to plead any specific details suggesting how the defendant impermissibly used the trade secrets. Here, JPMC pleads "Verisk's management knew and authorized the ongoing misappropriation of the Trade Secret Data," Compl. ¶ 48, as well as the allegations from the Whistleblower Letter that "Verisk has encouraged and facilitated data sharing across its all [sic] subsidiaries," "ARGUS (banking) gathers all credit card data and share [sic] with Verisk [sic] other subsidiaries," and "Your data assets have become Verisk's . . . your data have been developed to various products and sold a number of their clients," *id*. ¶ 68.

This case also differs from *Labyrinth, Inc. v. Urich*, where the complaint lacked "specific details suggesting how [a defendant] impermissibly used or acquired the trade secret" and the court held that "[p]otential misuse does not establish actual misuse." 2024 WL 295996, at *30 (Del. Ch. Jan. 26, 2024) (citations omitted and alterations adopted); D.I. 34 at 13-14. Indeed, it "fail[ed] to plead [defendant] Completely Compliant ever acquired Labyrinth trade secrets." *Labyrinth*, 2024 WL 295996, at *30. The plaintiff instead relied on a "legal fiction to impute Stephen's tortious conduct to Completely Compliant," while "mak[ing] no effort to argue or explain why Stephen's conduct should be imputed to an entity he formed months after" he allegedly acquired the trade

8

secrets. *Id.* Here, JPMC does not rely on an agency theory, and the Complaint has specific details about how Argus acquired the Trade Secret Data and how—according to the whistleblower letter—Verisk forced Argus to share that information with Verisk. Compl. ¶¶ 48, 66-68. The Complaint also alleges Verisk used the Trade Secret Data for its commercial business. *Id.* ¶¶ 100, 105, 116, 121. These allegations are more than sufficient to allow JPMC to proceed with discovery.

Verisk next contends that JPMC needed to allege that it communicated its trade secrets to Verisk, and "the two came to an[] understanding concerning its secrecy." D.I. 34 at 14. But the DUTSA has no such requirements. The DUTSA broadly defines misappropriation to include acquisition of a trade secret by a person who "knows or has reason to know that the trade secret was acquired by improper means" and includes disclosure or use by a person who "[u]sed improper means to acquire knowledge of the trade secret." 6 *Del. C.* § 2001(2). JPMC pleads such acquisition by alleging that "Verisk knew that Argus was misappropriating the Trade Secret Data" that "Argus shared . . . with Verisk for use in Verisk's other businesses" and "Verisk used the Trade Secret Data for its own commercial purposes." Compl. ¶¶ 100, 116.

In *AgroFresh Inc. v. Essentiv LLC*, 2019 WL 9514551, at *2 (D. Del. Sept. 6, 2019)— when this Court considered this issue under identical language in Pennsylvania's UTSA—this Court rejected the precise argument Verisk makes, holding that "[t]he plain language of the statute does not require 'communication'" and therefore "declin[ing] to read a 'communication' requirement into the statute's definition of trade secret misappropriation" despite precedent identifying that as an element under pre-Pennsylvania UTSA law. *See also Accenture*, 581 F. Supp. 2d at 662 n.8 ("The 'communication' element provided in the caselaw is akin to pleading 'acquisition' of the trade secret in the context of the case at bar.") (citing 6 *Del. C.* § 2001(2)(a)).

Verisk claims that "scores of courts agree" the "communication element . . . is required." D.I. 34 at 14. But not one of the cases Verisk cites addressed the issue considered in *AgroFresh*. For example, in *Total Care Physicians, P.A. v. O'Hara*, 2002 WL 31667901, at *4 (Del. Super. Ct. Oct. 29, 2002), the court stated "the parties do not dispute that TCP 'communicated' the trade secrets—the super bills—to O'Hara by giving him unfettered access to them." The court in *Labyrinth*, 2024 WL 295996, at *31 & n.366, appears to follow *Accenture*'s guidance and equates acquisition with communication, stating, "The Consulting Agreement does not even establish that Harbor gave Stephen access to its trade secrets."

