## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:24-cv-348-SB |
| | ) | |
| ARGUS INFORMATION & ADVISORY SERVICES INC., VERISK ANALYTICS, INC. and TRANS UNION LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT VERISK ANALYTICS, INC.'S REPLY BRIEF
### IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

OF COUNSEL:

William A. Burck
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
williamburck@quinnemanuel.com

Viola Trebicka
Alexandre J. Tschumi
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000
violatrebicka@quinnemanuel.com
alextschumi@quinnemanuel.com

DATED: October 1, 2024

Michael A. Barlow (#3928)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com

*Counsel for Defendant Verisk Analytics, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................1

II.    ARGUMENT........................................................................................................1

        A.    JPMC Fails To State A DUTSA Claim Because The Law Lacks
              Extraterritorial Effect ..............................................................................................1

        B.    JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not
              Sufficiently Allege Misappropriation *By Verisk*.......................................................2

              1.    JPMC Makes No Well-Pleaded Allegations Of Misappropriation
                      By Verisk .......................................................................................................2

              2.    JPMC Concedes That Regulatory Data Was Not Communicated
                      By JPMC To Verisk And That No Understanding Existed Between
                      Them .............................................................................................................4

        C.    JPMC Lacks Statutory Standing To Assert DTSA Or DUTSA Claims ..................5

              1.    JPMC Has No DTSA Standing Because It Cannot Allege It Owned
                      The Data That Argus Received .....................................................................5

               2.    JPMC Has No DUTSA Standing Because *The Regulators* Are The
                      Ones From Whom Misappropriation Allegedly Occurred .........................7

        D.    JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not
               Allege Reasonable Measures To Keep The Regulatory Data Secret.......................8

        E.    JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not
               Allege A Duty Owed By Verisk To JPMC Or Its Breach ....................................9

        F.    Amendment Would Be Futile And Inequitable Here ..........................................10

III.    CONCLUSION.................................................................................................10

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*10x Genomics, Inc. v. Vizgen, Inc.*,
   681 F. Supp. 3d 252 (D. Del. 2023)..................................................................................6

*AlixPartners, LLP v. Mori*,
   2022 WL 1111404 (Del. Ch. Apr. 14, 2022) ....................................................................1

*Arrowood Indem. Co. v. Hartford Fire Ins. Co.*,
   774 F. Supp. 2d 636 (D. Del. 2011)..................................................................................6

*Brightstar Corp. v. PCS Wireless, LLC*,
   2019 WL 3714917 (Del. Super. Aug. 7, 2019)..................................................................4

*Connelly v. Lane Constr. Corp.*,
   809 F.3d 780 (3d Cir. 2016)..............................................................................................3

*Dow Chem. Canada Inc. v. HRD Corp.*,
   909 F. Supp. 2d 340 (D. Del. 2012)..................................................................................5

*Elenza, Inc. v. Alcon Laby's Holding Corp.*,
   183 A.3d 717 (Del. 2018) .................................................................................................5

*Focus Fin. Partners, LLC v. Holsopple*,
   250 A.3d 939 (Del. Ch. 2020)...........................................................................................1

*GEICO v. Nealey*,
   262 F. Supp. 3d 153 (E.D. Pa. 2017) .............................................................................8, 9

*Mason v. Amtrust Fin. Servs., Inc.*,
   848 F. App'x 447 (2d Cir. 2021) .......................................................................................9

*Mayfair Wireless LLC v. Celico P'ship*,
   2013 WL 4657507 (D. Del. Aug. 30, 2013) .....................................................................7

*Pie Dev., LLC v. Pie Ins. Holdings*,
   2021 WL 3206043 (S.D. Miss. July 21, 2021), *aff'd* 2023 WL 2707184 (5th
   Cir. Mar. 30, 2023) ...........................................................................................................9

*In re PMTS Liquidating Corp.*,
   490 B.R. 174 (D. Del. 2013).............................................................................................10

*Rodney v. United Masters*,
   2023 WL 2184865 (E.D.N.Y. Feb. 10, 2023)...................................................................9

*Total Care Physicians, P.A. v. O'Hara*,
  2002 WL 31667901 (Del. Super. 2002)..................................................................................4

