**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>ARGUS INFORMATION & ADVISORY SERVICES INC., VERISK ANALYTICS, INC. and TRANS UNION LLC,<br><br>*Defendants*. | Civil Action No. 1:24-cv-00348-SB |

**DEFENDANTS ARGUS INFORMATION & ADVISORY SERVICES INC. AND TRANS UNION LLC'S ANSWER AND AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendants Argus Information and Advisory Services Inc. ("Argus") and Trans Union LLC ("TransUnion") submit this Answer and Affirmative and Other Defenses to the Complaint of Plaintiff JPMorgan Chase Bank, National Association ("Plaintiff or "JPMC"), dated March 19, 2024 (Dkt. 1) (the "Complaint") and alleges as follows:

Argus and TransUnion lack knowledge or information sufficient to form a belief as to the truth of the allegations in the Complaint pertaining to Defendant Verisk Analytics, Inc. ("Verisk") and all of the responses by Argus and TransUnion to the allegations in the Complaint are intended to be limited as such. On February 5, 2025, the Court issued a Memorandum Opinion (Dkt. 76) and Order (Dkt. 77) that dismissed Count Two of the Complaint (the "Dismissed Claim"). To the extent the Complaint contains allegations concerning the Dismissed Claim, no responsive pleading is required.

Each paragraph of this Answer responds to the same numbered paragraph of the Complaint. The section headings set forth herein are included only for the purposes of organization and ease of reference, and Argus and TransUnion deny any allegations contained in the headings. Argus and TransUnion deny all allegations in the Complaint, except those specifically admitted in this Answer.

**GENERAL ANSWERS**

To the extent any headings or subtitles in Plaintiff's Complaint comprise or contain allegations requiring a response, they are denied. Defined terms used in the Complaint are denied; their use in this answer is solely for the purpose of responding to the allegations as pled.

**INTRODUCTION**

1. This action centers on an elaborate, decade-long scheme by Argus and its former and current parent companies to secretly misappropriate JPMC's valuable trade secret data comprising anonymized monthly account and portfolio credit card data for tens of millions of credit card users.

**ANSWER**: The allegations in paragraph 1 consist solely of vague and subjective opinions to which no response is necessary. To the extent a response is required, Defendants Argus and TransUnion deny the allegations in paragraph 1.

2. Argus obtained access to JPMC's trade secret information as a data aggregator for (a) the Office of the Comptroller of the Currency ("OCC") and (b) the Board of Governors of the Federal Reserve System ("Federal Reserve Board") and the Federal Reserve Bank of Philadelphia ("FRBP") (together, "Federal Reserve"). Beyond this role, Argus had *no* right to use this data. In fact, Argus' contracts with the Regulators restricted Argus' ability to use, disclose, or distribute credit card data for commercial purposes. But, for more than ten years, Argus covertly used,

retained, and disclosed JPMC's trade secrets in Argus' commercial analytics business involving the nation's largest financial institutions. Until alerted in mid-2022 by the Regulators, JPMC knew nothing of the scheme, which included the creation and use of customized software to surreptitiously mimic JPMC's trade secret data for Argus' commercial benefit.

**ANSWER**: Defendant Argus admits JPMC gave data to Argus as a data aggregator for the OCC and the Federal Reserve and that Argus was acting pursuant to contracts with the OCC and Federal Reserve, whose terms speak for themselves. Defendant Argus respectfully refers the Court to the OCC and Federal Reserve contracts for a full and complete statement of their contents and denies any allegations inconsistent therewith. Defendant Argus otherwise denies the allegations in paragraph 2. Defendant TransUnion admits JPMC gave data to Argus as a data aggregator for the OCC and the Federal Reserve. Defendant TransUnion lacks knowledge or information sufficient to admit or deny the remaining allegations.

3. When confronted by the Regulators, Argus admitted that (a) "certain data attributes derived from data that [was] provided to Argus by financial institutions pursuant to the Agreement [with the Regulators] were used by Argus personnel as an input into an industry scaling process that was used for another part of [Argus'] business" and (b) JPMC was "an institution whose anonymized data was inappropriately accessed or misused."

**ANSWER**: Defendant Argus admits it made the statements that are in quotes and refers to the document as the best evidence of its complete and accurate contents. Defendant TransUnion lacks knowledge and information sufficient to admit or deny these allegations.

4. Based on this and related conduct, Argus recently agreed to pay $37 million to settle a civil investigation by the Department of Justice and other federal authorities. Emphasizing the criticality of protecting confidential data provided to banking regulators, the head of the Justice

Department's Civil Division said this about the settlement: "Companies that do business with the federal government are expected to abide by the terms of their agreements, including any restrictions on the use or disclosure of government supplied data. We will not permit contractors to profit from the misuse of such data and to put the data at risk."

**ANSWER**: Defendants Argus and TransUnion admit that, on March 12, 2024, Argus entered into a settlement agreement with the Department of Justice for $37 million. Defendants Argus and TransUnion admit that the quoted statements by Principal Deputy Assistant Attorney General Brian M. Boynton, head of the Justice Department's Civil Division, appear in a press release by the DOJ, and refer to the press release as the best evidence of its complete and accurate contents. Defendants Argus and TransUnion lack knowledge or information sufficient to admit or deny any of the remaining allegations in paragraph 4.

5. Defendants indeed profited from their misuse of JPMC's trade secret data. JPMC accordingly brings this action to recover actual damages, including unjust enrichment, and exemplary damages caused by Defendants' willful and malicious misappropriation of JPMC's trade secrets for their own financial benefit and enjoin Defendants from further unauthorized misuse of JPMC's trade secrets.

**ANSWER**: Denied as to Defendants Argus and TransUnion.

**PARTIES**

6. JPMC is a bank organized under the laws of the United States with its main office in Columbus, Ohio. JPMC is the consumer and commercial banking subsidiary of JPMorgan Chase & Co., a Delaware corporation and a U.S. banking and financial services company. JPMC is one of the largest banks in the United States, serving customers worldwide with its deposit accounts, credit cards, mortgage loans, home equity, commercial banking, and investment

services.

**ANSWER**: Defendants Argus and TransUnion lack knowledge or information sufficient to admit or deny these allegations.

7. Before 2019, JPMC's credit card business was conducted through Chase Bank USA, N.A. ("Chase"), organized under the laws of the United States with its main office in Delaware. In 2019, Chase merged into JPMC. At all relevant times, the core of JPMC's credit card business was and is conducted from Delaware. Throughout this complaint, JPMC refers collectively to JPMC and Chase.

**ANSWER**: Defendants Argus and TransUnion lack knowledge or information sufficient to admit or deny these allegations.

8. Argus is a corporation incorporated under the laws of Delaware with a principal place of business in White Plains, New York. Argus describes itself as providing "benchmarking data, analytics, models, and advisory services" to help its customers "understand their world today."

**ANSWER**: Admitted.

9. Verisk is a corporation incorporated under the laws of Delaware with a principal place of business in Jersey City, New Jersey. Verisk is a public company (Ticker Symbol: VRSK). Verisk describes itself as "relied upon by leading financial institutions, payments providers, and retailers worldwide for competitive studies, predictive analytics, models, and advisory services to provide a clear perspective on where their business stands today."

**ANSWER**: Defendants Argus and TransUnion lack knowledge and information sufficient to admit or deny these allegations.

10. Verisk acquired Argus on August 31, 2012, for $425 million. Verisk owned Argus for almost ten years, until April 7, 2022, when it sold Argus to TransUnion as part of a $515 million transaction.