Verisk cites—and JPMC has found—no case holding that the plain language of the statute requires a communication from the plaintiff to the defendant. Nor has Verisk explained why this Court should not follow *AgroFresh*.

Finally, JPMC's allegations regarding Verisk's liability do not depend on piercing the corporate veil. While discovery may lead to information to later allege liability based on veil piercing, the Complaint plausibly alleges liability based on Verisk's direct culpability, including that "Verisk knew that Argus was misappropriating the Trade Secret Data" that "Argus shared . . . with Verisk for use in Verisk's other businesses" and "Verisk used the Trade Secret Data for its own commercial purposes." Compl. ¶¶ 100, 116. Verisk's corporate veil arguments are a red herring.

### C.    JPMC Has Adequately Pled Sufficient Legal Interest in the Trade Secret Data

The Trade Secret Data consists of an extensive data compilation about JPMC's credit card business, including monthly detailed individual account-level data and compiled portfolio-level data that aggregates categories of accounts. Compl. ¶ 18. JPMC plausibly pleads that it owns this data. *Id.* ¶ 22 ("As the Trade Secret Data is generated from the millions of credit cards JPMC has

issued to consumers across the United States and the consumers' usage of those cards, JPMC is the creator, compiler, and owner of the Trade Secret Data.").

Verisk challenges JPMC's ownership based on the government's Regulatory Contracts with Argus, to which JPMC was not a party. But Verisk's challenge is factual and cannot be entertained on a motion to dismiss. Verisk's alternative argument that the Regulators are the sole entity entitled to a remedy under the DUTSA misreads the statute and the binding and persuasive caselaw.

### 1.    JPMC Sufficiently Pleads It Owns the Trade Secret Data under the DTSA

The Complaint unequivocally alleges "JPMC is the creator, compiler, and owner of the Trade Secret Data." Compl. ¶ 22; *id*. ¶¶ 93, 110 ("JPMC owns the Trade Secret Data."). The Complaint further explains that the commercially valuable Trade Secret Data originated from JPMC and gives JPMC a significant competitive advantage. *Id*. ¶¶ 18-19. At this stage, this Court must accept JPMC's ownership allegations as true, and these allegations create, at minimum, a plausible inference that JPMC has either rightful legal or equitable title to the Trade Secret Data.

These ownership averments should end this inquiry. Verisk's argument that the Trade Secret Data belongs to the government merely creates a factual issues that the Court cannot resolve at this stage. *Flora v. County of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) ("The district court may not make findings of fact [when deciding a motion to dismiss] and, insofar as there is a factual dispute, the court may not resolve it."); *Houser v. Feldman,* 569 F. Supp. 3d 216, 229 (E.D. Pa. 2021) (denying motion to dismiss where defendant challenged whether plaintiff owned trade secrets because that was a factual dispute and "[c]onsideration of a motion to dismiss requires only a determination as to whether the factual allegations in a complaint state a plausible claim; it does

11

not require a determination as to what the facts actually are.").  Other courts considering trade secret ownership challenges at this early stage concur.  *See, e.g.*, *Parker v. Petrovics*, 2020 WL 3972761, at *7 (N.D. Ala. July 14, 2020) ("In ruling on a Rule 12(b)(6) motion, the court is not the finder-of-fact," and "at this stage, the court is not to resolve the parties' fact disputes about whether Plaintiff was the 'owner' of [the trade secrets].").