*Turret Labs USA, Inc. v. CargoSpring, LLC*,
  2022 WL 701161 (2d Cir. Mar. 9, 2022).................................................................................9

*United States ex rel. O'Bier v. TidalHealth Nanticoke, Inc.*, 2021 WL 1895049 (D.
  Del. May 11, 2021) ................................................................................................................10

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,
  752 A.2d 1175 (Del. Ch. 1999)..............................................................................................3

*Wayman Fire Prot. v. Premium Fire & Sec., LLC*,
  2014 WL 897223 (Del. Ch. Mar. 5, 2014)..............................................................................9

*Zabit v. Brandometry, LLC*,
  540 F. Supp. 3d 412 (S.D.N.Y. 2021).....................................................................................7

## Statutes & Regulations

6 *Del. C.* § 2001(2) ...................................................................................................................3

12 C.F.R. §§ 4.32(b)(1)-(2)........................................................................................................6

12 C.F.R. § 261.20......................................................................................................................6

18 U.S.C. § 1836(b)(1) ..............................................................................................................5

18 U.S.C. § 1836(b)(4) ..............................................................................................................5

18 U.S.C. § 1839(5) ...................................................................................................................3

## Other Authorities

Uniform Trade Secrets Act §§ 2 & 3 cmt. (2005) ......................................................................7

## I.    INTRODUCTION

In an attempt to escape the inescapable, JPMC argues that Verisk's motion to dismiss is based on disputed facts. That is incorrect: Verisk's arguments are based on JPMC's *own* pleadings, which substitute contradictory and implausible facts and threadbare recitals for factual substance. The law is what it is, and this Court can properly hold that JPMC's allegations fail to state a claim. JPMC's arguments to the contrary do not convince.

## II.    ARGUMENT

### A.    JPMC Fails To State A DUTSA Claim Because The Law Lacks Extraterritorial Effect

JPMC fails to plead that Verisk (or any Defendant) conducted any relevant actions within Delaware's state lines. Because the DUTSA lacks extraterritorial effect, JPMC's DUTSA claim should be dismissed. *Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch. 2020).

JPMC cites a "litany" of places where the word "Delaware" appears in its Complaint, D.I. 47 ("JPMC Br.") 5-6,[1] but none go to the actions that courts assign the "greatest weight"—"where the [defendants' alleged] misappropriation occurred." *Focus*, 250 A.3d at 970; *see also* Restatement (Second) of Conflict of Laws § 145 cmt.f ("[T]he principal location of the defendant's conduct . . . will usually be given the greatest weight in determining" which state's trade secret misappropriation law applies); *AlixPartners, LLP v. Mori*, 2022 WL 1111404, at *18 (Del. Ch. Apr. 14, 2022) (contacts with Delaware "did not overcome the presumption against DUTSA's extraterritoriality" where defendant's conduct occurred in Italy). At best, JPMC pleads that *Argus*—with someone at Verisk's "kn[o]w[ledge] and authoriz[ation]"—sent some information referencing JPMC's alleged trade secrets to someone in Delaware. JPMC Br. 6 (citing Compl. ¶¶

---

[1] JPMC identifies allegations that the parties are incorporated in Delaware, that JPMC has credit card operations in Delaware, and that JPMC assembled and protected its alleged trade secrets in Delaware. JPMC Br. 5-6 (citing D.I. 1 ("Compl.") ¶¶ 6-9, 11 & 19-23).

48-49).  JPMC does not plead that Argus sent *from* Delaware or that Verisk knew and authorized

from Delaware.  In fact, JPMC pleads specifically that their operations are *outside* of Delaware.

Compl. ¶¶ 8-9.  Accordingly, JPMC cannot sustain a DUTSA claim.[2]

### B.     JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not Sufficiently Allege Misappropriation *By Verisk*

#### 1.     JPMC Makes No Well-Pleaded Allegations Of Misappropriation By Verisk

JPMC falls far short of alleging that Verisk misappropriated its trade secrets, either under

the DTSA or the DUTSA. JPMC concedes that the "key facts underlying JPMC's claims" *all* relate

to actions by *Argus*, not by *Verisk*.  JPMC Br. 1.  It then highlights four allegations about Verisk:

> (i) as Argus' parent corporation, "Verisk's management knew and authorized Argus's wrongdoing underlying the claims," [Compl.] ¶¶ 43-48; (ii) "Verisk w[as] improperly disclosing JPMC credit card data to other Verisk subsidiaries," *id.* ¶ 67; (iii) Verisk was behind the illicit sharing of JPMC trade secret data "encourage[ing] [*sic*] and facilitate[ing] [*sic*] data sharing across its . . . subsidiaries" to boost its bottom line, *id.* ¶ 68; and (iv) "Verisk used the Trade Secret Data for its own commercial purposes," *id.* ¶ 100; *see also id.* ¶¶ 98, 104.