**ANSWER**: Admitted.

11. TransUnion is a limited liability company organized under the laws of Delaware with a principal place of business in Chicago, Illinois. TransUnion is a wholly owned subsidiary of TransUnion Corporation, a Delaware corporation and public financial services company (Ticker Symbol: TRU). TransUnion describes itself as "a leading global information and insights company that makes trust possible between businesses and consumers, working to help people around the world access opportunities that can lead to a higher quality of life."

**ANSWER**: Admitted.

12. As of April 8, 2022, TransUnion acquired from Verisk the equity interests of Argus and the other businesses comprising the former Verisk Financial Services reporting unit. In February 2023, TransUnion stated its acquisition of Argus would allow it to "better serve [its] customers by providing enhanced insights and solutions" by combining Argus' "performance insights sourced from a consortium of financial institutions" with "TransUnion's authoritative datasets."

**ANSWER**: Admitted.

**JURISDICTION AND VENUE**

13. This civil action arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., and the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001, *et seq.*

**ANSWER**: Defendants Argus and TransUnion assert that the issues raised in paragraph 13 are not factual issues but rather legal issues that require no response. Argus and TransUnion reserve all rights and defenses under the Federal Rules of Civil Procedure.

14. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and § 1332.

**ANSWER**: Defendants Argus and TransUnion assert that the issues raised in paragraph 14 are not factual issues but rather legal issues that require no response. Argus and TransUnion reserve all rights and defenses under the Federal Rules of Civil Procedure.

15. This Court has personal jurisdiction over Defendants because each Defendant is incorporated under the laws of Delaware and, upon information and belief, Defendants sell their services and products in Delaware, to Delaware companies and citizens. Defendants have established minimum contacts within the forum such that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice.

**ANSWER**: Defendants Argus and TransUnion assert that the issues raised in paragraph 15 are not factual issues but rather legal issues that require no response. Argus and TransUnion reserve all rights and defenses under the Federal Rules of Civil Procedure.

16. Venue is proper under 28 U.S.C. § 1391(b)(1) because each Defendant resides in this district, and each Defendant is incorporated in Delaware.

**ANSWER**: Defendants Argus and TransUnion assert that the issues raised in paragraph 16 are not factual issues but rather legal issues that require no response. Argus and TransUnion reserve all rights and defenses under the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

### A. JPMC'S TRADE SECRET DATA

17. JPMC is one of the largest credit card issuers in the United States. JPMC estimates that in 2022 it was the number one U.S. credit card issuer based on sales and outstanding balances, with approximately 22% of the market based on credit card sales (excluding private label cards and commercial cards).

**ANSWER**: The allegations in paragraph 17 consist solely of vague and subjective opinions to which no response is necessary. To the extent a response is required, Defendants Argus and TransUnion lack knowledge and information sufficient to admit or deny these allegations.

18. JPMC maintains an extensive data compilation about its credit card business, including monthly detailed individual account-level data and compiled portfolio-level data that aggregates categories of accounts, as described herein. JPMC's exclusive use and access to this data concerning its credit card business give it a significant competitive advantage.

**ANSWER**: Defendants Argus and TransUnion lack information and knowledge sufficient to admit or deny these allegations.

19. JPMC's compilation of monthly account and portfolio credit card data comprises JPMC's commercially valuable trade secret information at issue, *i.e.*, the data described herein that JPMC provided to Argus as a data aggregator for the Regulators ("Trade Secret Data").

**ANSWER**: Defendants Argus and TransUnion assert that the issues raised in paragraph 19 are not factual issues but rather legal issues that require no response. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

20. JPMC's Trade Secret Data contains commercially valuable account data, including:

- Period ID

- State
- Loan Source/Channel
- Average Daily Balance
- Account Origination Date
- Refreshed Credit Bureau Score
- Current Credit Limit
- Line Increase or Decrease in the Current Month
- Minimum Payment Due
- Next Payment Due Date
- APR at Cycle End
- Cycles Past Due at Month End

**ANSWER**: Denied to the extent these allegations assume that the data listed is a trade secret or commercially valuable. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

21. JPMC's Trade Secret Data also contains commercially valuable portfolio data including:

- Period ID
- Total Number of New Account
- Managed Gross Charge-offs for the Current Month
- Managed Recoveries
- Interest and Fees Charged
- Loan Loss
- Interest Expense

- Non-Interest Expenses

**ANSWER**: Denied to the extent these allegations assume that the data listed is a trade secret or commercially valuable. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

22. As the Trade Secret Data is generated from the millions of credit cards JPMC has issued to consumers across the United States and the consumers' usage of those cards, JPMC is the creator, compiler, and owner of the Trade Secret Data.

**ANSWER**: Defendants Argus and TransUnion assert that the issues raised in paragraph 22 are not factual issues but rather legal issues that require no response. To the extent an answer is required, denied.

23. The Trade Secret Data is commercially valuable for many reasons. The Trade Secret Data can provide detailed insights into JPMC's customer base and JPMC's business practices, including its rates and pricing. The Trade Secret Data also derives independent economic value because it provides JPMC with detailed account and portfolio information enabling JPMC to track, *inter alia*, market trends and existing and potential business growth.

**ANSWER**: Denied to the extent these allegations assume that the data is a trade secret. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

24. JPMC's Trade Secret Data is not generally known or readily ascertainable to third parties.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

25. JPMC does not sell its Trade Secret Data to third parties. The Trade Secret Data cannot be properly acquired or duplicated by others.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

26. JPMC has taken reasonable and extensive efforts to keep its Trade Secret Data secret.

**ANSWER**: Denied.

27. JPMC has maintained and implemented numerous safeguards and security procedures to protect the Trade Secret Data. JPMC has designated the Trade Secret Data at its highest confidentiality classification. JPMC also treats any Trade Secret Data it provides to its regulators as "Confidential Supervisory Information," meaning it is nonpublic information that is exempt from agency disclosure.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

28. Moreover, JPMC has maintained restrictions that limit the ability of employees to access particular servers and applications containing the Trade Secret Data. Only employees specifically approved for access by designated approvers may access the password-protected servers or applications housing the Trade Secret Data.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

29. JPMC also has maintained and implemented policies and procedures designed to secure and protect its Trade Secret Data, including but not limited to technology controls that limit access to hardware and software.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

**B. ARGUS MISAPPROPRIATES JPMC'S TRADE SECRET DATA AS A DATA AGGREGATOR FOR THE OCC**

30. As part of its oversight of regulated financial institutions, the OCC charters, regulates, and supervises all national banks and federal savings associations.

**ANSWER**: Admitted.

31. Beginning in approximately 2009, the OCC mandated that certain banks, including JPMC, provide the OCC with anonymized domestic credit card data (*i.e.*, data without PII) in connection with its oversight of these entities.

**ANSWER**: Defendants Argus and TransUnion lack information or knowledge sufficient to admit or deny these allegations.

32. The OCC contracted with Argus as its data aggregator to process the banks' anonymized domestic credit card data on the OCC's behalf. The OCC's agreement with Argus restricted Argus' ability to use, disclose or distribute credit card data collected from banks for purposes other than as specified in the contract.

**ANSWER**: Defendant Argus admits that it contracted with the OCC as its data aggregator to process the banks' anonymized domestic credit card data on the OCC's behalf. Defendant Argus admits that the contracts with the OCC set forth its rights and duties under the terms of the contracts, and respectfully refers the Court to those contracts for a complete statement of their

terms. Defendant Argus denies any allegations inconsistent therewith and denies the remaining allegations in paragraph 32. Defendant TransUnion lacks knowledge or information sufficient to admit or deny any allegations in paragraph 32.

33. As a bank regulated by the OCC, in approximately 2009, JPMC began submitting the Trade Secret Data directly to Argus at the OCC's express direction.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendant Argus admits that JPMC provided data to it beginning in approximately 2009 but otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 33. TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 33.