Even if the Court were to find that the Regulators share ownership rights, the DTSA broadly defines the term "owner" to mean "the person or entity in whom or in which **rightful legal or equitable title to**, or license in, the trade secret is reposed."  18 U.S.C. § 1839(4) (emphasis added).  While this Court has yet to define the meaning of "equitable title" under the DTSA, in discussing patents, it has held that "[e]quitable title may be defined as 'the beneficial interest of one person whom equity regards as the real owner, although the legal title is vested in another.'" *Hologic, Inc. v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118, 122 n.8 (D. Del. 2016) (citation omitted).  And "[m]ore than one person or entity may enforce a trade secret.  One party could hold legal title to a trade secret, while another may have equitable ownership of same. . . . Any of these could have standing to bring a claim under the DTSA." *Health Care Facilities Partners, LLC v. Diamond*, 2023 WL 3847289, at *7 (N.D. Ohio June 5, 2023).  Therefore, contrary to Verisk's argument, the DTSA does not prohibit co-ownership.  This provides further support for denying the motion.

## 2. The Regulatory Contracts Cannot Diminish JPMC's Ownership Claims under the DTSA

Verisk argues that "[u]nder the Government Contracts the Regulators are the 'sole' and 'exclusive' owners of the alleged misappropriated data."  D.I. 34 at 16.  Even if these contracts are

properly considered by this Court,[2] they fail to establish that JPMC does not own the Trade Secret Data.  The contracts say nothing about **JPMC's** property rights in its own data.  Nor could they limit JPMC's ownership rights in the Trade Secret Data because JPMC was not a party to those agreements.[3]  *See, e.g.*, *Arrowood Indem. Co. v. Hartford Fire Ins. Co.*, 774 F. Supp. 2d 636, 658 (D. Del. 2011) ("Delaware law provides that '[a]s a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions.'" (citation omitted)).  Verisk cites no case that creates a government exception to this "general rule" in Delaware, and it would violate the Fifth Amendment's takings clause to permit the government to unlawfully take private property via a contract with a third party.

Finally, the two cases Verisk cites in footnote 9, *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 419-20 (S.D.N.Y. 2021), and *Focused Impressions, Inc. v. Sourcing Grp.*, *LLC*, 2020 WL 1892062, at *4-5 (D. Mass. Apr. 16, 2020), are readily distinguishable.  In *Zabit*, the plaintiff admitted he "does not own any trade secret that [wa]s potentially at issue," and the complaint was "devoid of any facts even suggesting that Zabit ha[d] any sort of expectant interests giving rise to 'equitable title.'"  540 F. Supp. 2d at 420.  In *Focused Impressions*, the distributor plaintiff's complaint was full of allegations regarding who created the trade secrets that "make clear that even [the distributor plaintiff] believe[d] the information belong[ed] to [the distributor's clients]."  2020

---

[2] The Court need not even consider these contracts, which are not attached to the Complaint.  When considering a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted).  Because Argus's contracts with the Regulators were not attached to the Complaint and Verisk does not claim they are a matter of public record, the Court may not properly consider them.  Verisk argues that the contracts are "integral to or explicitly relied upon in 20 paragraphs of JPMC's Complaint."  D.I. 34 at 5 n.3 (internal quotation omitted).  But the Complaint's use of the contracts does not rise to the degree of reliance that would allow this Court to consider them at the Rule 12(b)(6) stage.

[3] Verisk was not a party to the contracts either.

WL 1892062, at *5.  Unlike in *Zabit* and *Focused Impressions*, JPMC alleges ownership of the Trade Secret Data, and the Complaint is full of facts supporting JPMC's ownership claim, including that JPMC created, maintained, and protected the Trade Secret Data.  Compl. ¶¶ 18-19, 22, 93, 110.

The Regulatory Contracts do not foreclose JPMC's trade secret misappropriation claims.

### 3.    Verisk's Argument that Only the Regulators Are Entitled to a Remedy under the DUTSA Fails

Verisk wrongly suggests that the government's possession of a remedy strips JPMC of its statutory rights to relief.  The law refutes Verisk's assumption that there can only be a single plaintiff for a given trade secret misappropriation.