JPMC Br. 1.[3]

JPMC's allegations (i) and (iii) are immaterial because JPMC's answering brief expressly

disclaims imputation or agency theories of Verisk's liability.  *See* JPMC Br. 9 ("JPMC does not

rely on an agency theory . . . ."); *id.* at 10 ("JPMC's allegations regarding Verisk's liability do not

---

[2]  When a plaintiff chooses a specific law, the Court must determine on the pleadings whether it applies. *Elkay Interior Sys. Int'l, Inc.  v. Weiss*, cited by JPMC, is illustrative.  There, plaintiff pleaded a claim under the DUTSA, which did not apply to defendant's extraterritorial conduct. 2022 WL 17961568, at *4 (D. Del. Dec. 27, 2022).  That plaintiff could have stated a claim under a different law did not matter; its claims had to be dismissed to "fix the problem with the reference to DUTSA."  *Id.*

[3]  JPMC's answering brief also wrongly argues that "Verisk and Argus have already admitted wrongdoing—to the tune of a $37 million settlement payment" to the DOJ.  JPMC Br. 1-2. Verisk was not even a party to that settlement, *see* D.I. 1-1, which resolved claims against *Argus* (with no admission of wrongdoing).  After conducting a thorough investigation, the DOJ *never* alleged that Verisk misused the Regulatory Data or knew of Argus's potential misuse.

depend on piercing the corporate veil."). In any event, allegations of Verisk's "kn[o]w[ledge]," "authoriz[ation]," and "encourage[ment]" of purported conduct by Argus (or Verisk subsidiaries) do not plead misappropriation by *Verisk* under the DTSA or DUTSA because both require *Verisk's* own knowing improper acquisition, use, or disclosure. *See* 18 U.S.C. § 1839(5); 6 *Del. C.* § 2001(2). At best, JPMC pleads misappropriation by Argus and (conclusorily) that it shared data with *other* entities that JPMC has not sued. Compl. ¶ 68 ("ARGUS (banking) gathers all credit card data and share [sic] with Verisk [sic] other subsidiaries."). Absent veil piercing, Verisk cannot be liable for any of their purported torts. *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999) (dismissing claim against parent for lack of "sufficient facts that if true would justify disregarding the corporate form").

JPMC's allegations (ii) and (iv) fare no better. Courts routinely disregard similar recitations of elements and legal conclusions. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789-90 (3d Cir. 2016) (deeming them "disentitled to any presumption of truth"). Moreover, these conclusory facts alleged "on information and belief" are speculative (and implausible) in light of JPMC's concrete allegation that it knows of *no* "Verisk businesses" that "accessed and misused" JPMC's Trade Secret Data and *no* "products and services Verisk . . . developed and sold in connection with Argus'[s]" misappropriation. Compl. ¶ 87. JPMC nowhere addresses this fatal concession, which was a key argument in Verisk's opening brief. D.I. 34 ("Verisk Br.") at 1, 3, 10 & 13.

JPMC's answering brief leans heavily on an anonymous letter that JPMC is now forced to admit forms the only "specific basis" for its "information and belief regarding Verisk's involvement." JPMC Br. 7. But that letter does not relate to Regulatory Data or data under Government Contracts and, at best, alleges misappropriation by Argus and non-Defendant subsidiaries, yet another point Verisk made in its opening brief (Verisk Br. 9) that JPMC does not dispute. Rather, it asserts that Verisk merely encouraged "data sharing" *among its subsidiaries*,

3

and that *Argus* shared credit card data "with Verisk [*sic*] *other subsidiaries*."  Compl. ¶ 68 (emphasis added).  Even these anonymous allegations bring JPMC's arguments right back to a theory of liability for the acts of Verisk's subsidiaries, which JPMC expressly disavowed.