34. A specialized team of JPMC employees, all located in Delaware, assembled and prepared the Trade Secret Data and reviewed it to ensure the data was complete and excluded any consumer's PII. JPMC employees in Delaware then sent the encrypted Trade Secret Data to Argus, as the OCC's vendor, through a secure file transmission.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendant Argus admits that Argus received encrypted data in its capacity as the OCC's aggregator but lacks information or knowledge sufficient to admit or deny the remining allegations. Defendant TransUnion lacks information or knowledge sufficient to admit or deny these allegations.

35. JPMC understood the Trade Secret Data it was required to provide to Argus as the OCC's data aggregator would remain confidential. Under federal law, trade secret information, such as the Trade Secret Data provided to the OCC, is exempt from disclosure under the Freedom of Information Act.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny the allegations in the first sentence of paragraph 35. The issues raised in the remainder of paragraph 35 are not factual issues but rather legal issues that require no response.

36. The OCC assured JPMC that the Trade Secret Data it provided to Argus would remain confidential. The OCC also confirmed to JPMC that it had contracted with Argus and received contractual confidentiality protections as well as confidentiality agreements from individuals at Argus who would have access to the Trade Secret Data.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

37. Distinct from the aggregator work it performed for federal banking regulators, Argus also has a lucrative commercial business that provides participating credit card issuers benchmarking reports that compare a credit card issuer's performance to other participating credit card issuers on an aggregated basis ("Benchmarking Studies"). To create these reports, Argus uses anonymized but extremely confidential credit card data that the participating credit card issuers share with Argus. Argus also offers participating card issuers separate analytics and modeling services ("Related Services") that rely on at least some of the same data used in the Benchmarking Studies.

**ANSWER**: Defendant Argus admits the allegations in paragraph 37 describe certain parts of its business including what is referred to as "Benchmarking Studies" and "Related Servies," but denies that paragraph 37 provides a complete and/or accurate description of Argus'

business or processes. Defendant TransUnion lacks information or knowledge sufficient to admit or deny these allegations.

38. Participating card issuers use the Benchmarking Studies and Related Services to better understand the competitive landscape and improve their own marketing, performance, profitability, and risk management activities.

**ANSWER**: The allegations in paragraph 38 consist solely of vague and subjective opinions and argumentative rhetoric to which no response is necessary. To the extent a response is required, Defendants Argus and TransUnion admit that credit card issuers may use the Benchmarking Studies and Related Services for those reasons.

39. Before 2010, virtually every major credit card issuer, including JPMC, participated in the Benchmarking Studies.

**ANSWER**: Admitted.

40. Effective November 2010, JPMC withdrew from the Benchmarking Studies and discontinued its relationship with Argus.

**ANSWER**: Defendants Argus and TransUnion admit that, effective November 2010, JPMC withdrew from the Benchmarking Studies. Defendants Argus and TransUnion deny these allegations to the extent this paragraph implies that JPMC did not rejoin the Benchmarking Studies or maintain a relationship with Argus.

41. At the time, JPMC was one of the top five credit card issuers in the United States, and it accounted for almost 20% of the credit card market by the amount of sales and the balances outstanding on customer accounts.

**ANSWER**: Defendants Argus and TransUnion lack information or knowledge sufficient to admit or deny these allegations.

42. On information and belief, JPMC's decision to exit the Benchmarking Studies was a major loss for Argus and its highly profitable data analytics business. With JPMC no longer contributing its data, the Benchmarking Studies and Related Services would lose significant value to Argus and the other participating credit card issuers. Further, Argus faced significant risk that other bank participants would find the Benchmarking Studies and Related Services not worth the substantial fees they paid to Argus. The ongoing viability of Argus' subscription-based business model was in jeopardy, and a critical piece of Argus' business was at risk of collapse.

**ANSWER**: The allegations in paragraph 42 contain argumentative rhetoric to which no response is required. To the extent a response to paragraph 42 is required, Defendant Argus denies the allegations. Defendant TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 42.

43. Accordingly, Argus secretly devised a willful and malicious scheme to misappropriate the Trade Secret Data and protect the value of its franchise at JPMC's expense.

**ANSWER**: Defendant Argus denies the allegations in paragraph 43. Defendant TransUnion denies the allegations in paragraph 43 to the extent these allegations assume the data is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 43.

44. Although JPMC was no longer participating in the Benchmarking Studies, Argus still had access to the Trade Secret Data it continued to receive on a monthly basis as the OCC's data aggregator, which provided Argus with the opportunity to misappropriate the Trade Secret Data.

**ANSWER**: Defendant Argus denies the allegations in paragraph 44. Defendant TransUnion denies the allegations in paragraph 44 to the extent these allegations assume the data

is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 44.

45. Unbeknownst to JPMC, Argus willfully, maliciously, and improperly accessed, used, and retained the Trade Secret Data to fill the gap of losing JPMC's data for its Benchmarking Studies and Related Services—even though it knew JPMC owned the Trade Secret Data and considered it highly valuable, confidential, and proprietary.

**ANSWER**: The allegations in paragraph 45 contain argumentative rhetoric to which no response is required. To the extent a response is required, Defendant Argus denies the allegations in paragraph 45. Defendant TransUnion denies the allegations in paragraph 45 to the extent these allegations assume the data is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 45.

46. On information and belief, Argus wanted to ensure it could still represent that its Benchmarking Studies and Related Services included a significant percentage of the credit card industry to showcase the quality and quantity of data it maintained before JPMC's departure. By misappropriating the Trade Secret Data, Argus continued the Benchmarking Studies without interruption.

**ANSWER**: The allegations in paragraph 46 contain argumentative rhetoric to which no response is required. To the extent a response is required, Defendant Argus denies the allegations in paragraph 46. Defendant TransUnion denies the allegations in paragraph 46 to the extent these allegations assume the data is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 46.

47. Unbeknownst to JPMC, Argus developed a sophisticated computer program it periodically updated that unlawfully accessed, used, and retained JPMC's Trade Secret Data to

mimic that data for use and disclosure in the Benchmark Studies and Related Services Argus sold credit card issuers.

**ANSWER**: The allegations in paragraph 47 contain argumentative rhetoric to which no response is required. To the extent a response is required, Defendant Argus denies the allegations in paragraph 47. Defendant TransUnion denies the allegations in paragraph 47 to the extent these allegations assume the data is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 47.

48. On information and belief, Argus' management authorized and approved the creation of the secret specialized computer program and the misappropriation of JPMC's Trade Secret Data, and, after Verisk acquired Argus, Verisk's management knew and authorized the ongoing misappropriation of the Trade Secret Data.

**ANSWER**: The allegations in paragraph 48 contain argumentative rhetoric to which no response is required. To the extent a response is required, Defendant Argus denies the allegations in paragraph 48. Defendant TransUnion denies the allegations in paragraph 47 to the extent these allegations assume the data is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 48.

49. Argus covertly and unlawfully accessed, used, retained, and disclosed the misappropriated Trade Secret Data in its national operations and sent results of the Benchmarking Studies and Related Services incorporating the Trade Secret Data to other credit card issuers, including to credit card issuers in Delaware.

**ANSWER**: The allegations in paragraph 49 contain argumentative rhetoric to which no response is required. To the extent a response is required, Defendant Argus denies the allegations in paragraph 49. Defendant TransUnion denies the allegations in paragraph 47 to the extent these

allegations assume the data is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 49.

50. After JPMC withdrew from the Benchmarking Studies in 2010, Argus never sought or obtained permission from JPMC to access, use, retain, or disclose the Trade Secret Data for the Benchmarking Studies or for any other of Argus' commercial services.