To assert a claim under the Uniform Trade Secrets Act, "*possession*, as opposed to *ownership*, suffices."  *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 178 n.6 (3d Cir. 2020) (citing 4 Roger M. Milgrim & Eric E. Bensen, *Milgrim on Trade Secrets* § 15.01 (2020) (italics in original)).  Indeed, "lawful possession . . . can . . . be sufficient to maintain a misappropriation claim, even absent ownership."  *Id.* at 177; *see also BladeRoom Group Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017) (summarizing how courts around the country have ruled on this issue and concluding "[t]hey have 'generally come to the same conclusion: a party has standing to bring a trade secrets claim if it has *possession* of the trade secret'") (emphasis in original and citations omitted).  In *Advanced Fluid*, the Third Circuit explained the logic behind not focusing the inquiry on ownership: "[W]hile ownership . . . is sufficient to maintain a trade secret misappropriation claim . . . , it is not a necessary condition.  A per se ownership requirement for misappropriation claims is flawed since it takes account neither of the substantial interest that lawful possessors of the secrets have in the value of that secrecy, nor of the statutory language that

creates the protection for trade secrets while saying nothing of ownership as an element of a claim for misappropriation." 958 F.3d at 177 (citing *DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001) ("The proprietary aspect of a trade secret flows, not from the knowledge itself, but from its secrecy, because it is the secret aspect of the knowledge that provides value to the person having the knowledge.") (cleaned up)).

In *Macquarie Bank Ltd. v. Knickel*, 793 F.3d 926, 936-37 (8th Cir. 2015), on which Verisk relies, the party asserting misappropriation did not contest the district court's finding that it "did not own or have any interest in the trade secrets when the misappropriation occurred." JPMC pleads the opposite, and its allegations must be accepted as true.

Verisk also cites to *Dynax Corp. v. Chemguard, Inc.*, 2010 WL 11575496, at *8 (S.D.N.Y. Sept. 2, 2010), in footnote 10. But that case was decided under New York law, and New York is the only state that has not adopted the Uniform Trade Secrets Act and instead follows the common law Restatement of Torts. Putting aside the differences in law, unlike in this case, the court in *Dynax* made clear that "Chemguard . . . has not established ownership" even as an "arguable licensee" and "[t]he Court's holding on this issue is limited in scope and does not affect the rights of assignees or those victimized by theft, computer hacking, or other similar illegal methods of obtaining trade secrets." *Id.* at *9 n.7. JPMC pleads it was victimized by Verisk's theft and use of illegal methods to obtain the Trade Secret Data, so *Dynax* clearly does not apply.

Finally, any argument that Argus has already settled with the Regulators, so JPMC cannot recover, is unfounded. JPMC attached as Exhibit A to its Complaint, D.I. 1-1, the Settlement Agreement between Argus and the United States. In Paragraph 2 on page 3, the Settlement Agreement makes clear that the United States has settled claims with Argus relating to the False Claims Act, the Program Fraud Civil Remedies Act, the Financial Institutions Reform, Recovery,

and Enforcement Act, the Store Communications Act, and common law theories of breach of contract, fraud, payment by mistake and unjust enrichment.[4]  The Settlement Agreement lacks any reference to settlement of any potential claim by JPMC, let alone any trade secret misappropriation claims.

### D.    Verisk's Challenges to JPMC's Reasonable Measures Cannot be Decided at this Early Stage

Contrary to Verisk's claims, JPMC adequately pleads reasonable measures to protect its trade secrets.  *See* Compl. ¶¶ 25-29, 95 (averring JPMC does not sell the Trade Secret Data and maintains numerous internal safeguards).  JPMC further pleads that it reasonably relied on its understanding that the Regulators would protect the trade secrets as "Confidential Supervisory Information," Compl. ¶ 27, assurances from the OCC that "the Trade Secret Data it provided to Argus would remain confidential," *id.* ¶ 36, and exemptions from the Freedom of Information Act, *id.* ¶ 57; *see also* 5 U.S.C. § 552(b)(4) (shielding "trade secrets" from disclosure).  "[T]he facts alleged support an inference that access was limited such that it would be difficult to acquire such trade secrets.  An assessment beyond this level of detail is the job of the factfinder."  *Houser*, 569 F. Supp. 3d at 230; *see also Advanced Fluid Sys.,* 958 F.3d at 179-80 (affirming finding at summary judgment that trade secrets were reasonably protected even where plaintiff shared them with public entity without formal nondisclosure agreement).