JPMC fails to distinguish the key finding in *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917 (Del. Super. Aug. 7, 2019).  The point is that JPMC's Complaint is "devoid of any specific details suggesting how [Verisk] impermissibly used the [purported trade secret]" other than conclusory allegations like "[Verisk] misappropriated [plaintiff's purported trade secret] and used it [as part of its] business."  *Id.* at *8.  JPMC's explanation of Verisk's purported misappropriation is nothing more than speculation that "Verisk used the Trade Secret Data for its own commercial purposes," JPMC Br. 1 (quoting Compl. ¶ 100)), which is just as conclusory as those disregarded in *Brightstar*. And again, JPMC has conceded that it does not know of *any* "Verisk businesses" that misappropriated its Trade Secret Data or products that Verisk developed and sold in connection with Argus's alleged misappropriation. Compl. ¶ 87.[4]

### 2. JPMC Concedes That Regulatory Data Was Not Communicated By JPMC To Verisk And That No Understanding Existed Between Them

Delaware law requires JPMC to plead and prove that its trade secret was "communicated by the *plaintiff* to the *defendant*," pursuant to an "understanding" between them "that the secrecy of the matter would be respected."  Verisk Br. 14 & n.7 (citing 14 of many cases).  Instead of applying these "well-settled" elements of Delaware law, *Total Care Physicians, P.A. v. O'Hara*,

---

[4]   JPMC similarly fails to distinguish *Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.* and *Labyrinth, Inc. v. Urich*.  JPMC's claim that it did not "lump together defendants" is responsive to Argus and TransUnion's citation of *Ocimum*, D.I. 32 at 19, but not Verisk's, Verisk Br. 13 (citing 2022 WL 3354708, at *13 (D. Del. July 31, 2022) (dismissing DTSA and DUTSA claims where they "do[] not sufficiently allege how [defendant] used the alleged trade secrets")).  And JPMC's allegation that "Verisk used the Trade Secret Data for its commercial business," JPMC Br. 9, is no less conclusory than the *Laybrinth* plaintiff's allegation that the defendant "will inevitably use and/or disclose the Plaintiff's Trade Secrets."  2024 WL 295996, at *30 (Del. Ch. Jan. 26, 2024).

2002 WL 31667901, at *4 (Del. Super. 2002), JPMC asks this Court to follow a single federal

district court's interpretation of *Pennsylvania* law. *AgroFresh Inc. v. Essentiv LLC* is

distinguishable and, in any event, provides no good reason to ignore *Delaware* law.  That Court

elected not to follow a handful of *federal* courts' mistaken reliance on a Pennsylvania common

law "communication" element that *predated* Pennsylvania's 2004 UTSA enactment.  2019 WL

9514551, at *2 (D. Del. Sept. 6, 2019).  Here, in the *42 years* since Delaware's UTSA was enacted,

scores of federal *and state* courts have interpreted the DUTSA to entail elements of

"communicat[ion] by the plaintiff to the defendant" and their mutual "understanding" concerning

secrecy.  Verisk Br. 14 & n.7 (citing 14 of many cases).  That includes the Supreme Court of

Delaware, as recently as 2018, and numerous courts that have dismissed claims for failure to plead

or prove these elements (or declined dismissal where these elements were pleaded or proven).[5]

As a last-ditch effort, JPMC claims "communication" really means "acquisition." JPMC

Br. 9-10. Changing one word does not solve JPMC's pleading deficiency. JPMC loses whether

Delaware law requires that the trade secret was communicated by JPMC to Verisk or acquired by

Verisk from JPMC.

### C.    JPMC Lacks Statutory Standing To Assert DTSA Or DUTSA Claims
#### 1.    JPMC Has No DTSA Standing Because It Cannot Allege It Owned The Data That Argus Received

JPMC is not "[a]n owner of a trade secret that is misappropriated" within the meaning of

the DTSA. 18 U.S.C. §§ 1836(b)(1), (4).  The very regulations that JPMC purportedly relied upon

before handing over its purported trade secret provide that the Regulatory Data belongs to the

---

[5]    *E.g.*, *Elenza, Inc. v. Alcon Laby's Holding Corp.*, 183 A.3d 717, 721 (Del. 2018) (DUTSA plaintiff "must demonstrate that . . . [it] communicated the secret to the defendant [and] there was an express or implied understanding that the secrecy of the matter would be respected . . . ."); *Dow Chem. Canada Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 349 (D. Del. 2012) ("Because HRD has failed to show that it communicated any trade secrets to Dow, HRD's [DUTSA] claim . . . fails.").