**ANSWER**: Defendant Argus denies the allegations in paragraph 50. Defendant TransUnion denies the allegations to the extent this paragraph implies that JPMC did not rejoin the Benchmarking Studies and to the extent these allegations assume the data is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 50.

51. The unauthorized retrieval, use, retention, and disclosure of the Trade Secret Data was a systematic effort by Argus to willfully and maliciously misappropriate that data for its own commercial benefit to unjustly enrich itself.

**ANSWER**: The allegations in paragraph 51 contain argumentative rhetoric to which no response is required. To the extent a response is required, Defendant Argus denies the allegations in paragraph 51. Defendant TransUnion denies the allegations in paragraph 51 to the extent these allegations assume the data is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny the allegations in paragraph 51.

**C. ARGUS CONTINUES TO MISAPPROPRIATE THE TRADE SECRET DATA AS THE FEDERAL RESERVE'S DATA AGGREGATOR**

52. The Federal Reserve also required bank holding companies and intermediate holding companies to provide anonymized credit card data for regulatory oversight.

**ANSWER**: Admitted.

53. By June 2012, the Federal Reserve Board had retained Argus as its data aggregator and directed JPMC to provide anonymized credit card data to Argus.

**ANSWER**: Defendants Argus and TransUnion admit that by June 2012 the Federal Reserve Board had retained Argus as its data aggregator. Defendants Argus and TransUnion lack information or knowledge sufficient to admit or deny the remaining allegations in paragraph 53.

54. On behalf of the Federal Reserve Board, the FRBP separately retained Argus as a data aggregator and directed JPMC to provide anonymized credit card data to Argus.

**ANSWER**: Defendants Argus and TransUnion admit the allegations in paragraph 54.

55. Argus' contracts with the Federal Reserve provided that Argus (a) would access and use the data for the sole purpose of performing the services to be provided under the contract or as otherwise instructed in writing by the Federal Reserve and (b) would not use or exploit data submitted under the contract for its own benefit.

**ANSWER**: Defendant Argus admits that the contracts with the Federal Reserve set forth its rights and duties under the terms of the contracts and respectfully refers the Court to those contracts for a complete statement of their terms. Defendant Argus denies any allegations inconsistent therewith and denies the remaining allegations in paragraph 55. Defendant TransUnion lacks knowledge or information sufficient to admit or deny any allegations in paragraph 55.

56. In compliance with the Federal Reserve's requirements, JPMC provided its Trade Secret Data to Argus.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendant Argus admits that JPMC provided data to it but otherwise lacks knowledge or

information sufficient to admit or deny any allegations in paragraph 56. Defendant TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 56.

57. JPMC reasonably believed that the Trade Secret Data it provided to Argus would be kept confidential and not misappropriated. Under federal law, trade secret information, such as the Trade Secret Data provided to the Federal Reserve, is exempt from disclosure under the Freedom of Information Act.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendants Argus and TransUnion lack sufficient information or knowledge sufficient to admit or deny the allegations in the first sentence of paragraph 57. The second sentence of paragraph 57 contains legal conclusions to which no response is required.

58. Under instructions from the Regulators, JPMC continued to provide Argus with the Trade Secret Data through the expiration of the Federal Reserve's agreements with Argus on July 31, 2022. JPMC personnel in Delaware sent all such de-personalized and encrypted data to Argus through a secure file transmission.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Defendant Argus admits JPMC provided it with encrypted data through the expiration of the Federal Reserve's agreements with Argus on July 31, 2022. Defendant Argus lacks information or knowledge sufficient to either admit or deny the remaining allegations in paragraph 58. Defendant TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 58.

59. When it negotiated and signed its agreements with the Federal Reserve, Argus was already running its secret computer program using the misappropriated Trade Secret Data JPMC had provided to Argus, as the OCC's data aggregator.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. The allegations in paragraph 59 contain argumentative rhetoric to which no response is required. To the extent a response is required, Defendant Argus denies the allegations in paragraph 59. Defendant TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 59.

60. Argus continued to wrongfully conceal its misappropriation from JPMC. Argus knew JPMC owned the Trade Secret Data it provided per the Regulators' direction. Argus never sought or obtained written permission from JPMC to acquire, use, or disclose the Trade Secret Data for the Benchmarking Studies or any Related Services.

**ANSWER**: Defendant Argus denies the allegation in paragraph 60. Defendant TransUnion denies the allegations in paragraph 60 to the extent these allegations assume the data is a trade secret. Defendant TransUnion otherwise lacks information or knowledge sufficient to admit or deny these allegations.

61. As discussed, on information and belief, Argus misappropriated JPMC's Trade Secret Data to ensure it could maintain the value of its businesses, continue to market its services as including a significant percentage of the credit card industry, and maintain the quality and quantity of data it had before JPMC's departure.

**ANSWER**: The allegations in paragraph 61 contain argumentative rhetoric to which no response is required. To the extent a response is required, Defendant Argus denies the allegations. Defendant TransUnion denies the allegations in paragraph 61 the extent these allegations assume the data is a trade secret. Defendant TransUnion lacks knowledge or information sufficient to admit or deny the allegations in paragraph 61.

62. Indeed, and on information and belief, by willfully and maliciously misappropriating the Trade Secret Data, Argus was able to retain its existing customers of its Benchmarking Studies and Related Services and obtain new customers for the same, unjustly reaping enormous commercial and financial benefits for itself and its affiliates.

**ANSWER**: The allegations in paragraph 62 contain argumentative rhetoric to which no response is required. To the extent a response is required, Defendant Argus denies the allegations. Defendant TransUnion lacks knowledge or information sufficient to admit or deny the allegations in paragraph 62.

**D. ARGUS ADMITS IT MISAPPROPRIATED JPMC'S TRADE SECRET DATA**

63. In or around September 2020, the federal government alerted Argus and Verisk to a Department of Justice investigation concerning Argus' data misappropriation.

**ANSWER**: Defendant Argus admits the federal government requested certain materials from Argus but otherwise denies the allegations contained in paragraph 63. Defendant TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 63.

64. In December 2020, the Federal Reserve received written notice from Argus advising that "certain data attributes derived from data that is provided to Argus by financial institutions pursuant to the Agreement [with the Federal Reserve] were used by Argus personnel as an input into an industry scaling process that was used for another part of our business."

**ANSWER**: Defendant Argus admits the allegations in paragraph 64 admits the quoted language appears in the notice but refers to the document as best evidence of its complete and accurate contents. Defendant TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 64.

65. The letter failed to identify what other parts of Argus or Verisk's businesses

improperly accessed, retained, used, or disclosed the data provided to the Federal Reserve.

**ANSWER**: The allegations in paragraph 65 consist solely of vague and subjective opinions to which no response is necessary. To the extent a response is necessary, Defendant Argus denies the allegations in paragraph 65 as to its conduct. Defendant TransUnion lacks information or knowledge sufficient to confirm or deny the allegations in paragraph 65.

66. Argus and Verisk also failed to notify JPMC that they were improperly acquiring, using, and disclosing the Trade Secret Data for other parts of their businesses, and Argus and Verisk continued to misappropriate the data.

**ANSWER**: Defendant Argus denies the allegations in paragraph 66 as to its alleged conduct. Defendant TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 66.

**E. JPMC RECEIVES A WHISTLEBLOWER LETTER, AND ARGUS AND VERISK WILLFULLY AND MALICIOUSLY MISLEAD JPMC**

67. In April 2021, JPMC received an unsigned whistleblower letter alleging that Argus and its parent Verisk were improperly disclosing JPMC credit card data to other Verisk subsidiaries. On information and belief, the whistleblower was a Verisk employee.