---

[4] Verisk would be wrong to argue that unjust enrichment necessarily covers trade secret misappropriation.  The government frequently pleads tagalong claims in the form of payment by mistake and unjust enrichment in a False Claims Act suit.  *See, e.g.*, *United States ex rel. Radhakrishnan v. Gampel*, 2024 WL 894671, at *4 (D. Ariz. Mar. 1, 2024) ("Both a payment by mistake and an unjust enrichment claim are available to the United States and are not necessarily derivative of False Claims Act claims." (citation omitted)).  Nothing in the Settlement Agreement indicates the government asserted a trade secret misappropriation claim or recovered for misappropriation of JPMC's trade secrets.  Certainly at the motion to dismiss stage, Verisk cannot demonstrate that the government's recovery was duplicative of the relief sought by JPMC.

Verisk disputes whether JPMC acted reasonably and in a way that made these safeguards ineffective, D.I. 34 at 18, but the Court cannot resolve this factual dispute on a motion to dismiss. *Iqbal*, 556 U.S. at 678.

The cases on which Verisk relies do not suggest otherwise.  In *Rodney v. United Masters*, 2023 WL 2184865, at *5 (E.D.N.Y. Feb. 10, 2023), a *pro se* plaintiff failed to plead reasonable measures when he alleged trade secret misappropriation by an unnamed individual who the plaintiff connected with on LinkedIn and then spoke with over the phone.  During that call the plaintiff claimed to have disclosed the trade secrets to the unnamed individual without obtaining any nondisclosure agreement or other protection.  Here, JPMC did not share its Trade Secret Data with a random and unnamed entity it found on the internet; JPMC shared the Trade Secret Data only with Argus (a company JPMC was already in business with)—at the Regulators' direction— and only after relying on FOIA regulations as well as OCC assurances.  Compl. ¶¶ 27, 36, 57.

*Pie Dev., LLC v. Pie Ins. Holdings*, 2021 WL 3206043, at *7 (S.D. Miss. July 21, 2021), supports JPMC because the court there recognized "telling the trade secret information to a small number of people, waiting to confirm that a confidentiality agreement or non-disclosure agreement is in place before disclosing the trade secret, and withholding the trade secret from the majority of the plaintiff company employees until it is ready to launch are all evidence" indicating reasonable measures.  The *Pie* plaintiff failed because it only relied on a non-disclosure agreement to which it was not a party and "took no further steps to protect its alleged trade secret." *Id.*  Verisk admits that JPMC pleads it took further steps to protect the Trade Secret Data.  D.I. 34 at 18.  Under *Pie*'s rationale, the Complaint is sufficient.

In *Wayman Fire Prot. v. Premium Fire & Sec., LLC*, 2014 WL 897223, at *16 (Del. Ch. Mar. 5, 2014), the Chancery Court found protection efforts unreasonable following a bench trial,

when the Court was free to weigh the facts and did not need to make any inference in the plaintiff's favor; here at this motion to dismiss stage the Court must draw all plausible inferences in JPMC's favor. *See also Oakwood Lab'ys*, 999 F.3d at 904.

Finally, in *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2022 WL 701161, at \*2-3 (2d Cir. Mar. 9, 2022), the Second Circuit affirmed dismissal where the alleged trade secrets consisted of "functionality that is made apparent to all users of the [software] program," and the many third-party users of the program were not required to keep the functionality confidential or limit distribution. That situation is not factually analogous to this one, where the issue of whether JPMC acted reasonably in relying on governmental assurances that its vendor Argus would not misappropriate the Trade Secret Data is a factual question.