Regulators. *See* 12 C.F.R. § 261.20 ("All confidential supervisory information . . . remains the property of the Board."); *id.* §§ 4.32(b)(1)-(2) ("Non-public OCC information [including] Confidential OCC information obtained by a third party or otherwise incorporated in the records of a third party [and] Confidential information relating to . . . banks . . . [i]s the property of the Comptroller.").[6]  So do the Government Contracts under which Argus received the Regulatory Data.  The Regulators had "sole" and "exclusive" ownership of the allegedly misappropriated data (and all deliverables).  Verisk Br. 5.[7]  Even if JPMC's Complaint pleads that JPMC *once* owned the Regulatory Data, it was the Regulators' property when Argus received it pursuant to the Government Contracts.[8]  Contrary to JPMC's arguments, this is a purely legal—not factual—issue.

Even if the Regulators had legal title to the Regulatory Data, JPMC claims it had "equitable title."  JPMC Br. 12.  In the DTSA context, "equitable title" is a "title that indicates a beneficial

---

[6]  JPMC expressly pleads that its trade secret *is* "Confidential Supervisory Information." Compl. ¶ 27.  Thus, it belongs to the Regulators.  The OCC and Federal Reserve memorandum that JPMC offers merely reiterates JPMC's non-ownership at length.  *See* D.I. 46-1 at 14 ("The Board's regulations provide that, even in the hands of a regulated financial institution, . . . CSI 'remain the property of the board' . . . .  Similarly, the OCC's regulations provide that non-public OCC information "[i]s the property of the Comptroller' . . . .").

[7]  JPMC does not seriously contest that the Court should consider the Government Contracts or that it explicitly relies upon them in 20 paragraphs of its Complaint.  Without citation, it incorrectly claims that such extensive "use of the contracts does not give rise to the degree of reliance that would allow this Court to consider them."  JPMC. Br. 13 n.2.

[8]  JPMC claims the Government Contracts "say nothing about JPMC's property rights."  JPMC Br. 13.  Not so.  All four explicitly state that the Regulators *solely* own *all* data collected from participating banks like JPMC.  Verisk Br. 5.  JPMC also asserts that the Government Contracts cannot "limit JPMC's ownership rights in the Trade Secret Data because JPMC was not a party" to them.  JPMC Br. 13.  First, the Government Contracts reiterated what the Regulators' regulations also effectuated.  Second, JPMC's cited case stands only for the proposition that *JPMC* cannot enforce the Government Contracts, not that they cannot bear on Regulatory Data ownership.  *Arrowood Indem. Co. v. Hartford Fire Ins. Co.*, 774 F. Supp. 2d 636, 658 (D. Del. 2011) (only parties and intended beneficiaries to a contract may enforce it); *see also 10x Genomics, Inc. v. Vizgen, Inc.*, 681 F. Supp. 3d 252, 264 (D. Del. 2023) ("[P]rinciples of contract law and limitations on private rights of action both counsel against granting third-party enforcement rights when those rights would overlap with the enforcement rights of the government . . . .").

interest in property and that gives the holder the right to acquire formal title," *i.e.*, an "expectant interest" like an invention assignment or reversionary interest. *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 420 (S.D.N.Y. 2021) (quoting *Equitable Title*, Black's Law Dictionary (11th ed. 2019); *cf. Mayfair Wireless LLC v. Celico P'ship*, 2013 WL 4657507, at *3 (D. Del. Aug. 30, 2013) ("An assignment of rights in an invention made prior to the existence of the invention is an assignment of an expectant interest, and the assignee holds equitable title."). But JPMC had no right to acquire formal title *back* from the Regulators once it relinquished the Regulatory Data.