**ANSWER**: Defendants Argus and TransUnion lack information or knowledge sufficient to admit or deny the allegations in paragraph 67.

68. According to the whistleblower, Verisk's knowledge and involvement in this scheme was pervasive:

A. "Your company/bank has contributed your data to ARGUS Information over years."

B. "Argus Information is part of Verisk Group."

C. "Verisk has encouraged and facilitated data sharing across its all [sic]

subsidiaries."

D. "ARGUS (banking) gathers all credit card data and share [sic] with Verisk [sic] other subsidiaries."

E. "Your data assets have become Verisk's and its subsidiaries' assets/profits over years: your data have been developed to various products and sold to a number of their clients in a number of industries."

**ANSWER**: Defendants Argus and TransUnion admit the quoted language appears in an anonymous letter postmarked April 2021, but refer to the document for its complete and accurate contents. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny the allegations in paragraph 68.

69. JPMC provided a copy of the whistleblower letter to Argus and requested that it confirm Argus was properly handling JPMC's valuable data.

**ANSWER**: Defendant Argus admits that JPMC shared the whistleblower with it. Defendant Argus denies the remaining allegations. Defendant TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 69.

70. On June 23, 2021, Argus provided a written response to JPMC personnel in Delaware to address the concerns raised in the whistleblower letter. Verisk and its internal counsel reviewed and approved the response letter before Argus sent it to JPMC.

**ANSWER**: Defendant Argus admits it provided a written response to JPMC on June 23, 2021, which Verisk and its internal counsel reviewed and approved. Defendant Argus admits that the June 23, 2021 response letter states:

> In response to your request on June 11, 2021 to confirm that we are compliant with our contractual obligations, we undertook an audit to determine if our uses of the data JPMorgan Chase Bank ("Chase") provides to us under the terms of our statements of work for CCPS (Schedule #11), the Chase/Amazon JDE (Schedule

> #12) and the just-completed Chase/Amazon data merge project (Schedule #17), collectively "Chase's Data", are in compliance with the terms of such contracts (including their data use provisions, sharing and disclosure restrictions).

Defendant Argus further refers to the letter for its complete and accurate contents. Defendant Argus lacks information or knowledge sufficient to admit or deny whether JPMC personnel were located in Delaware. Defendant Argus denies the remaining allegations. Defendant TransUnion lacks information or knowledge sufficient to admit or deny the allegations in paragraph 70.

71. In its response, Argus acknowledged receipt of the whistleblower letter and represented that it had conducted an audit and confirmed compliance with its obligations to JPMC. The Argus letter was signed by Argus' Head of Data Compliance and was copied to an Argus Senior Managing Director as well as Argus' General Counsel. Argus' response gave the impression that Argus had taken seriously the allegations and JPMC's concerns.

**ANSWER**: Defendant Argus admits with respect to the first sentence of paragraph 71 that it acknowledged receipt of the whistleblower letter. Defendant Argus admits that the June 23, 2021 response letter states:

> In response to your request on June 11, 2021 to confirm that we are compliant with our contractual obligations, we undertook an audit to determine if our uses of the data JPMorgan Chase Bank ("Chase") provides to us under the terms of our statements of work for CCPS (Schedule #11), the Chase/Amazon JDE (Schedule #12) and the just-completed Chase/Amazon data merge project (Schedule #17), collectively "Chase's Data", are in compliance with the terms of such contracts (including their data use provisions, sharing and disclosure restrictions).
>
> . . .
>
> Subject to the foregoing, Argus can give you assurances that our uses of Chase's Data comply with our contractual obligations in Schedules #11, 12 and 17.

Defendant Argus further refers to the letter for its complete and accurate contents. Defendant Argus denies the remaining allegations in the first sentence of paragraph 71. Defendant Argus admits the allegations in the second sentence of paragraph 71. The allegations in the third sentence

of paragraph 71 consist solely of vague and subjective opinions to which no response is necessary. Defendant TransUnion lacks information or knowledge sufficient to confirm or deny the allegations in paragraph 71.

72. Argus' June 23, 2021 response letter was an intentional effort to conceal its ongoing willful and malicious misappropriation and prevent JPMC from discovering Argus' unlawful conduct. Argus' response letter was purposely misleading in several respects.

**ANSWER**: Defendant Argus denies the allegations in paragraph 72 as to its conduct. Defendant TransUnion lacks information or knowledge sufficient to confirm or deny the allegations in paragraph 72.

73. First, Argus provided assurances to JPMC that were misleading because Argus and Verisk were then aware for more than nine months of the ongoing Department of Justice investigation and knew of their improper acquisition, use, and disclosure of the Trade Secret Data. Argus had already admitted to the Federal Reserve that Argus had misappropriated the Trade Secret Data. Indeed, Argus disclosed to JPMC that Argus had conducted an audit without also disclosing that it had determined, and already reported to a federal regulator, that Argus had misappropriated the Trade Secret Data collected pursuant to Argus' services for the Regulators for other parts of Argus' business.

**ANSWER**: Defendant Argus denies the allegations in paragraph 73 as to its conduct. Defendant TransUnion lacks information or knowledge sufficient to confirm or deny the allegations in paragraph 73.

74. Second, in an ongoing effort to conceal its long-standing misconduct from JPMC, Argus provided false assurances by misleadingly defining "JPMC's Data" to include only the data JPMC had provided Argus for Benchmarking Studies, knowing that Argus had for more than a

decade willfully and maliciously misappropriated the Trade Secret Data it obtained in its role as a data aggregator for the Regulators on a massive scale.

**ANSWER**: Defendant Argus denies the allegations in paragraph 74. Defendant TransUnion lacks information or knowledge sufficient to confirm or deny the allegations in paragraph 74.

75. Third, Argus intentionally misled JPMC into believing Argus had thoroughly investigated the whistleblower's allegations and determined that none of JPMC's Trade Secret Data had been misappropriated.

**ANSWER**: Defendant Argus denies the allegations in paragraph 75. Defendant TransUnion lacks information or knowledge sufficient to confirm or deny the allegations in paragraph 75.

76. As of April 8, 2022, TransUnion acquired the equity interests of Argus and several other businesses Verisk had owned in its Verisk Financial Services unit.

**ANSWER**: Admitted.

77. Before closing the transaction, TransUnion learned from Verisk of Argus' misappropriation of data provided to it as a data aggregator for the Regulators. After the transaction closed, TransUnion failed to notify JPMC of Argus' conduct.

**ANSWER**: Defendant TransUnion admits it was aware that the Department of Justice was investigating Argus before the closing of the transaction, but otherwise denies the remaining allegations. Defendant Argus lacks information or knowledge sufficient to confirm or deny the allegations in paragraph 77.

78. After the acquisition, TransUnion exclusively controlled Argus. TransUnion installed its senior personnel as Argus' CEO and other senior management positions.

**ANSWER**: Admitted to the extent TransUnion acquired Argus and assisted with hiring personnel. TransUnion otherwise denies the remaining allegations as "exclusively controlled" and "installed" are argumentative and vague terms.

79. As part of Argus' Related Services rendered both before and after it became part of TransUnion, Argus marketed, developed, and created a variety of complex financial models for use by its customers, and Defendants earned substantial income from such modeling services. On information and belief, Argus misused and disclosed the Trade Secret Data in dozens of models it developed for its customers' ongoing use.

**ANSWER**: Defendants Argus and TransUnion admit that, "before and after it became part of TransUnion, Argus marketed, developed, and created a variety of complex financial models for use by its customers." Denied to the extent these allegations assume Argus misused the data. Defendants Argus and TransUnion deny the remaining allegations in paragraph 79.