### E.  Neither the DTSA nor the DUTSA Requires JPMC to Plead a Duty Owed by Verisk to JPMC or its Breach

Contrary to Verisk's assertion, JPMC does not base its allegations of misappropriation under the DTSA and the DUTSA on duties owed to JPMC. In requesting dismissal on this basis, Verisk is improperly seeking to narrow the definition of "misappropriation" under the DUTSA and DTSA.

Both statutes define misappropriation to include an unauthorized "use of a trade secret" that the defendant "knew or had reason to know" was "[a]cquired under circumstances giving rise to a duty to maintain" the secrecy or limit the use. 18 U.S.C. § 1839(5)(B)(ii)(II); 6 *Del. C.* § 2001(2)(b)(2)(B). The Complaint adequately pleads, *inter alia*, that Verisk knew or had reason to know that the Trade Secret Data it forced Argus to share and then used in its own business was acquired under circumstances giving rise to the duty to limit the use. *E.g.*, Compl. ¶¶ 48 ("after Verisk acquired Argus, Verisk's management knew and authorized the ongoing misappropriation of the Trade Secret Data"), 100, and 116 ("Argus shared the Trade Secret Data with Verisk for use

in Verisk's other businesses, and Verisk used the Trade Secret Data for its own commercial purposes. On information and belief, Verisk knew that Argus was misappropriating the Trade Secret Data.")

While JPMC also pleads that all defendants breached their duty to maintain secrecy, Compl. ¶¶ 99, 115, Verisk ignores that these allegations relate to why the misappropriation was both willful and malicious, entitling JPMC to exemplary damages. JPMC has more than adequately pled misappropriation by Verisk under both state and federal law.

**F.    Amendment Is Not Necessary, but if the Court Grants Any Portion of the Motion, It Should Do So Without Prejudice**

Finally, Verisk asks the Court to not only grant its motion to dismiss but to do so with prejudice. "The court should freely give leave [to amend] when justice so requires." *Scott v. Vantage Corp.*, 336 F. Supp. 3d 366, 371 (D. Del. 2018) (citing Fed. R. Civ. P. 15(a)(2)). Here, to the extent the Court believes the pleadings are lacking, it should provide JPMC with an opportunity to amend its Complaint.

Verisk argues that JPMC "conceded futility at the pre-motion conference." D.I. 34 at 20. Not so. JPMC expressed confidence that its Complaint could withstand a motion to dismiss based on the arguments Defendants summarized in their three-page letters to the Court and without the benefit of the Court's input. Defendants have now each submitted 20 pages of briefing, and should the Court grant any portion of either Motion, JPMC submits that it should do so without prejudice with leave to amend so that JPMC may correct any pleading deficiencies the Court identifies. *See generally In re PMTS Liquidating Corp.*, 490 B.R. 174, 186 (D. Del. 2013) (granting leave to amend complaint).

## VII.    CONCLUSION

Verisk takes many issues with the facts as pled, but the Court cannot resolve these factual challenges on a motion to dismiss.  And Verisk's remaining arguments rely on a misreading of the law.  For the foregoing reasons, JPMC respectfully requests the Court deny Verisk's motion to dismiss.

Dated: September 20, 2024                MORGAN, LEWIS & BOCKIUS LLP

*/s/ Jody C. Barillare*
Amy M. Dudash (#5741)
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-3000
amy.dudash@morganlewis.com
jody.barillare@morganlewis.com

Julie S. Goldemberg (*pro hac vice*)
Phillip D. Wolfe (*pro hac vice*)
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
julie.goldemberg@morganlewis.com
phillip.wolfe@morganlewis.com

Michael J. Abernathy (*pro hac vice*)
Maria E. Doukas (*pro hac vice*)
110 N. Wacker Drive, Suite 2800
Chicago, IL 60601-5094
(312) 324-1000
michael.abernathy@morganlewis.com
maria.doukas@morganlewis.com

*Counsel for Plaintiff JPMorgan Chase Bank, National Association*