**2.      JPMC Has No DUTSA Standing Because *The Regulators* Are The Ones From Whom Misappropriation Allegedly Occurred**

JPMC may not bring a DUTSA claim because, by its pleadings, it is not the party from whom misappropriation occurred. Here, JPMC attacks a straw man. JPMC Br. 14-15. Verisk never claimed that only ownership (and not possession) could furnish DUTSA standing. Unlike the DTSA, the DUTSA does not expressly require ownership of an underlying trade secret and, as JPMC points out, some courts have found possession sufficient. But that is beside the point. As Verisk explained in its brief, where two parties (like JPMC and the Regulators) might have cognizable interests in a trade secret under a UTSA, *only* the party from whom misappropriation occurred is entitled to a remedy. Uniform Trade Secrets Act §§ 2 & 3 cmt. (2005) ("[If] more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy."). Here, that would be the Regulators, not JPMC, *even if* JPMC held a possessory or ownership interest in Regulatory Data.

In attempting to (unsuccessfully) distinguish *Macquarie Bank Ltd. v. Knickel*, JPMC fails to address the Eighth Circuit's holding and logic. It is irrelevant that the party asserting misappropriation there "did not contest the district court's finding that it 'did not own or have any interest in the trade secrets when the misappropriation occurred.'" JPMC Br. 15 (quoting

7

793 F.3d 926, 936 (8th Cir. 2015)).  The court "decline[d]" to affirm on that basis, 793 F.3d at

936, affirming on a *different* one that is analogous in all material respects and on which Verisk

relied.  Verisk Br. 16-17.  Like JPMC, Lexar had provided a purported trade secret to nonparties,

who then granted another recipient permission to use it only "for certain purposes."  793 F.3d at

936.  Like JPMC, Lexar was not a party to that agreement.  *Id.* at 930.  Like JPMC alleges, the

recipient "used and disclosed the trade secrets in a way that exceeded the scope of . . . consent

[under the agreement]."  *Id.* at 936.  Because "[t]he misappropriation occurred only from [the non-

parties], not Lexar," Lexar had no claim as a matter of law.  *Id.* at 937.  Same for JPMC.

> **D.**      **JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not Allege Reasonable Measures To Keep The Regulatory Data Secret**

JPMC does not contest that it failed to obtain *any* contractual protections from Argus (let

alone Verisk) before sharing its supposed trade secrets.  JPMC Br. 18-19.  JPMC does not contest

that its pleaded *internal* safeguards did not plausibly offer protection (let alone reasonable

protection) *externally*.  *Id.*  JPMC also does not contest that its pleaded safeguards were *instantly*

ineffective when JPMC transferred its alleged trade secret externally, along with passwords and

encryption keys, to a third party that owed JPMC no secrecy obligations.  *Id.*; *see GEICO v. Nealey*,

262 F. Supp. 3d 153, 167 (E.D. Pa. 2017) ("[J]ust because GEICO generally protects its claims

data and computer operating system in day-to-day affairs does not mean GEICO took 'reasonable

measures' in this case.").  Instead, JPMC purportedly relied on regulations that, in reality, negated

its property rights in the Regulatory Data and were not binding on the Defendants.  *See supra* Part

II.C.  Merely stating JPMC's position is sufficient to refute it.

JPMC's assertion that the reasonableness of its safeguards is a question of fact that cannot

be resolved on a motion to dismiss "mistake[s] the forest for the trees."  *GEICO*, 262 F. Supp. 3d

at 167.  "While it may be true that courts often do not resolve this issue at the pleadings stage, this

does not mean it is improper to do so in certain circumstances—or that it is never done." *Id.*; *see also Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 451 (2d Cir. 2021) (affirming dismissal where "none of [plaintiff's] measures would reasonably protect the confidentiality of [the alleged trade secret]"). On its face, JPMC's Complaint evinces the unreasonableness of JPMC's safeguards. "Up to a certain point, it is true that [JPMC] took reasonable measures to protect the secrecy of its alleged trade secrets," but "[t]hese facts . . . are rendered moot in light of [JPMC's] acts and omissions with respect to the specific facts of this case." *GEICO*, 262 F. Supp. 3d at 168.[9]

### E.    JPMC Fails To State A DTSA Or DUTSA Claim Because It Does Not Allege A Duty Owed By Verisk To JPMC Or Its Breach

JPMC concedes that it was owed no duties of secrecy or confidentiality *at all*. JPMC Br. 18 ("JPMC does not base its allegations of misappropriation . . . on duties owed to JPMC."). And JPMC does not dispute that it alleges no more than duties "flow[ing] only from Argus to the Regulators." Verisk Br. 19. Logically, JPMC cannot sue Verisk (or any Defendant) where the alleged misappropriation concededly violated duties owing only to other parties.