80. Argus, Verisk, and TransUnion know that Argus built models with the Trade Secret Data. On information and belief, Argus and TransUnion also know several of these improper Argus-created models remain in use by JPMC's competitors. Also, on information and belief, Argus and TransUnion have failed to prevent all such models from continuing to be used or accessed by their customers or otherwise recover the models.

**ANSWER**: Defendants Argus and TransUnion deny the allegations in paragraph 80.

81. TransUnion continued to misappropriate the Trade Secret Data to enhance its and Argus' businesses.

**ANSWER**: Defendant TransUnion denies the allegations in paragraph 81. Defendant Argus lacks information or knowledge sufficient to admit or deny the allegations in paragraph 81.

### G. THE DEPARTMENT OF JUSTICE INVESTIGATES ARGUS' MISUSE OF CREDIT CARD DATA

82. On or about July 26, 2022, TransUnion publicly acknowledged that the Department of Justice was investigating whether Argus misused data it had collected under certain government contracts, and such alleged misuse commenced before TransUnion acquired Argus.

**ANSWER**: Admitted.

83. JPMC first learned of Argus' misappropriation when the Federal Reserve provided written notice dated May 31, 2022, to JPMC that Argus had misused the Trade Secret Data that was collected pursuant to Argus' contracts with the Federal Reserve.

**ANSWER**: Denied to the extent these allegations assume that the data JPMC provided to Argus is a trade secret or that Argus misappropriated the data. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to admit or deny these allegations.

84. Also on May 31, 2022, the OCC provided JPMC with written notice that Argus misused the Trade Secret Data collected pursuant to Argus' contracts with the OCC. The OCC quoted from Argus' December 2020 written notice, which stated in part, that "certain data attributes derived from data that is provided to Argus by financial institutions pursuant to the Agreement were used by Argus personnel as an input into an industry scaling process that was used for another part of [Argus'] business." The OCC's notice also identified JPMC's Trade Secret Data as among the data that Argus misused.

**ANSWER**: Denied to the extent these allegations assume Argus misused the data. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to confirm or deny the allegations in paragraph 84.

85. In June 2022, JPMC demanded in writing information from Argus and TransUnion concerning the misappropriation of the Trade Secret Data.

**ANSWER**: Admitted that in June 2022, JPMC demanded in writing information from Argus and TransUnion concerning misappropriation of data. Denied to the extent these allegations assume Argus misused the data.

86. In July 2022, Argus and TransUnion met with JPMC. Argus and TransUnion admitted to the misappropriation of the Trade Secret Data that JPMC had provided to the Regulators since 2010.

**ANSWER**: Defendants Argus and TransUnion admit they met with JPMC in July 2022. Defendants Argus and TransUnion deny the remaining allegations in paragraph 86.

87. After learning of Argus' misappropriation of the Trade Secret Data, JPMC tried to determine which Verisk businesses accessed and misused the data and what products and services Verisk and Argus had developed and sold in connection with Argus' improper retrieval, use, retention and disclosure of the data. But Verisk declined to participate in any discussions with JPMC regarding the misappropriation of the Trade Secret Data. Verisk has not publicly denied or otherwise disputed that Verisk used the Trade Secret Data in Verisk's other businesses and for its own commercial purposes.

**ANSWER**: Denied to the extent these allegations assume that the data JPMC provided to Argus is a trade secret or that Argus misappropriated the data. Defendants Argus and TransUnion otherwise lack information or knowledge sufficient to confirm or deny the allegations in paragraph 87.

### H. ARGUS PAYS $37 MILLION DOLLARS TO SETTLE THE DEPARTMENT OF JUSTICE INVESTIGATION

88. On March 13, 2024, the Department of Justice announced Argus "agreed to pay the United States $37 million to resolve claims under the False Claims Act and the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), in connection with its

access to and use of credit card data obtained pursuant to contracts with various federal regulators, including the Office of the Comptroller of the Currency (OCC), the Board of Governors of the Federal Reserve System (FRB) and the Consumer Financial Protection Bureau (CFPB)." Copies of the settlement and related Department of Justice Press Release are attached as Exhibits A and B, respectively.

**ANSWER**: Defendants Argus and TransUnion admit that the Department of Justice made the announcement quoted in paragraph 88 but refer to the documents for their complete and accurate contents.

89. According to the Department of Justice, the settlement "resolves allegations that, from 2010 through 2020, Argus improperly accessed, used and retained anonymized credit card data that it received under the contracts. The United States alleged that Argus used this anonymized data to create synthetic (proxy) data that it incorporated into the products and services it sold to some commercial customers in place of actual data from certain banks. The United States further alleged that Argus failed to disclose its improper access, use and retention of credit card data to the United States and the extent to which it relied on synthetic data to its commercial clients."

**ANSWER**: Defendants Argus and TransUnion admit that the statement appears in a press release by the DOJ but refer to the press release for its complete and accurate contents.

90. Commenting on the settlement, one Department of Justice official stated: "We will hold companies accountable when they breach their agreements with regulators and misuse sensitive data for their own commercial gain."

**ANSWER**: Defendants Argus and TransUnion admit that the quoted statement by First Assistant U.S. Attorney Raj Parekh for the Eastern District of Virginia appears in a press release by the DOJ but refer to the press release for its complete and accurate contents.

**COUNT I**
**(Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.)**

**[Against All Defendants]**

91. All previous paragraphs are incorporated herein as if fully set forth.

**ANSWER**: Defendants Argus and TransUnion incorporate by reference their responses and denials set forth in the foregoing paragraphs as if fully set forth herein.

92. Defendants have misappropriated the Trade Secret Data JPMC provided to Argus as a data aggregator for the Regulators.

**ANSWER**: Denied.

93. JPMC owns the Trade Secret Data.

**ANSWER**: Denied.

94. The Trade Secret Data was used in interstate and/or foreign commerce.

**ANSWER**: The allegations in paragraph 94 state legal conclusions to which no response is required. To the extent a response is required, Defendants Argus and TransUnion lack information or knowledge sufficient to confirm or deny the allegations in paragraph 94.

95. By, among other things, storing the Trade Secret Data on secure servers, keeping them password protected, providing access to the Trade Secret Data to only select employees with a business need to view them, and sharing the data only with third parties who signed nondisclosure agreements to use the data for solely limited business purposes, JPMC has taken reasonable measures to keep its data secret.

**ANSWER**: The allegations in paragraph 95 consist of legal conclusions to which no response is necessary. To the extent a response is necessary, Defendants Argus and TransUnion deny JPMC has taken reasonable measures to keep its data secret and otherwise lack knowledge or information sufficient to admit or deny any of the remaining allegations.

96. The Trade Secret Data is immensely valuable, as it provides detailed insights into, *inter alia*, JPMC's credit card practices, policies, and growth, based on JPMC's customers' spending habits, payment histories, engagement in rewards programs, and special JPMC offers.

**ANSWER**: Defendants Argus and TransUnion deny the allegations in paragraph 96.

97. The Trade Secret Data derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by another person who can obtain economic value from the disclosure or use of the data. The Trade Secret Data provides detailed insights into JPMC's customer base and JPMC's business practices that are confidential and not publicly known or ascertainable.

**ANSWER**: The allegations in paragraph 97 consist of legal conclusions to which no response is necessary. To the extent a response is necessary, Defendants Argus and TransUnion deny the allegations in paragraph 97.

98. Defendants unlawfully accessed, used, retained, and disclosed the Trade Secret Data. The Regulators mandated JPMC to provide the data to Argus as a federally sanctioned data aggregator, and Argus was forbidden from using the Trade Secret Data or disclosing the Trade Secret Data for other purposes.