JPMC claims that a requirement that the secrecy duty be owed to a trade secret plaintiff would "improperly . . . narrow" the Acts' definitions of misappropriation. JPMC Br. 18. But that

---

[9] JPMC fails to distinguish *Turret Labs*, *Rodney*, *Pie Dev.*, and *Wayman Fire*, each of which confirm unreasonableness can be found on the pleadings, based on the nature of the information at issue. *Turret Labs USA, Inc. v. CargoSpring, LLC*, 2022 WL 701161 (2d Cir. Mar. 9, 2022) (affirming dismissal based on "reasonableness analysis" around software, which "focus[ed] on who is given access, and on the importance of confidentiality and nondisclosure agreements to maintaining secrecy"); *Rodney v. United Masters*, 2023 WL 2184865 (E.D.N.Y. Feb. 10, 2023) (dismissing where "none of the measures . . . impose[d] confidentiality obligations" on defendants met lower bar to plead reasonableness); *Pie Dev., LLC v. Pie Ins. Holdings*, 2021 WL 3206043, at *7 (S.D. Miss. July 21, 2021) (reliance on contracts to which plaintiff was not a party was not reasonable), *aff'd* 2023 WL 2707184 (5th Cir. Mar. 30, 2023); *Wayman Fire Prot. v. Premium Fire & Sec., LLC*, 2014 WL 897223 (Del. Ch. Mar. 5, 2014) ("based on the nature of the information at issue," failure to "impress" understanding of confidentiality on users and reliance on password protection was unreasonable).

is not the law, including because JPMC's interpretation is illogical and leads to absurd consequences. Under JPMC's interpretation of the law, for example, a licensee in lawful possession of a licensor's software could sue another licensee for misappropriation predicated upon that complete stranger's breach of contract with the licensor (*i.e.*, unauthorized use of a trade secret acquired under circumstances giving rise to a duty to maintain secrecy). The Acts must require that the underlying duty to maintain secrecy is owed to from defendant to plaintiff and *UD Tech. Corp v. Phenomex, Inc.*'s articulation is the only logical one: "Where the duty to keep a divulged trade secret arises from a contract, it follows that only those parties to the contract have standing to pursue a claim of trade secret misappropriation based on a breach of that contract." 2007 WL 28295, at *8 (D. Del. Jan. 4, 2007).

### F.    Amendment Would Be Futile And Inequitable Here

JPMC does not contest Verisk's argument that leave to amend would be inequitable. Verisk Br. 20. It claims leave to amend is warranted because at the pre-motion conference it was merely "express[ing] confidence that its Complaint could withstand a motion to dismiss," not conceding futility. JPMC Br. 19. The Court did not call that conference to gauge the parties' "confidence"; it sought to prevent needless re-pleading. JPMC told the Court that JPMC knew of nothing that could bolster its Complaint, and this Court has found futility and inequity for less.[10] *See* Verisk Br. 20 & n.11 (citing *United States ex rel. O'Bier v. TidalHealth Nanticoke, Inc.*, 2021 WL 1895049, at *2 (D. Del. May 11, 2021) (Bibas, J.)). Dismissal should be with prejudice.

### III.    CONCLUSION

Verisk respectfully requests dismissal of all claims against it with prejudice.

---

[10]    JPMC's citation to *In re PMTS Liquidating Corp.*, 490 B.R. 174, 186 (D. Del. 2013), is self-defeating. There, plaintiff responded to defendants' arguments for dismissal with proposed amendments to cure deficiencies. Here, JPMC expressly elected *not* to.

_/s/ Michael A. Barlow_

OF COUNSEL:

Michael A. Barlow (#3928)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP

William A. Burck
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
williamburck@quinnemanuel.com

500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
(302) 302-4000
michaelbarlow@quinnemanuel.com

*Counsel for Defendant Verisk Analytics, Inc.*

Viola Trebicka
Alexandre J. Tschumi
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3000
violatrebicka@quinnemanuel.com
alextschumi@quinnemanuel.com

DATED: October 1, 2024