**ANSWER**: Admitted by Defendants Argus and TransUnion that JPMC provided data to Argus on behalf of the Regulators. Denied by Defendants Argus and TransUnion as to the remaining allegations.

99. Defendants willfully and maliciously misappropriated the Trade Secret Data by breaching its duty to maintain its secrecy and accessing, using, retaining, and disclosing it in the Benchmarking Studies and Related Services.

**ANSWER**: Denied.

100. On information and belief, Argus shared the Trade Secret Data with Verisk for use in Verisk's other businesses, and Verisk used the Trade Secret Data for its own commercial purposes. Indeed, around 2018, Verisk retained Argus' Chief Information Officer to serve in the same role at Verisk. On information and belief, Verisk knew that Argus was misappropriating the Trade Secret Data.

**ANSWER**: Denied by Defendant Argus as to the allegations related to Argus. Denied to the extent these allegations assume the data is a trade secret. Defendant TransUnion lacks knowledge or information sufficient to admit or deny the allegations in paragraph 100.

101. In its public filings, TransUnion stated the Argus acquisition enhanced TransUnion's business and services to its customers by combining its existing "authoritative datasets" with Argus' "performance insights sourced from a consortium of financial institutions." On information and belief, Argus shared its insights sourced from the Trade Secret Data with TransUnion for use in TransUnion's businesses, and TransUnion used the Trade Secret Data for its own commercial purposes.

**ANSWER**: Defendant TransUnion admits its public filings contain the quoted language, but refers to that document for its complete and accurate contents. Defendants Argus and TransUnion deny the remaining allegations in paragraph 101.

102. Argus used and disclosed the Trade Secret Data in numerous models it created, developed, and marketed for its customers' ongoing use. On information and belief, several

Argus-created models remain in use by Argus' customers who are JPMC's competitors. Defendants knew that those models were built using misappropriated Trade Secret Data.

**ANSWER**: Denied.

103. Upon information and belief, Defendants earned revenue from their customers on such models. Moreover, Argus and TransUnion have not taken steps to (a) prevent all such models from continuing to be used or accessed by their customers, (b) modify the models to remove all aspects of the models that were built using the Trade Secret Data, and/or (c) otherwise recover all models that were built using the Trade Secret Data.

**ANSWER**: Denied to the extent these allegations assume the data is a trade secret. Admitted that Defendant Argus may earn revenue for models it provides to customers. Denied by Defendants Argus and TransUnion as to the remaining allegations.

104. JPMC never consented to Defendants' unlawful retrieval, use, retention, or disclosure of the Trade Secret Data it provided to Argus.

**ANSWER**: Denied.

105. Defendants' willful and malicious trade secret misappropriation damaged JPMC and unjustly enriched Defendants. Argus knowingly and continuously used and disclosed the Trade Secret Data to enhance the Benchmarking Studies and Related Services and to continue to profit from them, all of which it sold to its customers (at least some of whom are JPMC's direct competitors) who were or became customers of the Benchmarking Studies and Related Services. Upon information and belief, Verisk also used or disclosed the Trade Secret Data for one or more of its other businesses. Further, TransUnion was also unjustly enriched by its use of the Trade Secret Data in its other businesses.

**ANSWER**: Denied.

106. Due to Defendants' willful and malicious conduct, JPMC is entitled to damages including but not limited to lost profits, unjust enrichment, a reasonable royalty, and attorney's fees and costs, as well as an injunction against Defendants for any ongoing improper conduct.

**ANSWER**: The allegations in paragraph 106 consist of legal conclusions to which no response is necessary. To the extent a response is necessary, Defendants Argus and TransUnion deny the allegations in paragraph 106.

107. By, *inter alia*, willfully and maliciously misappropriating the Trade Secret Data, secretly developing and deploying a specialized and sophisticated computer program to leverage the data for its own commercial purposes, revising and enhancing that computer program over time to improve its ability to misuse the Trade Secret Data for its own commercial purposes, taking steps to use and share the Trade Secret Data, and taking steps to prevent JPMC from learning of Defendants' improper conduct, Defendants' trade secret misappropriation was willful and malicious, and JPMC is entitled to exemplary damages in addition to compensatory damages.

**ANSWER**: The allegations in paragraph 107 consist of legal conclusions to which no response is necessary. To the extent a response is necessary, Defendants Argus and TransUnion deny the allegations in paragraph 107.

**COUNT TWO**

**(Violation of the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001, et seq.)**

**[Against All Defendants]**

108. All previous paragraphs are incorporated herein as if fully set forth.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

109. Defendants have misappropriated the Trade Secret Data JPMC provided to Argus as a data aggregator for the Regulators.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

110. JPMC owns the Trade Secret Data.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

111. By, among other things, storing the Trade Secret Data on secure servers, keeping them password protected, providing access to the Trade Secret Data to only select employees with a business need to view them, and sharing the data only with third parties who signed non-disclosure agreements to use the data for solely limited business purposes, JPMC has taken reasonable measures to keep its data secret.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

112. The Trade Secret Data is immensely valuable, as it provides detailed insights into, *inter alia*, JPMC's credit card practices, policies, and growth, based on JPMC's customers' spending habits, payment histories, engagement in rewards programs, and special JPMC offers.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

113. The Trade Secret Data derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by another person who can obtain economic value from the disclosure or use of the data. The Trade Secret Data provides detailed insights into JPMC's customer base and JPMC's business practices that are confidential and not publicly known or ascertainable.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

114. Defendants unlawfully accessed, used, retained, and disclosed the Trade Secret Data. The Regulators mandated JPMC to provide the data to Argus as a federally sanctioned data aggregator, and Argus was forbidden from using the Trade Secret Data or disclosing the Trade Secret Data for other purposes.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

115. Defendants willfully and maliciously misappropriated the Trade Secret Data by breaching its duty to maintain its secrecy and accessing, using, retaining, and disclosing it in the Benchmarking Studies and Related Services.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

116. On information and belief, Argus shared the Trade Secret Data with Verisk for use in Verisk's other businesses, and Verisk used the Trade Secret Data for its own commercial purposes. Indeed, around 2018, Verisk retained Argus' Chief Information Officer to serve in the same role at Verisk. On information and belief, Verisk knew that Argus was misappropriating the Trade Secret Data.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

117. In its public filings, TransUnion stated the Argus acquisition enhanced TransUnion's business and services to its customers by combining its existing "authoritative datasets" with Argus' "performance insights sourced from a consortium of financial institutions." On information and belief, Argus shared its insights sourced from the Trade Secret Data with TransUnion for use in TransUnion's businesses, and TransUnion used the Trade Secret Data for its own commercial purposes.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

118. Argus used and disclosed the Trade Secret Data in numerous models it created, developed, and marketed for its customers' ongoing use. On information and belief, several Argus-created models remain in use by Argus' customers who are JPMC's competitors. Defendants knew that those models were built using misappropriated Trade Secret Data.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

119. Upon information and belief, Defendants earned revenue from their customers on such models. Moreover, Argus and TransUnion have not taken steps to (a) prevent all such models from continuing to be used or accessed by their customers, (b) modify the models to remove all aspects of the models that were built using the Trade Secret Data, and/or (c) otherwise recover all models that were built using the Trade Secret Data.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

120. JPMC never consented to Defendants' unlawful retrieval, use, retention, or disclosure of the Trade Secret Data it provided to Argus.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

121. Defendants' willful and malicious trade secret misappropriation damaged JPMC and unjustly enriched Defendants. Argus knowingly and continuously used and disclosed the Trade Secret Data to enhance the Benchmarking Studies and Related Services and to continue to profit from them, all of which it sold to its customers (at least some of whom are JPMC's direct competitors) who were or became customers of the Benchmarking Studies and Related Services. Upon information and belief, Verisk also used or disclosed the Trade Secret Data for one or more of its other businesses. Further, TransUnion was also unjustly enriched by its use of the Trade Secret Data in its other businesses.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

122. Due to Defendants' willful and malicious conduct, JPMC is entitled to damages including but not limited to lost profits, unjust enrichment, a reasonable royalty, and attorney's fees and costs, as well as an injunction against Defendants for any ongoing improper conduct.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

123. By, *inter alia*, willfully and maliciously misappropriating the Trade Secret Data,

secretly developing and deploying a specialized and sophisticated computer program to leverage the data for its own commercial purposes, revising and enhancing that computer program over time to improve its ability to misuse the Trade Secret Data for its own commercial purposes, taking steps to use and share the Trade Secret Data, and taking steps to prevent JPMC from learning of Defendants' improper conduct, Defendants' trade secret misappropriation was willful and malicious, and JPMC is entitled to exemplary damages in addition to compensatory damages.

**ANSWER**: Count two has been dismissed, and therefore no response is needed.

## DEMAND FOR JURY

JPMC respectfully demands a trial by jury for all causes of action.

**ANSWER**: No response is required.

## PRAYER FOR RELIEF

WHEREFORE, JPMC prays that the Court enter judgment as follows:

A. Enjoin Defendants from improperly acquiring, using, or otherwise disclosing JPMC's Trade Secret Data;

B. Award JPMC damages adequate to compensate for Defendants' misappropriation of JPMC's Trade Secret Data including, but not limited to, lost profits, unjust enrichment, and a reasonable royalty as a result of the misappropriations;

C. Award exemplary damages to JPMC owing to the willful and malicious nature of Defendants' trade secret misappropriation acts up to the statutory maximum;

D. Award JPMC an accounting for Defendants' wrongful acts;

E. Award JPMC its reasonable attorneys' fees and costs, as well as prejudgment interest and post-judgment interest on its damages, attorneys' fees, and costs;

F. Award JPMC such equitable relief which may be requested and to which JPMC is

entitled; and

G. Award JPMC any other and further relief as this Court deems just and proper.

**ANSWER**: Defendants Argus and TransUnion deny that Plaintiff is entitled to any relief whatsoever in connection with the claims against Argus and TransUnion, and specifically deny that Plaintiff is entitled to any of the relief sought against Defendants Argus and TransUnion in Plaintiff's WHEREFORE paragraph.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants Argus and TransUnion set forth the following defenses, without admitting that it bears the burden of proof on any of the following issues, regardless of how such defenses are denominated herein, or waiving defenses not raised below that it not plead at this time. Defendants Argus and TransUnion reserve the right to amend this Answer if additional defenses, counterclaims, or third party claims become apparent through the course of this action. Defendants Argus and TransUnion further give notice that they intend to rely upon any additional defenses that may become available or appear during, or as a result of discovery in this action and reserve their right to amend this Answer to assert those defenses.

### FIRST DEFENSE

The Complaint fails to state a claim against Defendants Argus and TransUnion upon which relief may be granted.

### SECOND DEFENSE

Plaintiff failed to identify its alleged trade secrets with the requisite specificity and/or particularity.

### THIRD DEFENSE

Plaintiff's purported trade secrets are generally known.

**FOURTH DEFENSE**

Plaintiff's purported trade secrets were not subject to reasonable efforts to maintain their secrecy.

**FIFTH DEFENSE**

Plaintiff failed to state a claim because it is not the owner of the purported trade secret data it provided to Argus.

**SIXTH DEFENSE**

Plaintiff's data provided to Argus was not a trade secret.

**SEVENTH DEFENSE**

Plaintiff's claims are barred, in whole or part, because Argus and TransUnion did not misappropriate Plaintiff's trade secret data.

**EIGHTH DEFENSE**

Plaintiff's claims are barred, in whole or part, because Argus and TransUnion did not disclose Plaintiff's purported trade secrets.

**NINTH DEFENSE**

Plaintiff's claims are barred, in whole or part, because JPMC, Argus and TransUnion did not acquire Plaintiff's data by improper means.

**TENTH DEFENSE**

Plaintiff's claims are barred, in whole or part, because it participated in Argus's Benchmarking Studies and freely gave its data to Argus to use for commercial purposes.

**ELEVENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by ratification.

**TWELFTH DEFENSE**

Plaintiff is not entitled to equitable relief as it has not suffered irreparable harm and/or has an adequate remedy at law.

**THIRTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, under the doctrine of unclean hands.

**FOURTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

**FIFTEENTH DEFENSE**

Plaintiff's claim under the Defend Trade Secrets Act is barred, in whole or in part, because the alleged misappropriation pre-dates the enactment of the Defend Trade Secrets Act.

**SIXTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, for lack of standing.

**SEVENTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or part, because Plaintiff has not sustained any injury in fact, economic losses, actual losses, or damages as a result of Argus or TransUnion's alleged conduct.

**EIGHTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or part, because it did not suffer from any unjust enrichment.

**NINETEENTH DEFENSE**

Plaintiff's claims are barred, in whole or part, because Plaintiff would be unjustly enriched if it were allowed to recover any of the relief sought in the Complaint.

**TWENTIETH DEFENSE**

In the event Plaintiff recovers a verdict or judgment against Argus or TransUnion, or any party, for any past or future claimed economic loss related to the allegations herein, that verdict, judgment, or settlement must be reduced by any applicable collateral source or recovery and any double recovery is prohibited.

**TWENTY-FIRST DEFENSE**

Plaintiff's asserted damages against Argus and TransUnion, if any, were proximately caused by independent, superseding, or intervening actions of parties or entities over whom Argus or TransUnion have no authority or control.

**TWENTY-SECOND DEFENSE**

Plaintiff's claims against Argus and TransUnion are barred, in whole or part, to the extent they are based on the theory that Argus or TransUnion failed to take required action that they did, in fact, undertake.

**TWENTY-THIRD DEFENSE**

Plaintiff's claims for damages are barred or should be reduced based on Plaintiff's failure to mitigate its damages.

**TWENTY-FOURTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, under the doctrines of res judicata and collateral estoppel.

**TWENTY-FIFTH DEFENSE**

Plaintiff's asserted damages are barred, in whole or part, because the alleged damages, if any, are too remote and/or speculative to allow recovery and/or because determining whether, or to what extent, Plaintiff was damaged is impossible.

**TWENTY-SIXTH DEFENSE**

Argus and TransUnion did not owe any duty or obligation to Plaintiff as alleged in the Complaint, and to the extent that any such duty or obligation was owed, Argus and TransUnion did not breach their duties.

**TWENTY-EIGHTH DEFENSE**

Plaintiff cannot establish it is entitled to punitive and/or exemplary damages because at no time did Argus or TransUnion act wrongfully or with malice, bad faith, or reckless indifference toward Plaintiff's rights under the law.

Dated: February 19, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LPP

*/s/ Sara Carnahan*
Kevin M. Coen (#4775)
Sara Carnahan (#7175)
1201 N. Market Street,
Wilmington, DE 19801
(302) 658-9200
kcoen@morrisnichols.com
scarnahan@morrisnichols. com

WOLLMUTH MAHER & DEUTSCH LLP

David H. Wollmuth (*pro hac vice* forthcoming)
Joshua M. Slocum
Roselind F. Hallinan
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
rhallinan@wmd-law.com

*Counsel for Defendants Argus Information & Advisory Services Inc. and Trans Union LLC*